**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| | |
|---|---|
| ASIA WHEEL CO., LTD., <br><br>                Plaintiff, <br><br>      and <br><br> ZC RUBBER AMERICA INC., <br><br>                Plaintiff-Intervenor, <br><br>      v. <br><br> UNITED STATES, <br><br>                Defendant, <br><br>      and <br><br> ACCURIDE CORPORATION, <br><br>                Defendant-Intervenor. | Court No. 23-00143 |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD AND**
**ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES**

Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

January 30, 2024

**TABLE OF CONTENTS**

RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT ................................................ 1

I.  ADMINISTRATIVE DETERMINATION OF WHICH REVIEW IS SOUGHT ............ 1

II.  ISSUES PRESENTED AND SUMMARY OF THE ARGUMENT................................. 1

    A.  Whether Commerce Impermissibly Expanded the Scope of the *AD/CVD Orders* Contrary to the Orders' Plain Language and Commerce's Interpretation of that Language in the Original AD/CVD Investigations ............... 1

    B.  Whether Commerce's Determination that Chinese-Origin Wheel Discs Were Not Substantially Transformed into Wheels in Thailand Is Unsupported by Substantial Evidence and Not in Accordance with Law ............... 2

    C.  Whether Commerce's Decision to Impose AD/CVD Liability on the Entire Imported Truck Wheel – As Opposed to Only the Subject Merchandise Incorporated in the Wheel – Is Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law ........................................... 2

    D.  Whether Commerce Impermissibly Directed U.S. Customs and Border Protection to Continue to Suspend Liquidation of Imports Entered before the Date of Initiation of the Scope Inquiry ................................................ 3

STATEMENT OF FACTS ............................................................................................ 3

I.  COMMERCE'S DEFINITION OF THE SCOPE IN THE ORIGINAL AD/CVD INVESTIGATIONS ................................................................................... 3

    A.  Proposed Scope upon Initiation of the AD/CVD Investigations ........................... 5

    B.  Commerce's Scope Determination in the AD/CVD Investigations ..................... 6

II.  ASIA WHEEL'S PRODUCTION OF TRUCK WHEELS IN THAILAND ................... 7

III.  INITIATION OF ENFORCE AND PROTECT ACT INVESTIGATION ....................... 8

IV.  COMMERCE'S SCOPE INQUIRY ADDRESSING TRUCK WHEELS MANUFACTURED BY ASIA WHEEL IN THAILAND ................................................ 9

    A.  Asia Wheel's Request for a Commerce Scope Ruling ........................................... 9

    B.  Commerce's Preliminary Scope Ruling ................................................................ 12

    C.  Asia Wheel's Briefing ........................................................................................... 12

    D.  Commerce's Final Scope Ruling .......................................................................... 13

V.     CBP'S EAPA DETERMINATION ................................................................. 14

ARGUMENT ............................................................................................................ 16

I.     COMMERCE'S INTERPRETATION OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW ............... 16

    A.    The Plain Language of the Scope Does Not Include Truck Wheels Manufactured in a Third Country If Only One of Two Wheel Components Is of Chinese-Origin ............................................................................ 16

    B.    Commerce's Interpretation of the Scope Based on the § 351.225(k)(1) Primary Interpretive Sources Is Unsupported by Substantial Evidence ............... 18

        1.    Commerce confirmed in the AD/CVD investigations that wheels made in third countries with rims *or* discs from China (but not both) are outside the scope ........................................................ 18

        2.    Commerce recharacterized its scope analysis from the AD/CVD investigations ....................................................................... 20

    C.    Conclusion .............................................................................................. 22

II.    COMMERCE'S "SUBSTANTIAL TRANSFORMATION" ANALYSIS IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE .................... 23

III.   COMMERCE'S DETERMINATION THAT THE ENTIRE FINISHED WHEEL MANUFACTURED IN THAILAND IS WITHIN THE SCOPE OF THE *AD/CVD ORDERS* IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE ............................................................................. 28

IV.   COMMERCE IMPERMISSIBLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE THE DATE OF INITIATION OF THE SCOPE INQUIRY .................................................... 30

    A.    Importers Did Not Receive Fair Warning That Truck Wheels Produced in Third Countries from Chinese "Rims Or Discs" Were Subject To The *AD/CVD Orders* and Could Be Assessed Duties ................................. 30

    B.    Commerce Unlawfully "Continued" CBP's Prior Suspension of Liquidation ............................................................................................. 36

CONCLUSION AND RELIEF SOUGHT ................................................................. 40

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. U.S. Forest Serv.*,
  617 F.3d 1138 (Fed. Cir. 2012).................................................................17

*Allegheny Bradford. Corp. v. United States*,
  342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ............................................15, 18, 28

*Aspects Furniture Int'l Inc. v. United States*,
  607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ..............................................38

*Bell Supply Co., LLC v. United States*,
  888 F.3d 1222 (Fed. Cir. 2018)........................................................23, 24, 25, 26

*Bestfoods v. United States*,
  165 F.3d 1371 (Fed. Cir. 1999)........................................................23, 24

*Canadian Solar, Inc. v. United States*,
  918 F.3d 909 (Fed. Cir. 2019)........................................................37

*Chr. Bjelland Seafoods A/S v. United States*,
  19 C.I.T. 35 (1995) .......................................................................15, 29

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012)......................................................................31

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938)......................................................................15

*Diamond Tools Technology LLC v. United States*,
  545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ...............................................38, 39

*Duferco Steel, Inc. v. United States*,
  296 F.3d 1087 (Fed. Cir. 2002)........................................................15, 16, 17, 18

*DuPont Teijin Films USA v. United States*,
  407 F.3d 1211 (Fed. Cir. 2005)........................................................15

*E.I. DuPont de Nemours & Co. v. United States*,
  8 F. Supp. 2d 854 (Ct. Int'l Trade 1998) ...............................................23, 24

*Eckstrom Indus., Inc. v. United States*,
  254 F.3d 1068 (Fed. Cir. 2001)........................................................17, 28

iii

*Katunich v. Donovan*,
    599 F. Supp. 985 (Ct. Int'l Trade 1984) ....................................................................25

*MacDonald v. Pan Am. World Airways, Inc.*,
    859 F.2d 742 (9th Cir. 1988) (Kozinski, J., dissenting)...........................................17

*Meridian Prods., LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017).....................................................................15, 17, 18

*Micron Tech. Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997).................................................................................15

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013).................................................................................31

*Mitsubishi Elec. Corp. v. United States*,
    802 F. Supp. 455 (Ct. Int'l Trade 1992) ..................................................................28

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...............................................................................................27, 29

*NMB Sing. Ltd. v. United States*,
    557 F.3d 1316 (Fed. Cir. 2009).................................................................................25

*Smith Corona Corp. v. United States*,
    915 F.2d 683 (Fed. Cir. 1990)..................................................................................18

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020)..........................................................................37, 38

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
    983 F.3d 487 (Fed. Cir. 2020)...................................................................... passim

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
    391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019),
    *opinion affirming remand*, 415 F. Supp. 3d 1391 (Ct. Int'l Trade 2019) ...................33, 34, 35

*Target Corp. v. United States*,
    609 F.3d 1352 (Fed. Cir. 2010).................................................................................15

*Timken U.S. Corp. v. United States*,
    421 F.3d 1350 (Fed. Cir. 2005).................................................................................27

*Trans Texas Tire, LLC ("TTT") v. United States*,
    519 F.Supp.3d 1275 (CIT 2021) ................................................................... passim

*Trans Texas Tire, LLC v. United States*,
    545 F. Supp. 3d 1374 (Ct. Int'l Trade 2021) .....................................................34, 35

AMERICAS 126089080

*USX Corp. v. United States,*
    655 F. Supp. 487 (Ct. Int'l Trade 1987) ...................................................................15, 29

## STATUTES AND REGULATIONS

19 U.S.C. § 1516a(b)(1)(B)(i) .........................................................................................15

19 U.S.C. § 1517(a)(3) ....................................................................................................37

19 U.S.C. § 1517(b)(4) ......................................................................................................9

19 U.S.C. § 1517(c)(1)(A) ...............................................................................................37

19 U.S.C. § 1517(e) .........................................................................................................37

19 C.F.R. 351.225(l)(3) ...................................................................................................36

19 C.F.R. § 165.41 ...........................................................................................................14

19 C.F.R. § 351.225 .........................................................................................................16

19 C.F.R. § 351.225(k) ....................................................................................................16

19 C.F.R. § 351.225(k)(1) .............................................................................................1, 18

19 C.F.R. § 351.225(l) .................................................................................................36, 38

Enforce and Protect Act of 2015,
    Pub. L. 114-125, 130 Stat. 122, 155, Feb. 24, 2016 ........................................ passim

## ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

*Aluminum Extrusions from China: Affirmative Preliminary Determination of Circumvention of
    AD/CVD Orders and Intent To Rescind Minor Alterations Anti-Circumvention Inquiry,*
    81 Fed. Reg. 79,444 (Dep't Commerce Nov. 14, 2016) ......................................................33

*Aluminum Extrusions from China: Initiation of Anti-Circumvention Inquiry,*
    81 Fed. Reg. 15,039 (Dep't Commerce Mar. 21, 2016).......................................................33

*Certain Steel Wheels From the People's Republic of China,*
    83 Fed. Reg. 17794 (Dep't Commerce Apr. 24, 2018) ("*CVD Initiation*") .........................4, 5

*Certain Steel Wheels from the People's Republic of China,*
    83 Fed. Reg. 17798 (Dep't Commerce Apr. 24, 2018) ("*AD Initiation*").........................3, 4, 5

*Certain Steel Wheels From the People's Republic of China,*
    83 Fed. Reg. 45573 (Dep't Commerce Aug. 31, 2018) (prelim. CVD determ.).......................5

