**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| ASIA WHEEL CO., LTD.,<br><br>*Plaintiff*,<br><br>and<br><br>ZC RUBBER AMERICA INC.,<br><br>*Plaintiff-Intervenor*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br><br>and<br><br>ACCURIDE CORPORATION,<br><br>*Defendant-Intervenor*. | Court No. 23-00143<br><br>Before: The Hon. Timothy C. Stanceu, Judge |

**PLAINTIFF-INTERVENOR'S RULE 56.2**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**
**AND MEMORANDUM IN SUPPORT THEREOF**

Jing Zhang
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385
*Counsel to ZC Rubber America Inc.*

Dated: February 13, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| ASIA WHEEL CO., LTD., | |
| *Plaintiff*, | |
| and | Court No. 23-00143 |
| ZC RUBBER AMERICA INC., | |
| *Plaintiff-Intervenor*, | Before: The Hon. Timothy C. Stanceu, Judge |
| v. | |
| UNITED STATES, | |
| *Defendant*, | |
| and | |
| ACCURIDE CORPORATION, | |
| *Defendant-Intervenor*. | |

## PLAINTIFF-INTERVENOR'S RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the Court of International Trade, ZC Rubber America, Inc. (hereinafter "Plaintiff-Intervenor" or "ZC Rubber"), hereby moves for judgment upon the agency record with respect to the issues raised in the Complaint filed with the Court on August 11, 2023 by Asia Wheel Co., Ltd. (hereinafter "Plaintiff" or "Asia Wheel").

Plaintiff's action contests the Final Scope Ruling issued by the U.S. Department of Commerce (the "Department" or "Commerce") finding that certain truck wheels produced by Asia Wheel in Thailand fall within the scope of the antidumping and countervailing duty orders on *Certain Steel Wheels 22.5 to 24.5 inches in Diameter from the People's Republic of China*. *See* Commerce Memorandum, regarding "*Final Scope Ruling: Asia Wheel's Steel Wheels*

*Processed in Thailand*" (A-570-082, C-570-083) (June 7, 2023) (PR 79). As demonstrated in

Plaintiff-Intervenor's brief in support of this motion, the Department's Final Scope Ruling is not

supported by substantial evidence and is otherwise not in accordance with law. Plaintiff-

Intervenor, therefore, respectfully moves this Court to grant judgment in its favor and remand the

Final Scope Ruling to the Department for reconsideration consistent with the opinion of this

Court.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/Jing Zhang_____
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385

*Counsel to ZC Rubber America Inc*

</div>

Dated: February 13, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| ASIA WHEEL CO., LTD.,<br><br>*Plaintiff*,<br><br>and<br><br>ZC RUBBER AMERICA INC.,<br><br>*Plaintiff-Intervenor*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br><br>and<br><br>ACCURIDE CORPORATION,<br><br>*Defendant-Intervenor*. | Court No. 23-00143<br><br>Before: The Hon. Timothy C. Stanceu, Judge |

**ORDER**

Upon consideration of Plaintiff-Intervenor's Motion for Judgment Upon the Agency Record, the Court having reviewed the responses thereto, and all other pleadings and proceedings herein, it is hereby,

ORDERED, that the Rule 56.2 Motion of Plaintiff-Intervenor is hereby granted, and that the U.S. Department of Commerce's Final Scope Ruling in *Certain Steel Wheels 22.5 to 24.5 inches in Diameter from the People's Republic of China* is vacated and remanded to the agency.

_____
The Honorable Timothy C. Stanceu

Dated:_____, 2024
      New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| ASIA WHEEL CO., LTD.,<br><br>     *Plaintiff*,<br><br>  and<br><br>ZC RUBBER AMERICA INC.,<br><br>     *Plaintiff-Intervenor*,<br><br>  v.<br><br>UNITED STATES,<br><br>     *Defendant*,<br><br>  and<br><br>ACCURIDE CORPORATION,<br><br>     *Defendant-Intervenor*. | Court No. 23-00143<br><br>Before: The Hon. Timothy C. Stanceu, Judge |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-INTERVENOR'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD**</u>

Jing Zhang
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385

*Counsel to ZC Rubber America Inc*

Dated: February 13, 2024

# <u>TABLE OF CONTENTS</u>

**Page**

**STATEMENT PURSUANT TO RULE 56.2** ................................................................ 2

   I.    ADMINISTRATIVE DETERMINATION UNDER REVIEW ............................ 2

   II.   STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT ..................... 2

         A.    Whether Commerce Unlawfully Expanded the Scope of the AD/CVD Orders Contrary to the Plain Language of the Scope and Commerce's Scope Determination in the Original AD/CVD Investigations ............................................................................................ 2

         B.    Whether Commerce's Determination that Chinese-Origin Wheel Discs Were Not Substantially Transformed into Steel Wheels in Thailand is Unsupported by Substantial Evidence and Not in Accordance with Law ................................................................................ 3

         C.    Whether Commerce's Decision to Impose AD/CVD duties on the Entire Imported Truck Wheel, as Opposed to Only the Chinese-Origin Discs, is Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law ......................................................... 4

**STATEMENT OF FACTS** ............................................................................................ 5

   I.    ORIGINAL AD AND CVD INVESTIGATIONS AND SCOPE REQUEST ................................................................................................................ 5

   II.   ASIA WHEEL'S TRUCK WHEEL PRODUCTION IN THAILAND ............... 7

   III.  COMMERCE'S PRELIMINARY SCOPE RULING .......................................... 7

   IV.  ASIA WHEEL AND ZC RUBBER'S BRIEFING ............................................. 8

   V.   COMMERCE'S FINAL SCOPE RULING .......................................................... 9

**STANDARD OF REVIEW** ........................................................................................ 10

**ARGUMENT** .............................................................................................................. 12

   I.    COMMERCE'S INTERPRETATION OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW ........................................................................... 12

   II.   COMMERCE'S "SUBSTANTIAL TRANSFORMATION" ANALYSIS IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE ........................................................................................................ 13

   III.  COMMERCE'S DETERMINATION THAT THE ENTIRE FINISHED WHEEL MANUFACTURED IN THAILAND IS WITHIN THE SCOPE OF THE *AD/CVD ORDERS* IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE .......................................................................... 21