AMERICAS 126089080

*Certain Steel Wheels from the People's Republic of China*,
  84 Fed. Reg. 11744 (Dep't Commerce, Mar. 28, 2019) (final CVD determ.) .................6, 7, 31

*Certain Steel Wheels from the People's Republic of China*,
  84 Fed. Reg. 11746 (Dep't Commerce, Mar. 28, 2019) (final AD determ.) .................. passim

*Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing
  Duty Orders*,
  84 Fed. Reg. 24098 (Dep't Commerce May 24, 2019) ("AD/CVD Orders").................. passim

*Certain Steel Wheels from the People's Republic of China: Notice of Covered Merchandise
  Referral*,
  86 Fed. Reg. 38270 (Dep't Commerce July 20, 2021) ("*Referral Notice*").......................9, 11

*Regulations to Improve Administrative and Enforcement of Antidumping and Countervailing
  Duty Laws*,
  86 Fed. Reg. 52300 (Dep't Commerce Sept. 20, 2021) .........................................................16

AMERICAS 126089080

On behalf of Plaintiff Asia Wheel Co., Ltd. ("Asia Wheel"), we hereby submit this Motion for Judgment on the Agency Record and Accompanying Memorandum of Points and Authorities with regard to the four Counts set forth in its Complaint filed on August 11, 2023. *See* Complaint, Ct. No. 23-00143, ECF No. 8.  For the reasons provided below, Asia Wheel respectfully requests that the Court hold that the challenged determination of the U.S. Department of Commerce ("Commerce") is unsupported by substantial evidence and otherwise not in accordance with law.

## RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT

## I.      ADMINISTRATIVE DETERMINATION OF WHICH REVIEW IS SOUGHT

Asia Wheel seeks review of Commerce's final scope ruling that certain truck wheels produced by Asia Wheel in Thailand fall within the scope of the antidumping duty ("AD") and countervailing duty ("CVD") orders on certain steel wheels 22.5 to 24.5 inches in diameter from the People's Republic of China ("China").  *See* Commerce Memorandum, RE: Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (A-570-082, C-570-083) (June 7, 2023) (PR 79) ("*Final Scope Ruling*"); *Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24098 (Dep't Commerce May 24, 2019) ("*AD/CVD Orders*").

## II.     ISSUES PRESENTED AND SUMMARY OF THE ARGUMENT

Asia Wheel raises four issues with respect to Commerce's *Final Scope Ruling*.

### A.      Whether Commerce Impermissibly Expanded the Scope of the *AD/CVD Orders* Contrary to the Orders' Plain Language and Commerce's Interpretation of that Language in the Original AD/CVD Investigations

Yes.  While Commerce has the authority to clarify the scope of an AD/CVD order, it is impermissible for Commerce to interpret an order contrary to its terms, or the primary interpretive sources listed in 19 C.F.R. § 351.225(k)(1).  Here, in concluding that the scope of the

*AD/CVD Orders* was ambiguous with respect to coverage of wheels made in third countries with rims *or* discs – the two essential components of a wheel – from China, Commerce impermissibly disregarded the plain language of the scope, which refers to "rims **and** discs from China."  In addition, Commerce unreasonably denied that during the original AD/CVD investigations it had confirmed in response to a respondent's argument that truck wheels manufactured in a third country using rims *or* discs (but not both) from China are outside the scope.

> **B.**     **Whether Commerce's Determination that Chinese-Origin Wheel Discs Were Not Substantially Transformed into Wheels in Thailand Is Unsupported by Substantial Evidence and Not in Accordance with Law**

Yes.  In finding that Chinese-origin discs were not "substantially transformed" into finished wheels in Thailand, Commerce ignored the fundamental question of whether the processing in Thailand resulted in a product with a new name, character, and use, contrary to binding case law.  In addition, despite undisputed evidence on the record that a wheel requires two essential components – a rim and a disc – to achieve the characteristics and function of a finished wheel, Commerce nonsensically reasoned that the Chinese-origin disc alone already exhibits the essential characteristics of a finished wheel, contrary to the substantial evidence standard.

> **C.**     **Whether Commerce's Decision to Impose AD/CVD Liability on the Entire Imported Truck Wheel – As Opposed to Only the Subject Merchandise Incorporated in the Wheel – Is Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law**

Yes.  Although only one wheel component (a disc) was exported from China, Commerce determined that the entire finished wheel imported into the United States was subject to AD/CVD liability.  In doing so, Commerce impermissibly expanded the scope of the *AD/CVD Orders* – which is limited to Chinese-origin "rims and discs that have been further processed in a third country" – contrary to its terms.  In addition, Commerce's decision contradicted its

AMERICAS 126089080

substantial transformation analysis, rendering its decision unsupported by substantial evidence. Because Commerce determined that Chinese-origin discs were not substantially transformed in Thailand, Commerce lacked any factual basis to impose AD/CVD liability on the nonsubject parts of the wheel added in Thailand.

> **D.** **Whether Commerce Impermissibly Directed U.S. Customs and Border Protection to Continue to Suspend Liquidation of Imports Entered before the Date of Initiation of the Scope Inquiry**

Yes. Importers lacked adequate notice that the truck wheels manufactured in Thailand with discs from China were potentially covered by the *AD/CVD Orders* until May 12, 2021, the date on which Commerce initiated a scope inquiry to address the question for such wheels. Nevertheless, Commerce unlawfully declined to instruct U.S. Customs and Border Protection ("CBP" or "Customs") to terminate a prior suspension of liquidation imposed by CBP under the Enforce and Protect Act. Commerce's decision violated the broader due-process principle that importers must have fair warning before their imported merchandise is subject to AD/CVD liability. In this case, Commerce's unlawful decision will subject importers to millions of dollars in retroactive AD/CVD liability without fair warning because the combined AD/CVD rate is 688%.

## STATEMENT OF FACTS

## I. COMMERCE'S DEFINITION OF THE SCOPE IN THE ORIGINAL AD/CVD INVESTIGATIONS

On April 24, 2018, Commerce initiated AD and CVD investigations of truck wheels from China in response to petitions filed by Accuride Corporation ("Accuride") and Maxion Wheels Akron LLC ("Maxion") (collectively, "Petitioners"). *Certain Steel Wheels from the People's Republic of China*, 83 Fed. Reg. 17798 (Dep't Commerce Apr. 24, 2018) ("*AD Initiation*");

3

*Certain Steel Wheels From the People's Republic of China*, 83 Fed. Reg. 17794 (Dep't Commerce Apr. 24, 2018) ("*CVD Initiation*").

A truck wheel consists of two main components:  a rim and a disc.  "The rim comprises the perimeter of the wheel and supports the tire when it is attached to the wheel, while the disc serves as the center portion of the wheel without the rim."   Asia Wheel Response to 2nd Supplemental Questionnaire (A-570-082, C-570-083) (July 11, 2022) (CR 32, PR 42) ("*Asia Wheel Substantial Transformation Submission*") at Exhibit RFI-ALL-3 (Petition, Vol. I at I-10) (CR 33, PR 43).   As Petitioners acknowledged, both the rim and disc are "two primary components" of the finished truck wheel.  *See id.* at Exhibit RFI-ALL-3 (CR 33, PR 43).  The image below depicts the disc, rim, and complete truck wheel (before the painting/coating process):



(Letter from White & Case to Commerce, RE: *Request for Scope Ruling for Asia Wheel's Steel Truck Wheels* (A-570-082, C-570-083) (Feb. 11, 2021) (CR 1, PR, 1) ("*Asia Wheel Scope Ruling Request*") at Exhibit 4)

The scope of the AD/CVD investigations included steel wheels, rims, and discs imported from China.  *See AD Initiation*, 83 Fed. Reg. at 17802 and *CVD Initiation*, 83 Fed. Reg. at 17797 ("The merchandise subject to the investigation is certain on-the-road steel wheels, discs and rims for tubeless tires . . . .").

AMERICAS 126089080

**A.      Proposed Scope upon Initiation of the AD/CVD Investigations**

At the time of initiation in April 2018, the proposed scope of the AD/CVD investigations did not include language covering truck wheels, rims, or discs from China that undergo further processing in a third country.  *See AD Initiation*, 83 Fed. Reg. at 17802; *CVD Initiation*, 83 Fed. Reg. at 17797.   Nor did the scope include any such language in the preliminary CVD determination issued by Commerce in August 2018.  *See Certain Steel Wheels From the People's Republic of China*, 83 Fed. Reg. 45573, 44574 (Dep't Commerce Aug. 31, 2018) (prelim. CVD determ.).  Later in December 2018, however, Petitioners proposed amending the scope to include the following "third-country-processing" provision:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims _and_ discs*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the investigations if performed in the People's Republic of China.

*Asia Wheel Substantial Transformation Submission* at Exhibit RFI-ALL-2 (Letter from Petitioners to Commerce, RE: Petitioners' Request for Clarification of the Scope of the Investigations and Submission of Additional Factual Information Relevant to Scope (A-570-082, C-570-083) (Dec. 20, 2018) at 5-6 (CR 33, PR 43) ("*Petitioners' Request for Clarification*") (emphasis added).

In response, Zhejiang Jingu Company Limited ("Zhejiang Jingu"), a Chinese mandatory respondent in the AD/CVD investigations and an affiliate of Asia Wheel, argued that ***Chinese-origin rims _and_ discs*** that are welded and painted in third countries should be considered outside the scope – as wheel components that are "substantially transformed" into finished wheels in the third country, such that the third country is the country of origin, not China.  *See Asia Wheel Scope Ruling Request* at Exhibit 1 (Commerce Memorandum, RE: Issues and Decision Memorandum for the Final Determination of the Less-Than-Fair-Value Investigation of Certain

Steel Wheels from the People's Republic of China (A-570-082) (Mar. 21, 2019) at 8-9 ("*Final AD IDM*")).[1] Conversely, Petitioners argued that assembling and painting steel wheels "in a third country from rims and discs manufactured in China" would ***not*** effect a substantial transformation, such that China would remain the country of origin (consistent with their proposed third-country-processing language). *Id.* at 7-8.