# **TABLE OF CONTENTS**

**(continued)**

**Page**

IV.    COMMERCE IMPERMISSBLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE THE DATE OF INITIATION OF THE SCOPE INQUIRY ....................................... 22

**CONCLUSION** ............................................................................................................. 25

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)** ........ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012) ................................................ 12

*Allegheny Bradford. Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) 12

*Allentown Mack Sales & Sew., Inc. v. NLRB*, 522 U.S. 359, 374, 118 S. Ct. 818, 139 L. Ed. 2d 797 (1998) ........................................................................................................................... 11

*Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) ............... 13, 15, 20

*Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999) ................................................ 13

*Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) .................................. 11, 21

*Consol. Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938) ...................................................................................................................................... 11

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002) ........................... 12

*E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854, 859 (Ct. Int'l Trade 1998) 13

*Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) ..................... 12, 21

*Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970) ........................... 11

*MacLean Power, L.L.C. v. United States,* 359 F. Supp. 3d 1367, 1371 (Ct. Int'l Trade 2019) ... 15

*Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) ........................... 12

*Micron Tech. Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) ................................. 10

*Midwest Fastener Corp. v. United States*, 435 F. Supp. 3d 1262, 1271 (Ct. Int'l Trade 2020) ... 16

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) ......................................................................................................... 11

*Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343, 1352 (Ct. Int'l Trade 2013) ............................................................................................................................. 16, 19, 21

*Suramerica De Aleaciones Laminadas, et al. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994 ...................................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

*Tai-Ao Aluminium (Taishan) Co. v. United States,* 391 F. Supp. 3d 1301, 1315 (Ct. Int'l Trade 2019) ................................................................................................................ 24

*Tai-Ao Aluminum (Taishan) Co. v. United States,* 983 F.3d 487, 495 (Fed. Cir. 2020)......... 22, 24

*Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021)  22

*Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304-05 (Ct. Int'l Trade 2021)  22

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-488, 71 S. Ct. 456, 95 L. Ed. 456 (1951). ................................................................................................................ 11

*USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987).......................... 11, 21

**Statutes**

19 C.F.R. § 351.225(k)(1) ................................................................................................ 2

19 U.S.C. § 1516a(b)(1)(B) .............................................................................................. 10

**Administrative Decisions**

*Certain Steel Wheels from the People's Republic of China,* 84 Fed. Reg. 11,744, 11,746 (Dep't Commerce Mar. 28, 2019) ............................................................................................ 6

*Certain Steel Wheels from the People's Republic of China,* 84 Fed. Reg. 11,746, 11,748 (Dep't Commerce Mar. 28, 2019) ............................................................................................ 6

*Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098 (Dep't Commerce May 24, 2019) ...................................... 2

*Certain Steel Wheels From the People's Republic of China*, 83 Fed. Reg. 17,794 (Dep't Commerce Apr. 24, 2018) ............................................................................................ 5, 12

*Certain Steel Wheels From the People's Republic of China*, 83 Fed. Reg. 45,573, 44,574 (Dep't Commerce Aug. 31, 2018) ............................................................................................ 5

*See Certain Steel Wheels from the People's Republic of China*, 83 Fed. Reg. 17,798 (Dep't Commerce Apr. 24, 2018) ............................................................................................ 5

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| ASIA WHEEL CO., LTD., <br><br> *Plaintiff*, <br><br> and <br><br> ZC RUBBER AMERICA INC., <br><br> *Plaintiff-Intervenor*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> ACCURIDE CORPORATION, <br><br> *Defendant-Intervenor*. | Court No. 23-00143 <br><br> Before: The Hon. Timothy C. Stanceu, Judge |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-INTERVENOR'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Plaintiff-Intervenor, ZC Rubber, a U.S. importer of subject merchandise covered by, but not individually examined in, the scope inquiry conducted by the U.S. Department of Commerce in *Certain Steel Wheels 22.5 to 24.5 inches in Diameter from the People's Republic of China*, submits this Memorandum of Law in Support of its Motion for Judgment Upon the Agency Record pursuant to Rule 56.2 of the Rules of the United States Court of International Trade (the "Court"). For the reasons set forth below, Plaintiff-Intervenor respectfully requests that the Court grant its Motion for Judgment Upon the Agency Record and remand the Department's Final Scope Ruling to the agency for action consistent with this memorandum of law.

## STATEMENT PURSUANT TO RULE 56.2

### I.        ADMINISTRATIVE DETERMINATION UNDER REVIEW

The administrative determination to be reviewed in this action is the Final Scope Ruling issued by the U.S. Department of Commerce finding that certain truck wheels produced by Asia Wheel in Thailand fall within the scope of the antidumping ("AD") and countervailing duty ("CVD") orders on *Certain Steel Wheels 22.5 to 24.5 inches in Diameter from the People's Republic of China. See* Commerce Memorandum, regarding "*Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand*" (A-570-082, C-570-083) (June 7, 2023) (PR 79) ("Final Scope Ruling"); *Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098 (Dep't Commerce May 24, 2019) ("AD/CVD Orders").

### II.       STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

ZC Rubber raises four issues with respect to Commerce's Final Scope Ruling.

> #### A.       Whether Commerce Unlawfully Expanded the Scope of the AD/CVD Orders Contrary to the Plain Language of the Scope and Commerce's Scope Determination in the Original AD/CVD Investigations

Yes. It is well-established that it is unlawful for Commerce to interpret an AD/CVD order contrary to its terms, or contrary to the primary interpretive sources listed in 19 C.F.R. § 351.225(k)(1). Here, in concluding that the scope of the AD/CVD Orders was ambiguous as to whether it covers wheels made in third countries with either rims *or* discs from China, Commerce impermissibly disregarded the plain language of the scope, which refers to "rims and discs from China." In addition, Commerce unreasonably denied that, during the original AD/CVD investigations, it had found that truck wheels manufactured in a third country using only rims *or* discs (but not both) from China are outside the scope.