Zhejiang Jingu also argued in the alternative that the scope language Petitioners proposed in December 2018 was "overly broad and vague, potentially expanding the scope to include other merchandise that also originates in third countries (*e.g.*, the language does not explicitly require that ***both the rim <u>and</u> disc be produced in China*** for China to be considered the country of origin)." *See Final AD IDM* at 8 (emphasis added).

Additionally, Xiamen Sunrise Wheel Group Co., Ltd. ("Sunrise"), the other Chinese mandatory respondent in the AD/CVD investigations argued that Petitioners' proposed scope clarification "{sought} to include imports of non-subject merchandise from other countries under the scope of these investigations." *Final AD IDM* at 8.

### B.   Commerce's Scope Determination in the AD/CVD Investigations

In the final AD and CVD determinations, Commerce declined to conduct a substantial transformation analysis to determine the country of origin for ***Chinese-origin rims and discs*** that are welded and painted in a third country to make a finished steel wheel. *See Final AD IDM* at 10-11. Instead, Commerce decided that it could "properly frame the scope of the investigation and properly address issues concerning circumvention by incorporating the petitioners' proposed

---

[1] Commerce included the same scope analysis in its final determination in the parallel CVD investigation. *See Asia Wheel Scope Ruling Request* at Exhibit 2 (Commerce Memorandum, RE: *Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Certain Steel Wheels from the People's Republic of China* (C-570-083) (Mar. 21, 2019) at 16-17. For ease of reference, this brief refers only to Commerce's analyses and decisions in the AD investigation.

AMERICAS 126089080

clarification of the scope," subject to a "minor change" in response to Zhejiang Jingu's comment. *Id.* at 11.

Regarding the "minor change," Commerce "agree{d} with Zhejiang Jingu that the proposed scope amendment should include further clarifying language." *Final AD IDM* at 12. Based on its understanding that *Petitioners' Request for Clarification* was "requesting that **rims _and_ discs from China** that have been further processed in a third country into finished steel wheels be included within scope{,}" Commerce "clarified the petitioners' proposed scope language to reflect the petitioners' intention." *Id.* at 12 (emphasis added). Specifically, Commerce added the qualifier "from China" to Petitioners' proposed third-country-processing provision, as follows:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of **rims _and_ discs _from China_** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*Id.* at 9 (emphasis added).  This amended scope language was included in the final AD/CVD determinations issued by Commerce in March 2019.  *Certain Steel Wheels from the People's Republic of China*, 84 Fed. Reg. 11746, 11748 (Dep't Commerce Mar. 28, 2019) (final AD determ.); *Certain Steel Wheels from the People's Republic of China*, 84 Fed. Reg. 11744, 11746 (Dep't Commerce Mar. 28, 2019) (final CVD determ.) (collectively, "*Final AD/CVD Determinations*").

## II.     ASIA WHEEL'S PRODUCTION OF TRUCK WHEELS IN THAILAND

Asia Wheel is a manufacturer and exporter of steel wheels located in Rayong, Thailand. Asia Wheel acquired the capability to produce truck wheels using only one component from China (discs) and began such production long before the *Final AD/CVD Determinations*.  *See Asia Wheel Scope Ruling Request* at 2 (describing the year Asia Wheel started truck wheel

production) and Exhibit 4 (Production flowchart showing the years Asia Wheel acquired equipment for each production steps).   To produce truck wheels, Asia Wheel imported rectangular steel plates from China and a third country, and performed multiple processing steps (including coiling, butt-welding, planing, edge expansion, rolling, and hole punching) to convert the rectangular steel plates into rims.  Asia Wheel then assembled and welded the Thai-origin rims with discs imported from China to form truck wheels.  Finally, Asia Wheel painted the wheels per the customer's specification and packaged them for shipping.  *See Asia Wheel Scope Ruling Request* at Exhibit 4.

## III.     INITIATION OF ENFORCE AND PROTECT ACT INVESTIGATION

Petitioners filed an allegation with CBP on July 17, 2020, pursuant to the Enforce and Protect Act of 2015, Pub. L. 114-125, 130 Stat. 122, 155, Feb. 24, 2016 ("EAPA"), and CBP initiated an EAPA investigation (EAPA Case No. 7509) on August 18, 2020.  *See* Letter from Schagrin Associates to Commerce, RE: Certain Steel Wheels from the People's Republic of China, Asia Wheel Scope Ruling Request – Petitioners' Opposition (A-570-082, C-570-083) (Feb. 25, 2021) (CR 2, PR 4) ("*Petitioners' Opposition*") at Exhibit 1 (CBP Letter to Vanguard National Trailer Corp., RE: Notice of Initiation of Investigation and Interim Measures (November 23, 2020) ("*CBP Initiation*")).

Petitioners alleged that the target importer of the EAPA investigation – Vanguard National Trailer Corp. ("Vanguard") – was evading the *AD/CVD Orders* because Vanguard's imported wheels were "produced by Chinese manufacturer {Zhejiang Jingu} that **were transshipped through Jingu's affiliate in Thailand, {Asia Wheel}**, and entered into the United States as a product of Thailand . . . ."  *CBP Initiation* at 2 (emphasis added).  Petitioners did not allege that Vanguard evaded the *AD/CVD Orders* by importing wheels produced in Thailand with only one Chinese-origin wheel component; nor did CBP initiate its EAPA investigation on

that basis.  *See id*. at 2-4.  As "interim measures," CBP suspended liquidation of Vanguard's imports of truck wheels from Asia Wheel with entry dates from August 18, 2020, and extended the liquidation period for each unliquidated entry that entered before that date – retroactively subjecting Vanguard's imports to AD and CVD liability in excess of 680% of the value of the imported merchandise.  *See id*. at 8; *AD/CVD Orders*, 84 Fed. Reg. at 24098-24099.

On June 9, 2021, Commerce received from CBP a "covered merchandise referral" under 19 U.S.C. § 1517(b)(4), because CBP was unable to determine whether the truck wheels at issue in EAPA Case No. 7509 – "steel wheels {that} were produced in Thailand using rims that did not originate in China" – were "covered merchandise" (*i.e.*, subject to the *AD/CVD Orders*). *Certain Steel Wheels from the People's Republic of China: Notice of Covered Merchandise Referral*, 86 Fed. Reg. 38270 (Dep't Commerce July 20, 2021) ("*Referral Notice*").

## IV.  COMMERCE'S SCOPE INQUIRY ADDRESSING TRUCK WHEELS MANUFACTURED BY ASIA WHEEL IN THAILAND

### A.    Asia Wheel's Request for a Commerce Scope Ruling

On February 11, 2021, before CBP made its covered merchandise referral, Asia Wheel requested that Commerce issue a scope ruling to confirm that certain truck wheels Asia Wheel produced in Thailand were not covered by the scope of the *AD/CVD Orders*.  *See Asia Wheel Scope Ruling Request* (CR 1, PR 1).  Specifically, Asia Wheel asked Commerce to confirm that truck wheels Asia Wheel produced in Thailand using the production method described below ("Thai Truck Wheels") are not covered by the scope of the *AD/CVD Orders*.

- Asia Wheel produces rims in Thailand from rectangular steel plates sourced from China or a third country; welds the Thailand-produced rims to discs sourced from China to assemble truck wheels; and paints the wheels per the customer's specification.  Each step

AMERICAS 126089080

(including multiple steps within the rim-production process) uses specific machinery. *See Asia Wheel Scope Ruling Request* at Exhibit 4.

- To convert the steel plate into a rim, Asia Wheel coils the rectangular steel plate to form a circle; welds the open butts of the steel ring into a closed steel ring; polishes the welded steel ring to remove slag from the surface; expands the outer sides of the polished steel ring for precise positioning during the subsequent rolling phases; rolls the steel rings in three stages, gradually forming the surface of the steel ring into the precise shape of the rim; adjusts the unfinished rim to the precise shape required for insertion of the disc; and punches a valve hole in the surface of the rim. *See Asia Wheel Scope Ruling Request* at Exhibit 4.

The images below show the input rectangular steel plate compared to the output rim (*see id.* at Exhibit 4):

**Rectangular Steel Plate (input)**



(Letter from White & Case to Commerce, RE: *Rebuttal to Petitioners' Opposition* (Asia Wheel) (A-570-082, C-570-083) (June 29, 2021) (CR 7, PR 16) ("*Asia Wheel Rebuttal to Opposition*") at Exhibit C, Attachment 3 (CR 8, PR 16)):

AMERICAS 126089080

**Rim (output)**



(*See id.*)

Although Asia Wheel reasonably believed that Thai Truck Wheels are outside the scope of the *AD/CVD Orders* (based on the plain language of the scope and Commerce's clarification of the scope during the AD/CVD investigations), the company requested a scope ruling so that Commerce could confirm to CBP that the products were outside the scope, since CBP had initiated EAPA Case No. 7509 concerning the same wheels.

In response to Asia Wheel's request, Commerce initiated a scope inquiry on May 12, 2021.  *See* Commerce Letter to Interested Parties, RE: Initiation of Asia Wheel Scope Inquiry (A-570-082, C-570-083) (May 12, 2021) (PR 6) ("*Scope Inquiry Initiation*").  Commerce also announced that it would "address {CBP's} covered merchandise referral and Asia Wheel's scope ruling request in the ongoing scope inquiries of the *Orders*."  *Referral Notice*, 86 Fed. Reg. at 38271.

11

### B.        Commerce's Preliminary Scope Ruling

On December 13, 2022, Commerce issued the preliminary scope ruling.  *See* Commerce Memorandum, RE: Preliminary Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (A-570-082, C-570-083) (Dec. 13, 2022) (PR 59) ("*Preliminary Scope Ruling*").  Commerce found that the Thai Truck Wheels are subject to the scope of the *AD/CVD Orders*.  *See id.* at 22.