**B.    Whether Commerce's Determination that Chinese-Origin Wheel Discs Were Not Substantially Transformed into Steel Wheels in Thailand is Unsupported by Substantial Evidence and Not in Accordance with Law**

Yes. In finding that Chinese-origin discs were not "substantially transformed" into finished wheels in Thailand, Commerce failed to apply the governing legal standard and ignored the fundamental question of whether the production activity in Thailand resulted in a product with a new name, character, and use. In addition, Commerce's analysis of the "essential characteristics" factor under the "substantial transformation" test is unlawful because it failed to comply with the agency's duty to consider the merchandise in the condition in which it is imported. Such analysis is also unsupported by substantial evidence because it ignored record evidence that many key physical characteristics of the imported wheel and its end use were all established in Thailand, and thus the essential character of the finished wheels was imparted in that country. Furthermore, Commerce's analysis of the "nature and sophistication of processing" factor is also unsupported by substantial evidence and unlawful, because: (1) Commerce failed to explain why the "design and engineering steps" it focused on are even relevant to the "substantial transformation" test, which, by law, should focus on "manufacturing or processing steps" instead; and (2) Commerce failed to explain what production steps related to the steel sheet plates (used to produce rims in Thailand), on which it intended to rely to find no "substantial information," or why the extensive production steps undertaken by Asia Wheel in Thailand, including the manufacture of rims, do *not* meet the same level of sophistication as those unspecified steps.

      **C.**      **Whether Commerce's Decision to Impose AD/CVD duties on the Entire Imported Truck Wheel, as Opposed to Only the Chinese-Origin Discs, is Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law**

Yes. Despite its finding that the rims of the imported steel wheels are of Thai-origin, Commerce determined that the entire finished wheel imported into the United States was subject to AD/CVD duties. In doing so, Commerce unlawfully expanded the scope of the AD/CVD Orders – which is limited to Chinese-origin "rims and discs that have been further processed in a third country" – contrary to its terms. In addition, Commerce's decision is inconsistent with its own "substantial transformation" finding in this case. That is, if the Chinese-origin discs did not lose their identities after being converted into a finished wheel, the Thai-origin rims also did not lose their identities and remain products of Thailand. Thus, under its own reasoning, Commerce lacks any factual basis to impose AD/CVD liability on the Thai-origin parts of the imported wheels.

      **D.**      **Whether Commerce Unlawfully Directed U.S. Customs and Border Protection to Continue to Suspend Liquidation of Imports Entered Before the Date of Initiation of the Scope Inquiry**

Yes. Importers lacked adequate notice that the truck wheels manufactured in Thailand with *discs* from China but *rims* from Thailand were potentially covered by the AD/CVD Orders until May 12, 2021, the date on which Commerce initiated a scope inquiry to address this very question. Nevertheless, Commerce unlawfully instructed U.S. Customs and Border Protection ("CBP" or "Customs") to continue to suspend liquidation of entries that were made prior to the date of initiation. Commerce's decision violated the broader due-process principle that importers must have fair warning before their imported merchandise is subject to AD/CVD liability.

## STATEMENT OF FACTS

As an initial matter, ZC Rubber fully incorporates all of Asia Wheel's factual statements in its opening brief by reference. *See* Plaintiff's Motion for Judgment on the Agency Record and Accompanying Memorandum of Points and Authorities, Ct. No. 23-00143, ECF No. 30 at 3-15 ("Asia Wheel Opening Br."). Our facts in this section supplement the related facts submitted by Asia Wheel.

## I.   ORIGINAL AD AND CVD INVESTIGATIONS AND SCOPE REQUEST

On April 24, 2018, the Department initiated antidumping and countervailing duty investigations on truck wheels from China, resulting in the AD & CVD orders at issue in this case. *See Certain Steel Wheels from the People's Republic of China*, 83 Fed. Reg. 17,798 (Dep't Commerce Apr. 24, 2018) ("AD Initiation"); *Certain Steel Wheels From the People's Republic of China*, 83 Fed. Reg. 17,794 (Dep't Commerce Apr. 24, 2018) ("CVD Initiation"); and AD/CVD Orders. The scope of the AD and CVD investigations included steel wheels, rims, and discs imported from China. *See* AD Initiation, 83 Fed. Reg. at 17,802 and CVD Initiation, 83 Fed. Reg. at 17,797 ("The merchandise subject to the investigation is certain on-the-road steel wheels, discs and rims for tubeless tires . . . .").

Neither the proposed scope at the time of initiation nor the scope description in the preliminary determinations addresses truck wheels, rims, or discs from China that undergo further processing in a third country. *See* AD Initiation, 83 Fed. Reg. at 17,802; CVD Initiation, 83 Fed. Reg. at 17,797; *Certain Steel Wheels From the People's Republic of China*, 83 Fed. Reg. 45,573, 44,574 (Dep't Commerce Aug. 31, 2018) (prelim. CVD determ.). In December 2018, Petitioners proposed amending the scope to add a third-country processing provision. *See* Letter from Asia Wheel to Commerce, entitled "*Responses to the Request for Information for All*

*Interested Parties and the Second Supplemental Questionnaire for Asia Wheel"* (A-570-082, C-570-083) (July 11, 2022) at Exhibit RFI-ALL-2 (CR 33, PR 43) ("Asia Wheel Second Supp. QR"). Interested parties commented on this issue, as discussed by Asia Wheel. Asia Wheel Opening Br. at 5–7. In its final determination, Commerce adopted the third-country processing provision proposed by Petitioners, while also agreeing with respondent Zhejiang Jingu "that the proposed scope amendment should include further clarifying language." *See* Commerce Memorandum, regarding "*Issues and Decision Memorandum for the Final Determination of the Less-Than-Fair-Value Investigation of Certain Steel Wheels from the People's Republic of China*" (A-570-082) (March 21, 2019) at 12 (CR 1, PR 1) ("Final AD IDM")[1]. As a result, Commerce added the term "from China" to Petitioners' proposed language, adopting the below third-country processing provision in the final scope description::

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims <u>and</u> discs <u>from China</u>*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the orders if performed in China.

Final AD IDM at 9 (CR 1, PR 1); *Certain Steel Wheels from the People's Republic of China,* 84 Fed. Reg. 11,746, 11,748 (Dep't Commerce Mar. 28, 2019), *Certain Steel Wheels from the People's Republic of China,* 84 Fed. Reg. 11,744, 11,746 (Dep't Commerce Mar. 28, 2019); AD/CVD Orders at 84 Fed. Reg. at 24,100 (emphasis added).