In doing so, Commerce denied that it had determined in the original AD/CVD investigations that only truck wheels produced in a third country with ***both rims and discs from China*** are covered by the scope of the *AD/CVD Orders*.  *See Preliminary Scope Ruling* at 11-12. At the same time, however, Commerce found that the *AD/CVD Orders* were ambiguous with respect to truck wheels produced in a third country with only one wheel component (rim or disc) originating from China.  Consequently, Commerce conducted a "substantial transformation" analysis to determine whether Thailand or China is the country of origin of the Thai Truck Wheels imported into the United States for AD/CVD purposes.  Commerce preliminarily determined that the Chinese-origin discs were not substantially transformed in Thailand, such that China was the country of origin of the imported Thai Truck Wheels.  *See Preliminary Scope Ruling* at 20.

### C.        Asia Wheel's Briefing

On January 9, 2023, Asia Wheel filed a case brief in the scope proceeding.  *See* Letter from Asia Wheel to Commerce, RE: Asia Wheel Steel Truck Wheels – Case Brief (A-570-082, C-570-083) (Jan. 9, 2023) (CR 60, PR 66) ("*Asia Wheel Case Br.*").  **_First_**, Asia Wheel argued that the plain language of the scope of the *AD/CVD Orders*, as interpreted by Commerce during the original AD/CVD investigations, does not include truck wheels made in a third country using only discs from China.  *Id*. at 3-7.  **_Second_**, with respect to substantial transformation, Asia Wheel argued that Commerce's preliminary analysis was fundamentally flawed, because

12

Commerce focused its analysis on the Chinese-origin component (*i.e.*, the discs), and overlooked the finished product imported into the United States. *Id.* at 7-24. **_Third_**, Asia Wheel argued that, in the event of an affirmative final scope ruling, Commerce should direct CBP to commence suspension of liquidation no earlier than the date of the preliminary scope ruling (December 13, 2022), and not continue any prior suspension imposed by CBP, because importers lacked adequate notice that the Thai Truck Wheels could be covered by the scope of the *AD/CVD Orders* until that date. *Id.* at 24-29. **_Finally_**, also in the event of an affirmative scope ruling, Asia Wheel argued that only the Chinese-origin component (*i.e.*, the discs) should be subject to AD/CVD liability. *Id.* at 29-30.

Plaintiff-Intervenor, ZC Rubber America Inc. ("ZC Rubber"), an importer of Thai Truck Wheels and interested party to the scope inquiry, also submitted a case brief making the same or similar arguments. *See* Letter from Mayer Brown to Commerce, RE: ZC Rubber Case Brief (A-570-090, C-570-091) (Jan. 9, 2023) (PR 65).

### D.    Commerce's Final Scope Ruling

On June 7, 2023, more than two years after it had initiated the scope inquiry and having given itself **sixteen** extensions of the deadline, *see* Commerce Memorandum, RE: Sixteenth Extension of Time for the Asia Wheel Scope Ruling (A-570-082, C-570-083) (Apr. 20, 2023) (PR 73), Commerce issued the *Final Scope Ruling*. Commerce continued to find that Thai Truck Wheels are subject to the scope of the *AD/CVD Orders*. *See Final Scope Ruling* at 34.

Commerce maintained that it was appropriate to apply a substantial transformation analysis to determine the country of origin of the Thai Truck Wheels because "{t}he plain language of the scope is ambiguous" as to whether such wheels – where only one of the two components was from China – are subject to the scope of the *AD/CVD Orders*. *Final Scope Ruling* at 9.

AMERICAS 126089080

Commerce also continued to find that the Chinese-origin discs did not undergo substantial transformation in Thailand, such that China was the country of origin for the imported Thai Truck Wheels.  *See Final Scope Ruling* at 16-25.  In doing so, Commerce stated that it was "not altering {its} assessment of any individual factor" discussed in the preliminary scope ruling.  *Id.* at 16.

With respect to liquidation, Commerce stated that it "intend{ed} to instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the *Orders* if already suspended."  *Final Scope Ruling* at 27.  Moreover, "if liquidation of entries of such products is not already suspended," Commerce "intend{ed} to instruct CBP to suspend liquidation of entries of products found to be covered by the scope of the *Orders* effective to the date {it} initiated an inquiry upon Asia Wheel's Scope Ruling Request."  *Id*.  Commerce also rejected the argument that only the Chinese-origin component (discs) should be subject to AD/CVD liability.  *See Final Scope Ruling* at 32-33.

## V.    CBP'S EAPA DETERMINATION

In August 2023, after Commerce issued the *Final Scope Ruling*, CBP issued an affirmative duty evasion determination.  *See* CBP Letter, RE: Notice of Determination as to Evasion – EAPA Case Number 7509 (Aug. 21, 2023), available at: https://www.cbp.gov/document/publications/eapa-investigation-7509-vanguard-national-trailer-corp-notice-determination.  Subsequently, CBP affirmed its affirmative evasion determination in an administrative review.  *See* CBP Letter, RE:  Enforce and Protect Act ("EAPA") Case Number 7509 (Dec. 22, 2023), available at:  https://www.cbp.gov/document/rulings/eapa-case-7509-vangaurd-national-trailer-corporation-final-administrative-determination.

14

**STANDARD OF REVIEW**

The Court "shall hold unlawful" a Commerce final scope determination if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Micron Tech. Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether Commerce's conclusions are based on substantial evidence, the Court must consider "the record as a whole, including {evidence} which fairly detracts from {the} weight" of Commerce's conclusions. *Target Corp. v. United States*, 609 F.3d 1352, 1358 (Fed. Cir. 2010) (internal quotation marks and citation omitted). Moreover, a determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)).

As concerns judicial review of Commerce scope rulings, "the question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that {the court} review{s} de novo." *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) (citing *Allegheny Bradford. Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004)). Further, "a scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford*, 342 F. Supp. 2d at 1183 (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002)).

15

**ARGUMENT**

## I. COMMERCE'S INTERPRETATION OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

"Scope orders may be interpreted as including {specific} merchandise only if they contain language that specifically includes {that} merchandise or may be reasonably interpreted to include it." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002). Here, the plain language of the scope of the *AD/CVD Orders* neither specifically includes nor may reasonably be interpreted to include steel wheels manufactured in third countries using rims *or* discs from China – but not both. Rather, the plain language indicates that *both* the rims *and* the discs must originate from China for a wheel assembled in a third country to fall within the scope. Despite confirming this interpretation during the original AD/CVD investigations, Commerce unreasonably backtracked in the *Final Scope Ruling*, now claiming that the scope is ambiguous with respect to whether such wheels manufactured in third countries are outside the scope of the *AD/CVD Orders*. Commerce's interpretation of the scope language in the *Final Scope Ruling* is impermissible and also unsupported by substantial evidence.

### A. The Plain Language of the Scope Does Not Include Truck Wheels Manufactured in a Third Country If Only One of Two Wheel Components Is of Chinese-Origin

Commerce determines whether a product is covered by the scope of an order in accordance with 19 C.F.R. § 351.225(k).[2] The starting point for Commerce's analysis is the

---

[2] As recognized by Commerce in the scope proceeding, "{a}though Commerce published revisions to its scope regulations in September 2021, the new scope regulations only became effective on November 4, 2021." *Preliminary Scope Ruling* at 2 n.5 (citing *Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300 (Dep't Commerce Sept. 20, 2021)). Consequently, "because Asia Wheel filed its scope ruling request on February 11, 2021, before the effective date of the new regulations," the pre-amendment version of 19 C.F.R. § 351.225 applies to Commerce's instant scope inquiry. *Id.*

AMERICAS 126089080

scope language itself.  *See Meridian Prods.*, 851 F.3d at 1381 ("Commerce's inquiry must begin with the order's scope to determine whether it contains an ambiguity and, thus, is susceptible to interpretation."); *see also Duferco*, 296 F.3d at 1097 ("{A} predicate for the interpretive process is language in the order that is subject to interpretation.").  "If the scope is unambiguous, it governs."  *Meridian*, 851 F.3d at 1381.  Interpretation of the plain language of the scope is a legal question that the court reviews *de novo*.  *See id.* at 1382.  Here, the plain language of the scope does not include wheels manufactured in third countries where only one of two wheel components originates from China.

The *AD/CVD Orders* state: "The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims *and* discs *from China* to form a steel wheel . . . ."  84 Fed. Reg. 24098, 24100 (emphasis added).  On its face, the plain language of the scope indicates that, if a wheel is assembled in a third country, the wheel is subject to the *AD/CVD Orders* only if both the rims "and" discs are from China.  "'And' does not mean 'or.'" *Adams v. U.S. Forest Serv.*, 617 F.3d 1138, 1145 (Fed. Cir. 2012).  "As a linguistic matter, 'and' and 'or' are not synonyms; indeed, they are more nearly antonyms.  One need only start the day with a breakfast of ham *or* eggs to be duly impressed by the difference."  *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742, 746 (9th Cir. 1988) (Kozinski, J., dissenting) (emphasis in original).

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms."  *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001).  Here, the third-country-processing provision of the *AD/CVD Orders'* scope cannot reasonably be interpreted to include wheels made in third countries from rims *or* discs from China, because the scope states "rims *and* discs

from China" – not "rims **or** discs from China."  Consequently, as a matter of law, such wheels manufactured in third countries are outside the scope of the *AD/CVD Orders*, and it was impermissible for Commerce to conclude otherwise.  *See Allegheny Bradford*, 342 F. Supp. 2d at 1183 ("{A} scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms."), citing *Duferco*, 296 F.3d at 1094-95.