---

[1] An excerpted version of the Final AD IDM is included as Exhibit 1 to Asia Wheel's Scope Ruling Request. *See* Letter from Asia Wheel to Commerce, entitled "*Request for Scope Ruling for Asia Wheel's Steel Truck Wheels*" (A-570-082, C-570-083) (Feb. 11, 2021) at Exhibit 1 (CR 1, PR 1) ("Asia Wheel Scope Ruling Request"). All citations to the Final AD IDM in this Memorandum of Law are included in the excerpted exhibit that appears in the administrative record imported into this case.

II.    **ASIA WHEEL'S TRUCK WHEEL PRODUCTION IN THAILAND**

A truck wheel consists of two main components: a rim and a disc. "The rim comprises the perimeter of the wheel and supports the tire when it is attached to the wheel, while the disc serves as the center portion of the wheel without the rim." *See* Asia Wheel Second Supp. QR at Exhibit RFI-ALL-3 (CR 33, PR 43). Both the rim and disc are "two primary components" of the finished truck wheel. *See id.*

Asia Wheel is a manufacturer and exporter of truck wheels located in Rayong, Thailand. To produce truck wheels, Asia Wheel imported rectangular steel plates from China and a third country, and performed multiple processing steps to convert the rectangular steel plates into rims. To convert the steel plate into a rim, Asia Wheel coiled the rectangular steel plate to form a circle; welded the open butts of the steel ring into a closed steel ring; polished the welded steel ring to remove slag from the surface; expanded the outer sides of the polished steel ring for precise positioning during the subsequent rolling phases; rolled the steel rings in three stages, gradually forming the surface of the steel ring into the precise shape of the rim; adjusted the unfinished rim to the precise shape required for insertion of the disc; and punched a valve hole in the surface of the rim. *See* Asia Wheel Scope Ruling Request at Exhibit 4 (CR 1, PR 1). Asia Wheel then assembled and welded the Thai-origin rims with discs imported from China to form truck wheels. Finally, Asia Wheel painted the wheels per the customer's specification and packaged them for shipping. *Id.*

III.    **COMMERCE'S PRELIMINARY SCOPE RULING**

On February 11, 2021, Asia Wheel requested that Commerce issue a scope ruling to confirm that certain truck wheels Asia Wheel produced in Thailand were not covered by the scope of the AD and CVD Orders. *See* Asia Wheel Scope Ruling Request. Specifically, Asia

Wheel asked Commerce to confirm that truck wheels Asia Wheel produced in Thailand using the above-described method ("Asia Wheel Truck Wheels") are not covered by the scope of the AD and CVD Orders. Commerce initiated a scope inquiry on May 12, 2021. *See* Commerce Letter to Interested Parties, regarding "*Initiation of Asia Wheel Scope Inquiry*" (A-570-082, C-570-083) (May 12, 2021) (PR 6).

On December 13, 2022, Commerce issued a preliminary scope ruling. *See* Commerce Memorandum, regarding "*Preliminary Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand* (A-570-082, C-570-083) (Dec. 13, 2022) (PR 59) ("Preliminary Scope Ruling"). Commerce found that the Asia Wheel Truck Wheels are subject to the scope of the AD and CVD Orders. *See id.* at 22. Commerce also found that "the record does not support that the wheels described in Asia Wheels' responses are substantially transformed in Thailand such that the third country processing confers country of origin." *Id.* at 20. And "{t}he key qualities of a disc as identified in Asia Wheel's own argument are not changed or otherwise transformed through processing: '(1) the number, placement, and type of bolt holes; (2) the mounting arrangement; and (3) the materials used to produce the disc." *Id.* at 18.

## IV.   ASIA WHEEL AND ZC RUBBER'S BRIEFING

On January 9, 2023, Asia Wheel filed a case brief in the scope proceeding. *See* Letter from Asia Wheel to Commerce, entitled "*Asia Wheel Steel Truck Wheels – Case Brief*" (A-570-082, C-570-083) (Jan. 9, 2023) (CR 60, PR 66).

On January 9, 2023, ZC Rubber also submitted a case brief. *See* Letter from Mayer Brown to Commerce, entitled "*ZC Rubber Case Brief*" (A-570-090, C-570-091) (Jan. 9, 2023) (PR 65). First, ZC Rubber argued that the plain language of the scope of the AD and CVD Orders do not include truck wheels made in a third county only using discs from China. *Id.* at 4.

Second, ZC Rubber argued that Commerce's "substantial transformation" analysis was fundamentally flawed in many respects, including Commerce's incorrect focus on whether the essential qualities and purpose of the Chinese-origin component change in Thailand, when it should have focused on the real question of whether the essential characteristics of the Chinese-origin component differ from the essential characteristics of the truck wheels at issue. *Id.* at 6. Finally, ZC Rubber argued that if Commerce continues to find that a substantial transformation did not occur, (1) Commerce should instruct CBP that the suspension of liquidation with respect to relevant import entries begins on December 13, 2022 - the date of the Preliminary Scope Ruling and (2) Commerce should find that only the Chinese-origin discs, instead of the entire imported product, is subject to the scope of the AD and CVD Orders. *Id.* at 9-10.

## V.      COMMERCE'S FINAL SCOPE RULING

On June 7, 2023, Commerce issued a Final Scope Ruling. Commerce continued to find that Asia Wheel Truck Wheels were subject to the scope of the AD and CVD Orders. *See* Final Scope Ruling at 34 (PR 79).

Commerce also continued to find that the Chinese-origin discs did not undergo "substantial transformation" in Thailand, meaning that, in their view, China was the country of origin for the imported Asia Wheel Truck Wheels. *See id.* at 16-25. In doing so, Commerce stated that it was "not altering {its} assessment of any individual factor" discussed in the Preliminary Scope Ruling. *Id.* at 16. Commerce further doubled down on its Preliminary Scope Ruling, noting:

> whereas Commerce ***may*** consider whether the third country processing imparted "a new name, character, and use" in consideration of the totality of circumstances, any such finding may not supplant an analysis of the record otherwise with respect to the substantial transformation factors and evidence.

*Id.* at 18 (emphasis added).