**B.**     **Commerce's Interpretation of the Scope Based on the § 351.225(k)(1) Primary Interpretive Sources Is Unsupported by Substantial Evidence**

Although the scope language is paramount, Commerce will also consider primary interpretive sources, namely, the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of {Commerce} (including prior scope determinations) and the Commission."  19 C.F.R. § 351.225(k)(1); *see also Meridian*, 851 F.3d at 1382; *Duferco*, 296 F.3d at 1097 ("Scope orders are 'interpreted with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order.'"), quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990).  "Commerce's analysis of these sources against the product in question produces factual findings reviewed for substantial evidence."  *Meridian*, 851 F.3d at 1382.  Here, contrary to an unequivocal record, Commerce unreasonably denied having confirmed in the original investigations that wheels manufactured in third countries with only one wheel component (discs) originating in China are outside the scope.

**1.**     **Commerce confirmed in the AD/CVD investigations that wheels made in third countries with rims _or_ discs from China (but not both) are outside the scope**

Commerce's scope determination in the original investigations – consideration of which is required under 19 C.F.R. § 351.225(k)(1) – reinforces the conclusion that both the rims **and**

discs of the wheels must originate in China for steel wheels assembled in third countries to fall within the scope of the *AD/CVD Orders*.

During the AD/CVD investigations, Petitioners requested a clarification of the scope, proposing that Commerce include the following third-country-provision language:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims <u>and</u> discs*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the investigations if performed in the People's Republic of China.

*Petitioners' Request for Clarification* at 4 (emphasis added).   Zhejiang Jingu argued that Petitioners' proposed scope language was "overly broad and vague, potentially expanding the scope to include other merchandise that also originates in third countries (*e.g.*, the language does not explicitly require that ***both the rim <u>and</u> disc be produced in China*** for China to be considered the origin)."  *See Final AD IDM* at 8 (emphasis added).

In response, Commerce stated that it "***agree{d} with Zhejiang Jingu*** that the proposed scope amendment should include further clarifying language."  *Id.* at 12 (emphasis added). Consequently, based on its understanding that Petitioners were "requesting that ***rims and discs from China*** that have been further processed in a third country into finished steel wheels be included within scope{,}" *id.*, Commerce added the qualifier "from China" to Petitioners' proposed third-country-processing language, as follows:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims and discs <u>from China</u>*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*Id.* at 9 (emphasis added).  By doing so, Commerce conveyed its agreement with Zhejiang Jingu that, absent such language ("from China"), the *AD/CVD Orders* would be expanded beyond

AMERICAS 126089080

Petitioners' stated intent, impermissibly capturing steel wheels that originate in third countries (not China).

In light of this context, Commerce's scope determination in the AD/CVD investigations leads to the unavoidable conclusion that the agency interpreted the third-country-processing provision to mean that truck wheels manufactured in a third country with rims *or* discs from China – but not both – are outside the scope of the *AD/CVD Orders*.  Any conclusion otherwise is unreasonable and, thus, unsupported by substantial evidence.

### 2. Commerce recharacterized its scope analysis from the AD/CVD investigations

Despite its clarification of the third-country-processing provision in the original investigations, Commerce concluded in the contested *Final Scope Ruling* that the scope of the *AD/CVD Orders* is "ambiguous" as to coverage of finished wheels manufactured in a third country using rims or discs (but not both) from China.  *See Final Scope Ruling* at 9.  In doing so, Commerce offered three main justifications for its newfound position – none of which is supported by substantial evidence.

First, Commerce claimed that it "declined to clarify the scope language as requested by the respondents . . . in the underlying investigations beyond the merchandise subject to those investigations."  *Final Scope Ruling* at 9.  This claim is demonstrably false.  As recounted above, in the AD/CVD investigations Commerce "***agree{d} with Zhejiang Jingu*** that the proposed scope amendment should include further clarifying language{,}" and therefore added "from China" to Petitioners' proposed third-country-processing provision to clarify that "***rims and discs <u>from China</u>*** that have been further processed in a third country into finished steel wheels be included within scope."  *Final AD IDM* at 12 (emphasis added).  Moreover, Commerce made this change in response to Zhejiang Jingu's argument that, absent such language ("from China"),

the *AD/CVD Orders* would be expanded beyond Petitioners' stated intent, impermissibly capturing steel wheels that originate in third countries (not China). *See id.* at 8, 12. Because Commerce's claim that it "declined to clarify the scope language as requested by the respondents" is impossible to reconcile with the *Final AD IDM*, it is unsupported by substantial evidence.

Second, Commerce asserted that, by clarifying the third-country-processing language in the AD/CVD investigations, it "did not automatically exclude an array of products, such as steel wheels assembled in a third country of Chinese-origin and third country components." *Final Scope Ruling* at 9. Rather, Commerce claimed that "it considered the most appropriate resolution to the question to be an evaluation of specific examples on a case-by-case basis in the context of future scope or circumvention inquiries, in consideration of information regarding **substantial transformation**, if appropriate." *Id.* (emphasis added). Again, however, Commerce mischaracterizes the original investigation record. In the final determinations of the AD/CVD investigations, Commerce declined to conduct a substantial transformation analysis to determine the country of origin for steel wheels assembled and painted in third countries using **Chinese-origin rims and discs**. *See Final AD IDM* at 7-8, 10-11. Commerce decided that it could include such wheels in the scope – without conducting a substantial transformation analysis – "by incorporating the petitioners' proposed clarification of the scope" (*i.e.*, by incorporating the "welding and painting of **rims and discs from China** to form a steel wheel" language). *See id.* at 10-11. Commerce did not state – or even suggest – that it was deferring the question of whether the *AD/CVD Orders* include "steel wheels assembled in a third country of Chinese-origin and third country components." To the contrary, as discussed above, Commerce agreed with Zhejiang Jingu that the scope should be clarified further to avoid including such third-country

21

wheels contrary to Petitioners' stated intent.  Consequently, this assertion is also unsupported by substantial evidence.

Third, Commerce asserted that the "including, but not limited to" language of the third-country-processing provision means that wheels made in third countries from rims or discs from China were not necessarily excluded from the scope.  *See Final Scope Ruling* at 10; *see also Preliminary Scope Ruling* at 11 ("The 'including, but not limited' clause indicates that the 'welding and painting of rims and discs from China to form a steel wheel' are non-exhaustive examples of included processing.").  While the "including, but not limited to" phrase indicates the scope may include scenarios of third-country processing of Chinese-origin rims, discs, and wheels beyond those provided as examples in the scope language, Commerce addressed the question of wheels made in third countries from rims *or* discs from China in the AD/CVD investigations, as detailed above.  Specifically, Commerce implemented Zhejiang Jingu's request to clarify the scope language to "explicitly require that both the rim and disc be produced in China for China to be considered the country of origin{}."  *Final AD IDM* at 8, 12. Consequently, Commerce's assertion regarding the "including, but not limited to" language is also unsupported by substantial evidence.

### C.    Conclusion

As reported to Commerce, Asia Wheel produces Thai Truck Wheels using only one Chinese-origin wheel component – the discs.  *See Asia Wheel Scope Ruling Request* at Exhibit 4. Consequently, consistent with the plain language of the third-country-processing provision and Commerce's interpretation of it during the original AD/CVD investigations, Asia Wheel's Thai Truck Wheels are outside the scope of the *AD/CVD Orders*.  Commerce's conclusion in the *Final Scope Ruling* that the scope is ambiguous on this point is not in accordance with law and unsupported by substantial evidence.

22

## II.   COMMERCE'S "SUBSTANTIAL TRANSFORMATION" ANALYSIS IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

In determining that the Chinese-origin discs were not substantially transformed in Thailand, Commerce failed to apply the proper legal standard or reach a conclusion supported by substantial evidence.  Contrary to binding case law, Commerce ducked the fundamental question of whether Asia Wheel's processing in Thailand resulted in a product with a new name, character, and use.  Commerce also unreasonably concluded – contrary to undisputed evidence that a finished wheel requires both a rim and a disc to exhibit its essential characteristics and achieve its function – that a Chinese-origin disc alone already exhibits the essential characteristics of a finished wheel.  For these reasons, Commerce's determination that Asia Wheel's manufacturing operations in Thailand failed to yield a substantial transformation is not in accordance with law and unsupported by substantial evidence.

Commerce conducts a "substantial transformation" analysis "to determine country of origin for an **imported article**."  *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (citing *E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854, 859 (Ct. Int'l Trade 1998)) (emphasis added).  The Federal Circuit has held that "{a} substantial transformation occurs where, 'as a result of manufacturing or processing steps . . . {,} the {product} loses its identity and is transformed into a new product having a new, name, character and use.'"  *Id.* (quoting *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)).  In determining whether substantial transformation occurs, Commerce's practice is to consider factors such as "(1) the class or kind of merchandise; (2) the nature and sophistication of processing in the country of exportation; (3) the product properties, essential component of the merchandise, and intended end-use; (4) the cost of production/ value added; and (5) level of investment."  *Id.* at 1228-29.

AMERICAS 126089080

Here, in finding the absence of a substantial transformation, Commerce ignored the fundamental question of whether the Chinese-origin wheel component (a disc) became "a new product having a new name, character and use" in Thailand. *Bell Supply*, 888 F.3d at 1228 (quoting *Bestfoods*, 165 F.3d at 1373). Commerce conceded as much in its final determination, stating:

> Whereas Commerce ***may*** consider whether the third-country processing imparted 'a new name, character, and use' in consideration of the totality of circumstances, any such finding may not supplant an analysis of the record otherwise with respect to the substantial transformation factors and evidence. This suggests that the further processing did not substantially transform the merchandise, regardless of whether a new name, character, and use was obtained as a result of such processing.