Commerce also found that evidence for the "essential characteristics" and "nature and sophistication of processing" factors did not support the finding that a "substantial transformation" occurred in Thailand. Accordingly, Commerce stated that "the assembly of the rim and disc into a wheel enables the two elements to perform their functions, ***but they remain the same both before and after assembly.***" *Id*. at 19 (emphasis in original). Commerce also found that:

> {t}he introduction of certain physical characteristics in Thailand (the rim's diameter), and the assembly and finishing steps performed in Thailand are not sophisticated to the extent that it supports transformation. Rather, the design and engineering steps; the cutting of steel sheet plates; and the production of a disc, which takes place in China, functionally results in an already designed wheel, a complete disc and an in-process other wheel component awaiting additional processing and eventual assembly into a finished wheel.

*Id*. at 22.

Finally, Commerce indicated it "intend{ed} to instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the Orders if already suspended" and "the explicit mention of the merchandise in question" in Commerce's Initiation of Asia Wheel's Scope Inquiry letter, dated May 12, 2021 "constituted fair warning to any reasonably informed importer." *Id.* at 27-28. Commerce also rejected the argument that only the Chinese-origin discs should be subject to AD and CVD liability. *See id.* at 32-33.

## STANDARD OF REVIEW

The Court will *not* uphold a Commerce final scope determination if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *see also Micron Tech. Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica De Aleaciones Laminadas, et al. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994), *quoting Consol. Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938). The Court must be "assure{d} that the agency has given reasoned consideration to all the material facts and issues," and that the Department has provided a reasoned basis for the legal conclusions it draws from the facts in the record. *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970), *cert. denied*, 403 U.S. 923 (1971); *see also Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983). Accordingly, the Court cannot evaluate the substantiality of the evidence supporting Commerce's determination "merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-488, 71 S. Ct. 456, 95 L. Ed. 456 (1951). Rather, it "must take into account whatever in the record fairly detracts from its weight." *Id*.

Moreover, the process by which the agency reaches its determination must be logical and rational. *Allentown Mack Sales & Sew., Inc. v. NLRB*, 522 U.S. 359, 374, 118 S. Ct. 818, 139 L. Ed. 2d 797 (1998). Thus, a determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (*citing USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)).

Furthermore, on appeal, "the question of whether the unambiguous terms of a {antidumping or countervailing duty order} scope control the inquiry, or whether some ambiguity exists, is a question of law that {the court} review{s} de novo." *Meridian Prods., LLC*

*v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) (citing *Allegheny Bradford. Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004)). It is also well-established that "a scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford*, 342 F. Supp. 2d at 1183 (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002)).

## ARGUMENT

As an initial matter, ZC Rubber fully supports the arguments of Asia Wheel as discussed in its opening brief. *See* Asia Wheel Opening Br. at 16–39.

## I.   COMMERCE'S INTERPRETATION OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

In enforcing an antidumping order, Commerce is limited to the unambiguous "scope" of that order. *See Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). Here, the plain language of the scope of the AD and CVD Orders makes clear that a product is only subject to the orders if *both* the rims *and* the discs that make up a truck wheel originate from China. Specifically, the AD and CVD Orders state: "{t}he scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims *and* discs from China to form a steel wheel . . . ." AD/CVD Orders, 84 Fed. Reg. at 24,098, 24,100 (emphasis added). Thus, the plain language of the scope is unambiguous and provides that if a truck wheel is assembled in a third country, the wheel is subject to the AD and CVD Orders only if both the rims "and" discs are from China. "'And' does not mean 'or.'" *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012); *see also* Asia Wheel Opening Br. at 16–18. In addition, as discussed by Asia Wheel, Commerce's recharacterization of its scope analysis in the original AD/CVD investigation to find "ambiguity" in the scope language where none exits is unsupported by substantial evidence. As Asia Wheel explains, Commerce

has confirmed in the original investigation that wheels made in third countries with rims or discs from China (but not both) are outside the scope. Accordingly, the truck wheels at issue here, which involve rims made in Thailand and discs made in China, do not fall within the scope of the AD and CVD Orders. Asia Wheel Opening Br. at 18–22.

For reasons discussed here and in Asia Wheel's opening brief, we agree that, consistent with the plain language of the third-country-processing provision and Commerce's interpretation of it during the original AD/CVD investigations, the Asia Wheel Truck Wheels are outside the scope of the AD/CVD Orders, because they were produced with only one Chinese-origin wheel component – the discs. *See* Asia Wheel Scope Ruling Request at Exhibit 4 (CR 1, PR 1). Commerce's conclusion in the Final Scope Ruling that the scope is ambiguous on this point is not in accordance with law and unsupported by substantial evidence.

## II.   COMMERCE'S "SUBSTANTIAL TRANSFORMATION" ANALYSIS IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

The purpose of Commerce's "substantial transformation" analysis is to "determine the country of origin for an imported article," where certain production steps were undertaken in a third-country (*i.e.*, outside of the subject country). *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (citing *E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854, 859 (Ct. Int'l Trade 1998)). The Federal Circuit has held that "{a} substantial transformation occurs where, 'as a result of manufacturing or processing steps . . . {,} the {product} loses its identity and is transformed into a new product having a new, name, character and use.'" *Id.* (quoting *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)). To determine this fundamental question, Commerce typically considers the following factors: "(1) the class or kind of merchandise; (2) the nature and sophistication of processing in the country of exportation; (3) the product properties, essential component of the merchandise, and intended

end-use; (4) the cost of production/ value added; and (5) level of investment." *Bell Supply Co.*, 888 F.3d at 1228, 1229.

Asia Wheel's opening brief explains in detail how in finding the absence of a substantial transformation, Commerce ignored the fundamental question of whether the Chinese-origin wheel component, *i.e.*, a Chinese-origin disc, became "a new product having a new name, character and use" as a result of the production steps performed in Thailand. Asia Wheel Opening Br. at 23–27. Such Thai production steps include the manufacture of wheel rims from rectangular steel plates, assembly of Thai-origin rims and Chinese-origin discs through welding, and painting the wheels per the customer's specification. *See* Asia Wheel Scope Ruling Request at Exhibit 4 (CR 1, PR 1). As Asia Wheel correctly points out, Commerce failed to address this fundamental question in its preliminary and final scope ruling. *See* Final Scope Ruling at 11-25 (PR 79); Preliminary Scope Ruling at 13-20 (PR 59). Instead, it applied its traditional "substantial transformation" factors in an improper manner to find that they trump the fundamental legal test as articulated by courts. Specifically, Commerce found:

> whereas Commerce ***may*** consider whether the third country processing imparted "a new name, character, and use" in consideration of the totality of circumstances, any such finding may not supplant an analysis of the record otherwise with respect to the substantial transformation factors and evidence.