*Final Scope Ruling* at 18 (emphasis added). Commerce had it backwards. As recognized by the Federal Circuit in *Bell Supply*, the purpose of the substantial transformation factors is to inform whether, through manufacturing or processing, an article lost its identity and became a new product with a new name, character, and use. *See Bell Supply*, 888 F.3d at 1228; *see also E.I. DuPont*, 8 F. Supp. 2d at 857 ("Substantial transformation generally refers to a degree of processing or manufacturing resulting in a new and different article.").

In fact, Commerce itself referred to "name, character, and use" as the principal test under the substantial transformation analysis in the "Legal Framework" section of its final and preliminary scope rulings, stating: (1) "Commerce's substantial transformation analysis asks . . . whether, as a result of the manufacturing or processing, the product loses its identity and is transformed into a new product having a new name, character, and use" and (2) that "Commerce ***may*** examine a number of factors in conducting its substantial transformation analysis" (*e.g.*, class or kind of merchandise; essential component and intended end-use; nature/sophistication of processing). *Final Scope Ruling* at 5 (citing *Bell Supply*, 888 F.3d at 1228-29) (emphasis added); *Preliminary Scope Ruling* at 6 (same). Commerce's failure to apply the legal standard it

AMERICAS 126089080

articulated highlights the arbitrary nature of its substantial transformation analysis.  *See*, *e.g.*, *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009) (remanding to Commerce and explaining that "{o}nce Commerce establishes a course of action, . . . Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary"); *Katunich v. Donovan*, 599 F. Supp. 985, 986 (Ct. Int'l Trade 1984) ("It is a sound principle of administrative law that an administrative agency must either follow or adhere to existing policies and precedents or explain its noncompliance or deviation.").

Nowhere in either its final or preliminary scope ruling did Commerce answer the central question of whether the Chinese-origin disc used by Asia Wheel became a new product (a Thai Truck Wheel) in Thailand.  *See Final Scope Ruling* at 11-25; *Preliminary Scope Ruling* at 13-20. Instead, Commerce conducted a detailed analysis of the substantial transformation factors that was divorced from the fundamental question and, consequently, meaningless.  Ultimately, Commerce concluded "that the country of origin of such inputs" – *i.e.*, the Chinese-origin discs – "is China and, thus, they remain subject to the *Orders* after processing in Thailand."  *Final Scope Ruling* at 25.[3]  The question is not, however, the country of origin of the Chinese-origin discs. Rather, the question is the country of origin of the finished truck wheels imported into the United States.  *See Bell Supply*, 888 F.3d at 1228 ("{T}he substantial transformation analysis is used to determine country of origin for an ***imported article***.") (emphasis added).  Because Commerce failed to apply the governing legal standard – addressing whether a Chinese-origin disc became a new product with a new name, character, and use in Thailand – its country-of-origin determination is not in accordance with law.

---

[3] Commerce misspoke when it stated that its "substantial transformation analysis weigh{s} against finding that ***the rims manufactured in Thailand*** are substantially transformed when used to produce Steel wheels in Thailand."  *Final Scope Ruling* at 25 (emphasis added).  Rather, Commerce must have meant the Chinese-origin discs.

AMERICAS 126089080

Commerce's analysis of the "essential component" factor further illustrates its flawed approach.  In finding that this factor weighed against a substantial transformation in Thailand, Commerce reasoned that the Chinese-origin discs "maintain their essential characteristics (discs . . . have a sole purpose/end use as exported from China: *i.e.*, to be incorporated into a specific finished wheel) . . . ."  *Final Scope Ruling* at 25; *see id.* at 19 ("any given {Chinese-origin} disc . . . continues to function as the only such component after incorporation into a finished wheel"); *Preliminary Scope Ruling* at 17 ("The essential qualities and sole purpose of {Chinese-origin discs} seemingly do not change through processing in Thailand.").  Commerce declined to find a substantial transformation, in part, because the Chinese-origin disc continued to have the qualities and function as such after incorporation into a finished truck wheel.  Applying the "new name, character and use" framework, however, the fundamental question is not whether the Chinese-origin disc continues to have the qualities and function as such after processing in Thailand, but whether the essential qualities and function of the Chinese-origin disc differ from the essential qualities and function of the finished truck wheel manufactured in Thailand and imported into the United States.  Again, because Commerce failed to apply the legal standard affirmed by the Federal Circuit in *Bell Supply*, its country-of-origin determination is not in accordance with law.

Commerce's finding with respect to the "essential component" factor is also unsupported by substantial evidence.  Petitioners explained, "{t}he two primary components of a steel wheel are the rim and disc{,}" which "are produced separately, but, ordinarily, they are subsequently welded together to comprise a {wheel}."  *Asia Wheel Substantial Transformation Submission* at Exhibit RFI-ALL-3 (Petition, Vol. I at I-10) (CR 33, PR 43).  Furthermore, in *Trailer Wheels from China*, where the subject merchandise (steel trailer wheels) consists of the same two

components (a rim and a disc) and is produced by essentially the same production steps, (*Asia Wheel Substantial Transformation Submission* at RFI-8 to RFI-9), Petitioner Dexstar Wheel ("Dexstar") explained that:

> The observation that the rim or disc are not useable without being assembled into a wheel does not detract from the fact that the rim and the disc are the essential components of the wheel.  The properties of rim and disc define the properties of the wheel and its end use. . . .  **{T}he properties and end uses of a wheel are determined by the physical properties of the rim and the disc, not by the assembly process.**

*Asia Wheel Substantial Transformation Submission* at Exhibit RFI-ALL-5 (CR 33, PR 43) (emphasis added).  Therefore, a finished wheel requires both a rim and a disc to exhibit its essential characteristics and achieve its function.  Yet, from this record evidence, Commerce somehow nonsensically reasoned that a Chinese-origin disc fails to become a new product – a complete and functional wheel – when it is welded to a Thai-origin rim and painted in Thailand. Because Commerce failed to draw a "rational connection between the facts found and the choice made{,}" its finding that the Chinese-origin disc is not substantially transformed in Thailand is unsupported by substantial evidence.  *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Because Commerce failed to apply the proper legal standard and ground its decision in substantial evidence, Commerce's determination – that third-country processing converting a Chinese-origin disc into a finished wheel fails to effect a substantial transformation – should not be sustained.

AMERICAS 126089080

III.  **COMMERCE'S DETERMINATION THAT THE ENTIRE FINISHED WHEEL MANUFACTURED IN THAILAND IS WITHIN THE SCOPE OF THE *AD/CVD ORDERS* IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom*, 254 F.3d at 1072.  An expansion of the scope is impermissible and not in accordance with law.  *See, e.g.*, *Allegheny Bradford*, 342 F. Supp. 2d at 1183; *Mitsubishi Elec. Corp. v. United States*, 802 F. Supp. 455, 460 (Ct. Int'l Trade 1992).  Here, in determining that the entire wheel imported from Thailand is covered by the scope of the *AD/CVD Orders*, Commerce impermissibly expanded the scope contrary to its terms.  In addition, Commerce contradicted its own substantial transformation analysis, rendering its decision unsupported by substantial evidence.

The scope of the *AD/CVD Orders* "includes **rims and discs** that have been further processed in a third country . . . ."  *AD/CVD Orders*, 84 Fed. Reg. at 24100 (emphasis added).  In a Thai Truck Wheel, a Chinese-origin **disc** is further processed in Thailand; consequently, only the disc component could be covered by the *AD/CVD Orders*.  Commerce, however, determined that the entire Thai Truck Wheel manufactured in Thailand is subject to AD/CVD liability.  *See Final Scope Ruling* at 32-33.  Commerce's determination is inconsistent with the plain language of the scope – which includes only the Chinese-origin rim, Chinese-origin disc, or Chinese-origin wheel processed in a third country – and, therefore, not in accordance with law.

Additional scope language makes clear that the *AD/CVD Orders* apply only to the wheel component that is subject, as opposed to covering nonsubject components as well.  *See AD/CVD Orders*, 84 Fed. Reg. at 24100 ("{I}f the certain on-the-road steel wheels is imported as an assembly with a tire mounted on the wheel and/or with a valve stem attached, the certain on-the-road steel wheel is covered by the scope, but the tire and/or valve stem is not covered by the scope.").

Commerce's determination is also inconsistent with its own "substantial transformation" analysis and, therefore, unsupported by substantial evidence. Commerce determined that Chinese-origin discs were not substantially transformed in Thailand. *See Final Scope Ruling* at 25. If substantial transformation does not occur, however, it follows that the Chinese-origin discs do not lose their identities as such after being converted into a finished wheel. Applying this same logic (*i.e.*, no substantial transformation occurred in Thailand), the rims included in the Thai Truck Wheel (produced in Thailand from steel plates) also do not lose their identities and remain products of Thailand. Under these circumstances, only the Chinese-origin discs of the imported wheel could reasonably be covered by the *AD/CVD Orders* and subject to AD/CVD. In concluding otherwise, Commerce failed to draw a rational connection between the facts found (*i.e.*, the Chinese-origin disc is not substantially transformed) and the choice made (*i.e.*, AD/CVD liability could extend to nonsubject components that likewise were not substantially transformed). *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

In rejecting this argument, Commerce reasoned that its "determination with respect to the production of truck wheels resulting from the assembly in Thailand from the Chinese-origin discs and Thai-origin rims . . . and as exported from Thailand to the United States, is that they are not substantially transformed by Thai processing and remain Chinese-origin wheels." *Final Scope Ruling* at 32-33. Commerce's logic is nonsensical, however, because the "substantial transformation" question necessarily begins with the upstream product (*e.g.*, a Chinese-origin disc) – not the downstream product (*i.e.*, the finished truck wheel). A determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland*, 19 C.I.T. at 37 (citing *USX Corp.*, 655 F. Supp. at 489).