Final Scope Ruling at 18 (emphasis added) (PR 79). Commerce, indeed, got it backwards – it cannot legally ignore the fundamental "new name, character, and use" question, and the "substantial analysis" factors may be considered only to inform, *not* replace, that inquiry.

This departure from the applicable legal test also resulted in Commerce answering the wrong ultimate question. In the Final Scope Ruling, Commerce concluded that "the country of origin of {the wheel discs} is China and, thus, they remain subject to the Orders after processing in Thailand." Final Scope Ruling at 25 (PR 79). However, as the Federal Circuit held, "the

substantial transformation analysis is used to determine country of origin for an *imported article*." *Bell Supply Co.,* 888 F.3d at 1228 (emphasis added) (internal citation omitted). Here, the "imported article" whose origin is at issue is the finished truck wheels, *not* the Chinese-origin discs used in its production. Thus, for reasons explained here and discussed by Asia Wheel, we agree that because Commerce failed to apply the governing legal standard to answer the true question – whether the Chinese-origin disc became a new product with a "new name, character, and use" in Thailand as a result of the Thai production steps – its country-of-origin determination is not in accordance with law. *See* Asia Wheel Opening Br. at 23–27.

Furthermore, Commerce's analysis of the "substantial transformation" factors is also unsupported by substantial evidence and not in accordance with law. Specifically, regarding the "product properties, essential component of the merchandise" factor (or, the "essential characteristics" factor; *see* Final Scope Ruling at 18 (PR 79); Preliminary Scope Ruling at 17 (PR 59)), the gist of Commerce's finding is that "{t}he 'key qualities' of a disc . . . are not changed or otherwise transformed through processing {in Thailand}: "(1) the number, placement, and type of bolt holes; (2) the mounting arrangement; and (3) the materials used to produce the disc." Preliminary Scope Ruling at 18 (PR 59); *see also* Final Scope Ruling at 19 (PR 79)  ("the assembly of the rim and disc into a wheel enables the two elements to perform their functions, but ***they remain the same both before and after assembly.***") (emphasis in original). However, this finding is not in accordance with law because it failed to comply with "{its} duty to consider the merchandise in the condition in which it is imported." *MacLean Power, L.L.C. v. United States,* 359 F. Supp. 3d 1367, 1371 (Ct. Int'l Trade 2019) ("*MacLean Power*") (internal citations omitted). In *MacLean Power*, which also involved a challenge to Commerce's scope ruling, the court found:

> It is an ancient principle of "customs law that '{i}n order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.' " While the issue before the court is not one of classification, the duty to consider the merchandise in the condition in which it is imported applies to additional unfair trade duties. It is the merchandise as imported that is judged in relation to the term of the order, which for these purposes substitutes for tariff classification terms.

*Id.* (internal citation omitted). Similarly, in *Midwest Fastener*, the court found that Commerce's focus on "the physical characteristics of *part* of the {imported} product," instead of "the physical characteristics of the {imported} product," is inconsistent with its own scope ruling regulation (relating to an issue separate from "substantial transformation"). *Midwest Fastener Corp. v. United States*, 435 F. Supp. 3d 1262, 1271 (Ct. Int'l Trade 2020) (emphasis added). Specifically, the court took issue with the Department's finding that the imported strike pin anchor in that case had similar physical characteristics to a steel nail, because the pin contained therein "would be considered a nail {and hence fall within the antidumping order on Chinese steel nails} if it were imported by itself." *Id.* As the court aptly put, "{i}f Commerce were to compare the physical characteristics of the product it must consider not only the pin, but also the anchor body, the hex nut and the flat washer {, which are also parts of the strike pin anchor}." *Id.*

Importantly, the court has taken the same position when examining Commerce's analysis of the "essential characteristics" factor under the "substantial transformation" test. In *Peer Bearing Co.*, the court found:

> Commerce did not find, and on this record could not permissibly have found, that any single component produced in China possessed the physical properties, mechanical properties, or essential character of *the "merchandise," which in this case consisted of finished TRBs, {i.e., the imported article}, not unfinished TRBs or parts*.

*See Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343, 1352 (Ct. Int'l Trade 2013) (emphasis added) (internal citation omitted). Thus, Commerce erred in focusing on the

wrong question of whether the "key qualities" of the disc component changed as result of Thai processing. Instead, what it should have addressed is whether "the essential character of the finished {wheels} was imparted in China {or}Thailand" by considering where the key physical characteristics of the *finished wheels* were established.

Commerce's finding with respect to the "essential characteristics" factor is also unsupported by substantial evidence because it ignored record evidence that the essential character of the finished wheels was imparted in Thailand. There is no dispute in this case that the wheel rim is also a key component of the finished wheel and that Asia produces wheel rims in Thailand resulting in *Thai-origin rims*. *See* Asia Wheel Second Supp. QR at RFI-9 (CR 32, PR 42) ("the petitioner explained that 'the rim or disc are not usable without being assembled into a wheel' and that '{t}he properties of rim **and** disc define the properties of the wheel and its end-use.' ") (internal citation omitted); Final Scope Ruling at 8 (PR 79) ("{f}or this final ruling, we continue to find it appropriate to apply a substantial transformation analysis to determine country of origin for Asia Wheel's steel wheels manufactured from Chinese-origin discs and *Thai-origin rims . . . ..*") (emphasis added). Thus, key characteristics of the rims are also those of the finished wheels. Record evidence shows that two key characteristics of the rims: (1) the rim diameter, the importance of which is shown by the orders' own scope language, and (2) the rim width, were established entirely by the production steps in Thailand. Asia Wheel Second Supp. QR at RFI-5 (showing Asia Wheel's rim production process in Thailand) and RFI-9 (CR 32, PR 42). Specifically, they were established by the following complex and extensive production processes performed in Thailand:

> To convert the steel plate into a rim, Asia Wheel coils the rectangular steel plate to form a circle; welds the open butts of the steel ring into a closed steel ring; polishes the welded steel ring to remove slag from the surface; expands the outer sides of the polished steel ring for precise positioning during the subsequent

rolling phases; rolls the steel rings in three stages, gradually forming the surface
of the steel ring into the precise shape of the rim; adjusts the unfinished rim to the
precise shape required for insertion of the disc; and punches a valve hole in the
surface of the rim.