AMERICAS 126089080

IV.   **COMMERCE IMPERMISSIBLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE THE DATE OF INITIATION OF THE SCOPE INQUIRY**

Commerce has a legal mandate to provide "fair warning" before subjecting imported merchandise to AD/CVD liability.  *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II*").  Here, Commerce should have accounted for the lack of fair warning to importers in its response to CBP's covered merchandise referral.  Instead, Commerce unlawfully directed CBP "to continue" its prior suspension of liquidation under the EAPA – which was retroactive and applied to entries made before the date of initiation of Commerce's scope inquiry – in contravention of its fair warning mandate.  *See* Commerce Liquidation Instruction to CBP, Message 3165407, at para. 3a (PR 83).

A.   **Importers Did Not Receive Fair Warning That Truck Wheels Produced in Third Countries from Chinese "Rims <u>Or</u> Discs" Were Subject To The *AD/CVD Orders* and Could Be Assessed Duties**

Commerce's interpretation of the scope is unsupported by substantial evidence and not in accordance with law, as detailed above.  *See supra*, **Section I**.  In the event that the Court finds the products are nevertheless within the scope, importers of Thai Truck Wheels did not receive fair warning that wheels produced in third countries from Chinese "rims or discs" were subject to the *AD/CVD Orders* and could be assessed duties until Commerce initiated the scope inquiry requested by Asia Wheel.  Commerce admitted in the *Final Scope Ruling* that fair warning was not provided to importers of Thai Truck wheels until May 12, 2021, the date Commerce initiated the scope inquiry.  *See Final Scope Ruling* at 28.  Consequently, even by Commerce's own admission, importers lacked fair warning that the specific wheels at issue were potentially within the scope until that date.

An "assessment of retroactive duties . . . is . . . unlawful" without "adequate notice" of potential AD/CVD applicability.  *See Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d

1275, 1287-88 (Ct. Int'l Trade 2021) ("*Trans Texas I*"); *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304-05 (Ct. Int'l Trade 2021) ("*Trans Texas II*").  As the Federal Circuit explained when invalidating "retroactive" AD/CVD liability in its seminal *Tai-Ao II* decision:

> The notice requirement reflects "***the broader due-process principle*** that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct {the order or regulation} prohibits or requires.'"

*Tai-Ao II*, 983 F.3d at 495 (emphasis added) (quoting *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012)). "This notice requirement is designed to avoid unfairness to importers . . . ." *Id.* at 494.

In describing the scope of the *AD/CVD Orders* at the conclusion of its investigations, Commerce did not provide fair warning that truck wheels produced in third countries from Chinese "rims ***or*** discs" imported into the United States were or could eventually be subject to the orders.  During the AD/CVD investigations, Zhejiang Jingu argued that "{t}he proposed scope language is overly broad and vague, potentially expanding the scope to include other merchandise that also originates in third countries (*e.g.*, the language does not explicitly require that both the rim and disc be produced in China for China to be consider the country of origin)." *Final AD IDM* at 8.  In response, Commerce stated that it "***agree{d} with Zhejiang Jingu*** that {Petitioners'} proposed scope amendment should include further clarifying language{,}" and therefore added "from China" to clarify that "***rims and discs <u>from</u> China*** that have been further processed in a third country into finished steel wheels {are} included within scope." *Id.* at 12 (emphasis added).

Given the record from the original AD/CVD investigations, there was no basis for an importer to believe that truck wheels processed in a third country with Chinese "rims ***or*** discs"

AMERICAS 126089080

were or potentially could be subject to the *AD/CVD Orders*.  Instead, Commerce gave importers the opposite message – a due process violation that is all the more egregious because importers have millions of dollars of AD/CVD liability at stake, facing a combined AD/CVD rate that exceeds 680%.  *See AD/CVD Orders*, 84 Fed. Reg. 24098-24099.

Despite the unequivocal record recounted above and in more detail in **Section I.B**, Commerce claimed that "fair warning that merchandise produced pursuant to production methods other than those outlined in the underlying investigation, generally, may be the subject of a future scope inquiry was explicitly provided by the statements in the underlying investigation which considered this type of inquiry . . . ."  *Final Scope Ruling* at 27.  As support for this contention, Commerce quoted the following line from the *Final AD IDM*: "While in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, ***the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case.***"  *Final Scope Ruling* at 28 (emphasis in original).  Again, however, Commerce mischaracterizes the original investigation record.   In the final determinations of the AD/CVD investigations, Commerce declined to conduct a substantial transformation analysis to determine the country of origin for steel wheels assembled and painted in third countries using ***Chinese-origin rims and discs***.  *See Final AD IDM* at 7-8, 10-11. Commerce did not state – or even suggest – that it was deferring the question of whether the *AD/CVD Orders* include steel wheels manufactured in third countries using rims ***or*** discs (but not both) from China.  Instead, Commerce indicated that such wheels are outside the scope. Consequently, read in context, Commerce's final scope determination cannot be said to have provided fair warning to importers that truck wheels manufactured in third countries with rims ***or*** discs from China were within scope.  Moreover, even if Commerce were correct that its *Final*

32

*AD IDM* provided notice of its intent to revisit whether AD/CVD should apply to such wheels, intent possibly to reconsider at some point in the future is ***not*** fair warning of instant AD/CVD applicability.  *See Tai-Ao II*, 983 F.3d at 495.

*Tai-Ao* is instructive.  In that case, Commerce initiated a circumvention inquiry in March 2016 as to one exporter and stated its intent to consider additional exporters later in the proceeding.  *See Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 15039, 15039 (Dep't Commerce Mar. 21, 2016) (initiation circumvention inquiry).  Subsequently, in November 2016, Commerce preliminarily found circumvention with respect to ***all*** exporters and retroactively assigned AD/CVD liability to those not initially named.  *See Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 79444, 79446 (Dep't Commerce Nov. 14, 2016) (prelim. circumvention determ.).  The court invalidated Commerce's unlawful retroactive AD/CVD assessment:

> The Initiation Notice does not provide any sort of set circumstances under which Commerce would determine all exporters were subject to the inquiry's findings.  In fact, **the language "intends to consider whether the inquiry should apply" plainly indicates that Commerce had not yet determined the inquiry applied to all PRC exporters or the circumstances under which it would**.  In contrast, the Initiation Notice **provides clear notice** that **the inquiry "covers** extruded aluminum products . . . exported by **Zhongwang**."  If Commerce had wanted to conduct an inquiry into all PRC exporters, it **should have stated this fact in similarly clear language**.

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301, 1314-15 (Ct. Int'l Trade 2019) ("*Tao-Ao I*") (emphases added), *opinion affirming remand*, 415 F. Supp. 3d 1391 (Ct. Int'l Trade 2019).  The Federal Circuit affirmed: "A statement of ***intention*** to 'consider whether the inquiry should apply to all imports' is not the same as a notice that such imports are within the scope of the inquiry."  *Tai-Ao II*, 983 F.3d at 495 (emphasis added).  Accordingly, Commerce's

33

mere intent to revisit a position in the future does not constitute sufficient notice of AD/CVD liability.

Likewise here, even if Commerce were correct that it "conveyed to any reasonably informed importers sufficient notice that" steel wheels manufactured in third countries with rims or discs from China "may be the subject of a future scope inquiry{,}" *Final Scope Ruling* at 28, a statement of intent to revisit that determination in the future is insufficient warning.  "If Commerce had wanted" to include wheels made in third countries with "rims or discs" from China (but not both), "it should have stated this fact in similarly clear language."  *Tai-Ao II*, 391 F. Supp. 3d at 1315.

This court in *Trans Texas*, which involved the AD/CVD orders on trailer wheels, adopted the *Tai-Ao* reasoning to invalidate Commerce's retroactive assessment of AD/CVD on physical vapor deposition ("PVD") chrome wheels, holding:

> Commerce failed to provide adequate notice upon the initiation of the {AD/CVD} proceedings that PVD chrome wheels would not qualify for the exclusion for steel trailer wheels coated in chrome.  Commerce's assessment of retroactive duties on PVD chrome wheels is therefore unlawful.

*Trans Texas I*, 519 F. Supp. 3d at 1287; *Trans Texas II*, 519 F. Supp. 3d at 1303.  Here, Commerce likewise "failed to provide adequate notice" that wheels comprised of "rims *or* discs" from China were subject to the *AD/CVD Orders*, such that "Commerce's assessment of retroactive duties" on such wheels "is therefore unlawful."  *Trans Texas I*, 519 F. Supp. 3d at 1287; *Trans Texas II*, 519 F. Supp. 3d at 1303.

The different contexts in which the scope issues presented in *Tai-Ao* and *Trans Texas* arose – a circumvention case in the former, and original AD/CVD investigations in the latter – do not detract from their relevance to this proceeding.  The Federal Circuit in *Tai-Ao II* made clear that the "notice requirement is designed to avoid unfairness to importers and foreign

exporters." *Tai-Ao II*, 983 F.3d at 494.  Further, the *Trans Texas* Court rejected Defendant's argument that *Tai-Ao* notice should be different in a scope ruling context:

> Although the case cites to the anti-circumvention regulations, which are not at issue in this case, the Federal Circuit nevertheless emphasized the importance of fairness to affected importers in the assessment of duties. . . . Although the facts are not perfectly analogous to this case, Tai-Ao I and Tai-Ao II clearly show that adequate notice is essential where Commerce attempts to apply retroactive duties.

*Trans Texas I*, 519 F. Supp. 3d at 1287-1288 (citations omitted); *Trans Texas II*, 519 F. Supp. 3d at 1304 (citations omitted).  There is no indication in either *Tai-Ao* or *Trans Texas* that critical due process protection regarding scope is only required in a circumvention proceeding or in an original AD/CVD investigation.  Rather, both cases stand for the "broader due-process principle" that Commerce must provide fair warning of potential AD/CVD liability before liquidation of entries can be suspended.  *Tai-Ao II*, 983 F.3d at 495; *see also Tai-Ao I*, 391 F. Supp. 3d at 1314-15; *Trans Texas I*, 519 F. Supp. 3d at 1287-88; *Trans Texas II*, 519 F. Supp. 3d at 1304-05.