*See* Asia Wheel Opening Br. at 10 (*citing* Asia Wheel Scope Ruling Request at Exhibit 4 (CR 1,

PR 1)). The significance of these physical characteristics and the rim production process is

apparent from the following comparison of the input rectangular steel plate against the output

rim:

**Recgular Steel Plate (Input)**



Letter from White & Case to Commerce, entitled "*Rebuttal to Petitioners' Opposition*" (A-570-
082, C-570-083) (June 29, 2021) (CR 7, PR 16) at Exhibit C, Attachment 3 (CR 8, PR 16)

**Rim Output**



*See id*. Thus, the rim diameter and width, both of which must be precise to make sure the rim fits both the tire and the disc, were established as part of the rim's high-complex overall shape in Thailand via extensive and high-precise production steps.

In addition, "two key properties of a finished truck wheel – the offset and load rating – are not established until the rim and disc are assembled" and hence were also wholly established in Thailand. Asia Wheel Second Supp. QR at RFI-10 (CR 32, PR 42). These physical characteristics are key to the end-use of the finished truck wheels. As the underlying petition stated, "{t}he rim 'comprises the perimeter of the wheel and supports the tire when it is attached to the wheel.'" Asia Wheel Second Supp. QR at Exhibit RFI-ALL-3 (CR 33, PR 43). And it is apparent that a finished truck wheel cannot perform its function without the ability to safely support the weight that it is intended to bear.

Thus, there is abundant record evidence showing that a finished truck wheel's end-use and key properties, such as the rim properties, offset and load rating, were all established in Thailand. However, Commerce simply brushed them off by saying "these are *additional* characteristics set by further processing. The 'key qualities' of a disc . . . are not changed or otherwise transformed through {the Thai} processing . . . ." Preliminary Scope Ruling at 18 (PR 59) (emphasis in original). This is impermissible because it properly focused on a component of the imported article, not the imported article itself. In sum, a wheel disc lacks many key physical characteristics of a finished wheel and the Thai processes consisting of rim manufacture, wheel assembly and proper painting established these missing characteristics critical to the proper function of the finished product *in Thailand*. Thus, Commerce's finding on the "essential characteristics" factor is unsupported by substantial evidence as it ignores highly relevant and key evidence that points to the opposite conclusion. *Peer Bearing Co.,* 914 F. Supp. 2d at 1352 –

1353 ("Commerce did not find, and on this record could not permissibly have found, that any single component produced in China possessed the physical properties, mechanical properties, or essential character of the 'merchandise,' which in this case consisted of finished TRBs, not unfinished TRBs or parts. And because no single part made in China possessed the essential character of a TRB, the Department's finding that the essential character of the finished TRBs was imparted in China, as opposed to Thailand, is a logical impossibility.").

Similarly, with respect to the "nature and sophistication of processing in the country of exportation" factor, the Department's finding is also unsupported by substantial evidence and not in accordance with law. Regarding this factor, Commerce found:

> (1) wheels produced from Chinese-origin discs and rims manufactured in Thailand from steel sheet plates from China or a third country were designed (involving complex engineering) in China; (2) production for these wheels began in China; and (3) the coiling, welding, planning, rolling, punching, assembling, and coating steps completed in Thailand do not meet the level of sophistication of the design and processing steps involved in producing both finished discs and steel sheet plates in China, but merely finish the process that began in China.

Preliminary Scope Ruling at 19 (PR 59); Final Scope Ruling at 22 (PR 79). Assuming arguendo that the Thai "processing" here may be compared to certain Chinese "processing" for the current purpose, Commerce failed to explain why the "design and engineering steps" are even relevant to the "substantial transformation" analysis, given that courts, including the Federal Circuit, have made clear that the proper subject of the "substantial transformation" analysis is the "manufacturing or processing steps." *Bell Supply Co.,* 888 F.3d at 1228 (internal citations omitted). In addition, Commerce also failed to explain what production steps regarding the "steel sheet plates" it is relying upon or why the following production steps in Thailand "do not meet the {same} level of sophistication":

> {In addition to wheel assembly, welding and painting}, Asia Wheel performs multiple production steps to convert the steel plates into rims, including coiling,

planing, butt-welding, rolling, and valve hole punching, among others. Asia
Wheel also provided detailed descriptions and illustrations of its production
operations in photos and videos to demonstrate the level of sophistication of each
processing step performed in Thailand.

Asia Wheel Case Br. at 16–17. Commerce's reasoning is particularly inadequate in view of the

fact that it agrees that Asia Wheel's production process is sufficient to confer Thai origin on the

rims. Thus, Commerce's finding on this factor is unsupported by substantial evidence and not in

accordance with law. *See Chr. Bjelland Seafoods,* 19 C.I.T. at 35, *citing USX Corp. v. United

States*, 655 F. Supp. at 487, 489 (finding that a determination based on inadequate reasoning

cannot survive the "substantial evidence" standard of review*); Peer Bearing Co.,* 914 F. Supp.

2d at 1353 (rejecting Commerce's finding that "the Thai processing {was} less 'sophisticated'

than the processing conducted on the cups and cones in China," because it was "merely a

descriptive characterization for which Commerce provided little reasoning").