In particular, *Tai-Ao* confirms that statements of intent to consider the potential application of AD/CVD in the future do not constitute fair warning, unless and until such time as Commerce acts on that tabled issue.  *Tai-Ao I*, 391 F. Supp. 3d at 1314-15; *Tai-Ao II*, 983 F.3d at 495.  Here, by Commerce's own admission, fair warning with respect to Thai Truck Wheels occurred on May 12, 2021, the date of initiation of the underlying scope inquiry.

> Any ambiguity that the *specific* steel wheels assembled in Thailand from Chinese-origin discs and Thai-origin rims manufactured from rectangular steel plates sourced from China or a third country may be subject to liabilities was established by the May 12, 2021, Asia Wheel scope inquiry initiation memorandum, and the explicit mention of the merchandise in question therein constituted fair warning to any reasonably informed importer.

*Final Scope Ruling* at 28.  Because importers lacked adequate notice that Thai Truck Wheels were potentially covered by the *AD/CVD Orders* before May 12, 2021, suspension of liquidation could not legally begin earlier than that date.

**B.      Commerce Unlawfully "Continued" CBP's Prior Suspension of Liquidation**

Commerce instructed CBP to continue its prior suspension of liquidation under the EAPA relating to the wheels manufactured by Asia Wheel in Thailand.  Commerce's instructions are unlawful because importers lacked fair warning that truck wheels manufactured in a third country with rims *or* discs from China were potentially within the scope of the *AD/CVD Orders* until May 12, 2021, as discussed above.  In declining to instruct CBP to terminate its prior (and retroactive) suspension of liquidation under the EAPA, Commerce impermissibly relied on the suspension of liquidation provision of its regulations, 19 C.F.R. § 351.225(l), in contravention of the broader due-process principle of adequate notice.

On June 9, 2021, Commerce received a covered merchandise (scope) referral from CBP. *Referral Notice*, 86 Fed. Reg. 38270.   CBP made the request pursuant to 19 U.S.C. § 1517(b)(4)(A) because it was "unable to determine whether the merchandise at issue is covered merchandise {defined as merchandise covered by an AD or CVD order.}"  *Id*.  In response, Commerce stated that it "intend{ed} to determine whether the merchandise subject to the referral is covered by the scope of the orders" and that the covered merchandise referral would be addressed in the scope inquiry requested by Asia Wheel.  *Id*.

In its *Final Scope Ruling*, Commerce found that the scope language was ambiguous with respect to the truck wheels manufactured by Asia Wheel in Thailand with one wheel component sourced from China, yet refused to acknowledge that it had not provided fair warning to importers that such wheels were potentially within the scope of the *AD/CVD Orders*.  *Final Scope Ruling* at 9, 26-31.   Commerce also stated it would "instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the *Orders* if already suspended." *Id.* at 27 (citing 19 C.F.R. § 351.225(l)(3)).  Commerce claimed it lacked "authority

to direct suspension of liquidation implemented by CBP {under interim measures pursuant to 19 U.S.C. § 1517(e)}." *Id.* at 30.

To the contrary, Commerce has the ultimate authority to determine whether ***and when*** a product is within the scope of an order, subject to the due-process requirement of providing fair warning. *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1321 (Fed. Cir. 2020) (recognizing that, while CBP has initial authority to determine whether a given entry of imported merchandise is subject to the scope of an AD/CVD order, CBP cannot "'modify Commerce's determinations' or otherwise impinge on Commerce's authority to issue and set the scope of duty orders"); *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) ("{Because t}he Tariff Act does not require Commerce to define the 'class or kind of {foreign} merchandise' in any particular manner{,} . . . Commerce has the authority to fill that gap and define the scope of an order consistent with the countervailing duty and antidumping duty laws.") (citation omitted).

Under the EAPA specifically, Commerce has the authority to determine whether "the merchandise at issue is covered merchandise" in response to a CBP referral. 19 U.S.C. § 1517(b)(4)(A). "Covered merchandise" means "merchandise that is subject to" an AD/CVD order. 19 U.S.C. § 1517(a)(3). Inherently, a determination of whether imported merchandise is "subject to" an order may also entail ***when*** the merchandise ***became*** subject to the order. Moreover, this court has recognized that Commerce's determination of the scope overrides a contrary scope position taken by CBP:

> Customs' inclusion of merchandise in the EAPA investigation that had been determined by Commerce to be outside the scope of the Order is contrary to law because **the EAPA statute does not permit Customs to include merchandise that is not covered by the scope of the Order**. 19 U.S.C. § 1517(c)(1)(A). The Court notes that the EAPA statute states clearly that Commerce, not Customs, is the appropriate administering authority to issue a referral determination of whether merchandise is covered or not. Id. § 1517(b)(4)(A)(i), (B). **Allowing Customs to override and disregard a statutorily authorized Final Scope**

37

> **Ruling by the administering authority would be contrary to law** because this would effectively substitute Customs as the administering authority rather than Commerce. *Id*. § 1517(b)(4)(A)(i).

*Aspects Furniture Int'l Inc. v. United States*, 607 F. Supp. 3d 1246, 1267-1268 (Ct. Int'l Trade 2022) (emphases added).

Here, because Commerce did not provide importers with adequate notice that Thai Truck Wheels were "subject to" the *AD/CVD Orders* until May 12, 2021, Commerce was bound by due-process principles and the Federal Circuit's decision in *Tai-Ao II* to direct CBP to terminate its prior suspension of liquidation under the EAPA – despite 19 C.F.R. § 351.225(l).

The Federal Circuit's decision in *Sunpreme* does not require a different result.  In that case CBP determined the merchandise at issue was subject to an AD order and, consequently, suspended liquidation of those entries.  The Federal Circuit upheld Commerce's instructions for CBP to continue suspension of liquidation even though the scope at issue was ambiguous, holding that "Customs has the authority to suspend liquidation of goods ***when it determines*** that the goods fall within the scope of an ambiguous {AD/CVD} order."  *Sunpreme*, 946 F.3d at 1321 (emphasis added).  Here, in stark contrast, CBP was ***unable to determine*** that the wheels in question were within the scope of the *AD/CVD Orders* and referred that question to Commerce.  Consequently, *Sunpreme* does not require Commerce to continue the prior (and retroactive) suspension of liquidation imposed by CBP.  To the contrary, "the broader due-process principle" of fair warning required Commerce to instruct CBP to terminate its prior suspension of liquidation and to commence suspension as of May 12, 2021, at the earliest.  Unlike here, the Federal Circuit affirmed Commerce's decision to continue CBP's prior suspension of liquidation in *Sunpreme* because "retroactivity concerns" were not raised.  *See Sunpreme*, 946 F.3d at 1319.

In the *Final Scope Ruling*, Commerce also cited *Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) as supporting CBP's separate

AMERICAS 126089080

authority to suspend liquidation under the EAPA.  *Final Scope Ruling* at 30.  That case, however, is distinguishable.  In *Diamond Tools*, the court upheld CBP's decision to continue a prior suspension of liquidation imposed as interim measures under the EAPA, where Commerce had not imposed any temporal limitation on CBP's authority to suspend liquidation in its response to a covered merchandise referral.  *See* 545 F. Supp. 3d at 1348.  Whereas *Diamond Tools* involved a challenge to CBP's EAPA authority directly, here Asia Wheel contests **Commerce's** unlawful decision to continue a prior (and retroactive) suspension of liquidation in violation of "the broader due-process principle" that importers must have fair warning before their imported merchandise is subject to AD/CVD liability.  *See Tai-Ao II*, 983 F.3d at 495.

For these reasons, Asia Wheel respectfully asks the Court to instruct Commerce to reformulate its suspension of liquidation instructions such that imports of Thai Truck Wheels with entry dates before the date of initiation of the scope inquiry (May 12, 2021) are not treated as covered merchandise (subject to the *AD/CVD Orders*).

AMERICAS 126089080

## CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, Plaintiff Asia Wheel respectfully requests that the Court:

1)      Enter judgment in favor of Plaintiff;

2)      Hold that Commerce's *Final Scope Ruling* is unsupported by substantial evidence and otherwise not in accordance with law;

3)      Remand this matter to Commerce to issue a revised final determination in conformity with the Court's opinion; and

4)      Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
jcampbell@whitecase.com
*Counsel to Plaintiff Asia Wheel Co., Ltd.*

Date: January 30, 2024

AMERICAS 126089080

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for the Memorandum of Points and Authorities in Support of the Motion for Judgment on the Agency Record filed by Asia Wheel Co., Ltd., as computed by White & Case LLP's word processing system (Microsoft Word 2016) and manual count, is 11,551 words (including 9 words from the images on page 4).

/s/ Jay C. Campbell
Jay C. Campbell

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| |
|---|
| ASIA WHEEL CO., LTD., |
|                        Plaintiff, |
|             and |
| ZC RUBBER AMERICA INC., |
|                        Plaintiff-Intervenor, |
|             v. |
| UNITED STATES, |
|                        Defendant, |
|             and |
| ACCURIDE CORPORATION, |
|             Defendant-Intervenor. |

Court No. 23-00143

<u>**ORDER**</u>

Upon consideration of Plaintiff's motion for judgment upon the agency record pursuant to Rule 56.2 of the Rules of this Court, the Court, having reviewed the papers and pleadings on file herein, and after due deliberation, it is hereby:

**ORDERED** that Plaintiff's motion is granted; and it is further

**ORDERED** that this matter is remanded to the United States Department of Commerce for disposition consistent with the Court's final opinion.

**SO ORDERED.**

Dated: _____, 2024                    _____
          New York, New York                                              Timothy C. Stanceu, Judge