## III.   COMMERCE'S DETERMINATION THAT THE ENTIRE FINISHED WHEEL MANUFACTURED IN THAILAND IS WITHIN THE SCOPE OF THE *AD/CVD ORDERS* IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that

order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom*, 254

F.3d at 1072. In determining that the entire truck wheel imported from Thailand is covered by

the scope of the AD and CVD Orders, Commerce interpreted the scope of the AD and CVD

Orders in such a manner. The AD and CVD Orders "include{} *rims and discs* that have been

further processed in a third country . . . . " AD and CVD Orders, 84 Fed. Reg. at 24,100

(emphasis added). Thus, as Asia Wheel explains in detail, Commerce's determination on this

issue is inconsistent with the plain language of the scope – which includes only the Chinese-

origin rim, Chinese-origin disc, or Chinese-origin wheel processed in a third country – and,

therefore, not in accordance with law. Commerce's determination is also inconsistent with its

own "substantial transformation" analysis. If the Chinese-origin discs did not lose their identities after being converted into a finished wheel, the Thai-origin rims also did not lose their identities and remain products of Thailand. Under this analysis, only the Chinese origin discs could be reasonably covered by the AD and CVD Orders, not the entire Thai Truck Wheel. *See* Asia Wheel Opening Br. at 28–29.

IV.   **COMMERCE IMPERMISSBLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE THE DATE OF INITIATION OF THE SCOPE INQUIRY**

Commerce has a legal mandate to provide "fair warning" before subjecting imported merchandise to AD and CVD liability. *See Tai-Ao Aluminum (Taishan) Co. v. United States,* 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II").* An "assessment of retroactive duties . . . is . . . unlawful" without "adequate notice" of potential AD/CVD applicability. *See Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021); *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304-05 (Ct. Int'l Trade 2021). Here, even if the Court finds that the Asia Wheel Truck Wheels are within the scope of the AD and CVD Orders, for due process reasons, Commerce still cannot assess retroactive duties on relevant entries from Thailand with entry dates before the date of initiation of the scope inquiry, *i.e.*, May 12, 2021.

The record is clear that Commerce failed to provide a "fair warning" to importers of Asia Wheel Truck Wheels that wheels produced in third countries from Chinese "rims or discs" were subject to the AD and CVD Orders and could be assessed AD/CVD duties. Commerce admitted its Final Scope Ruling that fair warning was not provided to importers of Asia Wheel Truck wheels until May 12, 2021, the date Commerce initiated the scope inquiry. *See* Final Scope Ruling at 28 (PR 79). Thus, by Commerce's own admission, importers lacked fair warning that the truck wheels at issue in this case were potentially within the scope of the AD and CVD Orders until May 12, 2021. Nevertheless, in the Final Scope Ruling, Commerce stated that it

"intend{ed} to instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the Orders if already suspended," without excluding entries made prior to the date of initiation. Final Scope Ruling at 27 (PR 79) (emphasis added). However, as courts made clear, the assessment of retroactive duties in this instance is unlawful because importers lacked "fair warning" prior to the initiation date.

Commerce argues that fair warning was given during the underlying investigation because the Final AD IDM stated, "{w}hile in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, ***the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case.***" Final Scope Ruling at 28 (PR 79) (emphasis in original). But Commerce declined to conduct a substantial transformation analysis to determine the country of origin for truck wheels assembled and painted in third countries using Chinese-origin rims and discs (*see* Final AD IDM at 7-8, 10-11 (CR 1, PR 1)); it also failed to state, or even suggest, it was deferring the question of whether the AD and CVD Orders include steel wheels manufactured in third countries using rims *or* discs from China.

To the contrary, during the underlying AD/CVD investigation, when Zhejiang Jingu argued that "{t}he proposed {third-country process language} is overly broad and vague" potentially capturing Asia Wheel's production method here (*see* Final AD IDM at 8 (CR 1, PR 1)), Commerce's response was that it "agree{d} with Zhejiang Jingu that {Petitioners'} proposed scope amendment should include further clarifying language{,}" and therefore added "from China" to clarify that "rims and discs from China that have been further processed in a third country into finished steel wheels {are} included within scope." *Id*. at 12. Thus, at the very least, importers are justified to believe that in the original AD/CVD determination, Commerce has

found that steel wheels manufactured in third countries using rims or discs from China are outside the scope of the AD and CVD Orders. Accordingly, Commerce's final scope determination in the original investigation cannot be said to have provided fair warning on this issue to importers.

Moreover, even if Commerce were correct that its Final AD IDM provided notice of its intent to revisit whether AD/CVD should apply to such wheels, with which we disagree, this purported notice still would not qualify as "fair warning" sufficient to justify the retroactive assessment of AD/CVD duties. As the Federal Circuit made clear, "{a} statement of *intention* to 'consider whether the inquiry should apply to all imports' is not the same as a notice that such imports are within the scope of the inquiry." *Tai-Ao II,* 983 F.3d at 495 (emphasis added). Commerce's intent to "conduct such an analysis" does not constitute a "fair warning" of AD and CVD liability, and, if it had such intent, "it should have stated this fact in similarly clear language." *Tai-Ao Aluminium (Taishan) Co. v. United States,* 391 F. Supp. 3d 1301, 1315 (Ct. Int'l Trade 2019) ("*Tai-Ao I*"). Similarly, "{i}f Commerce had wanted" to include wheels made in third countries with either rims or discs from China, "it should have stated this fact in similarly clear language." Tai-Ao I, 391 F. Supp. 3d at 1315.

Thus, Commerce should reformulate its suspension of liquidation instructions such that imports of Asia Wheel Truck Wheels with entry dates before the date of initiation of the scope inquiry (May 12, 2021) are not subject to the assessment of retroactive duties under the AD and CVD Orders.

## <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff-Intervenor, ZC Rubber, respectfully requests

that the Court:

1)  Enter judgment in favor of Plaintiff Asia Wheel and Plaintiff-Intervenor ZC
    Rubber;

2)  Hold that Commerce's Final Scope Ruling is unsupported by substantial evidence
    and otherwise not in accordance with law;

3)  Remand this matter to Commerce to issue a revised final determination in
    conformity with the Court's opinion; and

4)  Grant Plaintiff and Plaintiff-Intervenor such additional relief as the Court may
    deem just and proper.


Respectfully submitted,


/s/ Jing Zhang_____
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385
*Counsel to ZC Rubber America Inc.*

Dated: February 13, 2024

## <u>CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)</u>

The undersigned hereby certifies that this brief contains 7,481 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 14,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

/s/ Jing Zhang
Mayer Brown LLP
*Counsel to ZC Rubber America Inc.*