**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| ASIA WHEEL CO., LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| ZC RUBBER AMERICA INC., | ) |
| Plaintiff-Intervenor, | ) |
| v. | ) Court No. 23-00143 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| ACCURIDE CORPORATION, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S
MOTIONS FOR JUDGMENT UPON THE ADMINSTRATIVE RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch, Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-5196
Fax: (202) 305-2062
Email: stephen.tosini@usdoj.gov

OF COUNSEL:

IAN A. McINERNEY
Senior Attorney
Office of the Chief Counsel for Trade
Enforcement and Compliance
United States Department of Commerce

April 30, 2024

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

STATEMENT PURSUANT TO RULE 56.2 ..............................................................2

I.    The Administrative Determination Under Review ...........................................2

II.   Issues Presented For Review ...........................................................................2

STATEMENT OF FACTS .........................................................................................2

I.    Antidumping Duty And Countervailing Duty Determinations..........................2

II.   Scope Proceeding And Covered Merchandise Referral....................................3

SUMMARY OF THE ARGUMENT ..........................................................................7

ARGUMENT ..............................................................................................................8

I.    Legal Standards.................................................................................................8

      A.    Standard For Judicial Review Of Scope Determinations ........................8

      B.    Legal Framework For Scope Rulings .....................................................9

II.   Commerce's Scope Determination Was Lawful...............................................10

      A.    Commerce Reasonably Found That The Scope Was Ambiguous ..........10

      B.    When It Issued The *Orders,* Commerce Explicitly Explained That
            It Was Not Deciding Hypothetical Situations Such As Those In
            This Case................................................................................................12

      C.    Commerce Reasonably Determined That Asia Wheel's Truck
            Wheels Were Not Substantially Transformed By Processing In
            Thailand, And Thus Remained From China And Subject To The
            Orders....................................................................................................15

            1.    Legal Framework For Substantial Transformation Analyses ...................15

            2.    Commerce Lawfully Conducted Its Substantial Transformation
                  Analysis......................................................................................16

      D.    Commerce's Application OF Antidumping And Countervailing
            Duty Liability To The Entire Imported Wheel Is Supported By
            Substantial Evidence And In Accordance With Law ...........................22

E.     Commerce Provided Lawful Notice That Wheels Produced In
       Third Countries From Chinese Origin Components Could Be
       Subject Merchandise ............................................................................288

CONCLUSION.................................................................................................34

CERTIFICATE OF COMPLIANCE ...............................................................36

# TABLE OF AUTHORITIES

Cases

*Adams v. U.S. Forest Serv.*,
   671 F.3d 1138 (9th Cir. 2012) ............................................................... 11

*Advanced Tech & Materials Co. v. United States*,
   35 C.I.T. 1380 (2011) ........................................................................ 15

*Al Ghurair Iron & Steel LLC v. United States*,
   536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023)............... 27

*Allegheny Bradford Corp. v. United States*,
   342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ........................................... 25, 26

*Am. Silicon Techs. v. United States*,
   261 F.3d 1371 (Fed. Cir. 2001)............................................................... 8

*Arcelormittal Stainless Belg. N.V. v. United States*,
   694 F.3d 82 (Fed. Cir. 2012)............................................................. 9, 10

*Bell Supply Co. LLC v. United States*,
   888 F.3d 1222 (Fed. Cir. 2018)......................................................... passim

*Bell Supply Co. LLC v. United States*,
   348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) .............................................. 19

*Bestfoods v. United States*,
   165 F.3d 1371 (Fed. Cir. 1999)............................................................. 15

*Candian Solar Inc. v. United States*,
   918 F.3d 909 (Fed. Cir. 2019)............................................................. 18

*Chr. Bjelland Seafoods A/S v. United States*,
   19 C.I.T. 35 (1995) ........................................................................ 25

*Consol. Edison v. NLRB*,
   305 U.S. 197 (1938)........................................................................ 8

*Cormorant Shipholding Corp. v. United States*,
   617 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ............................................. 12

*Crawfish Processors All. v. United States*,
   483 F.3d 1358 (Fed. Cir. 2007)............................................................. 8

*Diamond Tools Tech. LLC v. United States*,
   545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .............................................. 34

*Doughten Seed Co. v. United States,*
  24 C.C.P.A. 258 (1936) ........................................................................... 12

*E.I. DuPont De Nemours & Co. v. United States,*
  8 F. Supp. 2d 854 (Ct. Int'l Trade 1998), ......................................... 16, 17

*Eckstrom Indus., Inc. v. United States,*
  254 F.3d 1068 (Fed. Cir. 2001) ........................................................... 24, 25

*Fujitsu Gen. Ltd. v. United States,*
  88 F.3d 1034 (Fed. Cir. 1996) ..................................................................... 8

*Goldlink Indus. Co. v. United States,*
  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ............................................. 9

*King Supply Co. LLC v. United States,*
  674 F.3d 1343 (Fed. Cir. 2012) ................................................................... 9

*MacDonald v. Pan Am. World Airways, Inc.,*
  859 F.2d 742 (9th Cir. 1988) ............................................................... 11, 12

*Mid Continent Nail Corp. v. United States,*
  725 F.3d 1295 (Fed. Cir. 2013) ............................................................. 9, 28

*Mitsubishi Elec. Corp. v. United States,*
  802 F. Supp. 455 (Ct. Int'l Trade 1992) ......................................... 25, 26, 27

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. et al., v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ............................................................................... 25, 26

*Peer Bearing Co.-Changshan v. United States,*
  128 F.Supp.3d 1286 (Ct. Int'l Trade 2015) ............................................. 22

*Pulsifer v. United States,*
  144 S. Ct. 718 (2024) ................................................................................ 12

*Sandvik Steel Co. v. United States,*
  164 F.3d 596 (Fed. Cir. 1998) ..................................................................... 9

*Sango Int'l L.P. v. United States,*
  484 F.3d 1371 (Fed. Cir. 2007) ................................................................... 8

*Sunpreme Inc. v. United States,*
  946 F.3d 1300 (Fed. Cir. 2020) ................................................................. 33

*Tai-Ao Aluminum (Thaishan) Co., Ltd. v. United States,*
  983 F.3d 487 (Fed. Cir. 2020) ........................................................... passim

*Tak Fat Trading Co. v. United States*,
396 F.3d 1378 (Fed. Cir. 2005) ........................................................................ 9, 10

*Trans Tex. Tire, LLC v. United States*,
519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021) ..................................................... 30, 31

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951) .................................................................................................. 8

*USX Corp. v. United States*,
655 F.Supp. 487 (Ct. Int'l Trade 1987) ............................................................ 25, 27

*Walgreen Co. of Deerfield, IL v. United States*,
620 F.3d 1350 (Fed. Cir. 2010) ........................................................................ 22, 27

Statutes

5 U.S.C. § 706 ........................................................................................................... 26

19 U.S.C. § 1517 ................................................................................................. passim

19 U.S.C § 1516a(b) .................................................................................................. 8

Regulations

19 C.F.R. § 351.225 ............................................................................................ passim

19 C.F.R. § 351.225(l)(3) (2013) ............................................................................... 6

Other Authorities

*Amended Final Determination and Antidumping Duty Order: Certain Welded Stainless Steel Butt-Weld Pipe Fittings from Taiwan*,
58 Fed. Reg. 33,250 (Dep't of Commerce June 16, 1993) ..................................... 26

*Aluminum Extrusions from the People's Republic of China: Initiation of Anti-Circumvention Inquiry*,
81 Fed. Reg. 15,039 (Dep't of Commerce Mar. 21, 2016) ..................................... 31

*Aluminum Extrusions from the People's Republic of China: Affirmative Preliminary Determination of Circumvention*,
81 Fed. Reg. 79,444 (Dep't of Commerce Nov. 14, 2016) ..................................... 32

*Certain Steel Wheels From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*,
83 Fed. Reg. 44,573 (Dep't of Commerce Aug. 31, 2018) ....................................... 2

*Certain Steel Wheels From the People's Republic of China: Preliminary Determination of Sales at Less-Than-Fair-Value,*
    83 Fed. Reg. 54,568 (Dep't of Commerce Oct. 30, 2018)............................................................. 3

*Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination,*
    84 Fed. Reg. 11,744 (Dep't of Commerce Mar. 28, 2019).......................................................... 3

*Certain Steel Wheels From the People's Republic of China: Final Determination of Sales at Less-Than-Fair-Value,*
    84 Fed. Reg. 11,746 (Dep't of Commerce Mar. 28, 2019).......................................................... 3

*Certain Steel Wheels From the People's Republic of China:  Antidumping and Countervailing Duty Orders,*
    84 Fed. Reg. 24,098 (Dep't of Commerce May 24, 2019)................................................. passim

*Certain Steel Wheels from the People's Republic of China: Notice of Covered Merchandise Referral,*
    86 Fed. Reg. 38,270 (Dep't of Commerce July 20, 2021).......................................................... 4

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
    86 Fed. Reg. 52,300 (Dep't of Commerce Sep. 20, 2021) ......................................................... 4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| ASIA WHEEL CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| ZC RUBBER AMERICA INC., ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | Court No. 23-00143 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ACCURIDE CORPORATION, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## <u>ORDER</u>

On consideration of the motion for judgment on the administrative record filed by

plaintiff and plaintiff-intervenor, defendant's response, and all other pertinent papers, it is hereby

ORDERED that the motions are denied; and is further

ORDERED that judgment is entered for the United States.


Dated: _____            _____
      New York, NY                                    SENIOR JUDGE

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| ASIA WHEEL CO., LTD., )<br><br>Plaintiff, )<br><br>and )<br><br>ZC RUBBER AMERICA INC., )<br><br>Plaintiff-Intervenor, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>ACCURIDE CORPORATION, )<br><br>Defendant-Intervenor. ) | Court No. 23-00143 |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S MOTIONS FOR JUDGMENT ON THE ADMINSTRATIVE RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully submits this opposition to the Rule 56.2 motions for judgment on the agency record filed by plaintiff Asia Wheel Co, Ltd. and plaintiff-intervenor ZC Rubber America Inc. challenging the Department of Commerce's June 7, 2023, final scope ruling regarding the antidumping and countervailing duty orders on certain steel wheels from China.  P.R. 79.  Commerce lawfully interpreted the scope to cover steel wheels assembled in third countries for which one of the two main components (rims/discs) originated in China.  As demonstrated below, Commerce's findings are supported by substantial evidence and are

otherwise in accordance with law.  Accordingly, we respectfully request that the Court sustain Commerce's determination and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

**I.**    **The Administrative Determination Under Review**

The administrative determination under review is *Memorandum, RE:  Final Scope Ruling:  Asia Wheel's Steel Wheels Processed in Thailand (Asia Wheel)* (A-570-082, C-570-083) (Dep't of Commerce June 7, 2023) (Final Scope Ruling).

**II.**    **Issues Presented For Review**

1.  Whether Commerce's determination that Asia Wheel's truck wheels processed in Thailand using discs from China and rims it produces in Thailand from steel plates from China or a third country are subject to the orders is supported by substantial evidence and in accordance with law.

2.  Whether Commerce provided adequate notice to reasonably informed importers of the potential for liability, and whether Commerce relatedly lawfully declined to instruct U.S. Customs and Border Protection (CBP) to lift the suspension of liquidation that that agency had imposed on entries of covered merchandise pursuant to its own authority under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517(e).

## STATEMENT OF FACTS

**I.**    **Antidumping Duty And Countervailing Duty Determinations**

In August 2018 and October 2018, respectively, Commerce published preliminary affirmative determinations in the countervailing duty (CVD) and antidumping duty (AD) investigations of certain steel wheels 22.5 inches to 24.5 inches in diameter (truck wheels) from China.  *Certain Steel Wheels From the People's Republic of China: Preliminary Affirmative*

*Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 83 Fed. Reg. 44,573 (Dep't of Commerce Aug. 31, 2018) (Preliminary CVD Determination); *Certain Steel Wheels From the People's Republic of China: Preliminary Determination of Sales at Less-Than-Fair-Value*, 83 Fed. Reg. 54,568 (Dep't of Commerce Oct. 30, 2018) (Preliminary AD Determination).  Commerce then published the final affirmative determinations in the CVD and AD investigations of truck wheels from China.  *See Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. 11,744 (Dep't of Commerce Mar. 28, 2019) (Final CVD Determination); *see also Certain Steel Wheels From the People's Republic of China: Final Determination of Sales at Less-Than-Fair-Value*, 84 Fed. Reg. 11,746 (Dep't of Commerce Mar. 28, 2019) (Final AD Determination).

In May 2019, following the affirmative determinations of injury by the International Trade Commission, Commerce issued the orders on truck wheels from China, which stated that:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*Certain Steel Wheels From the People's Republic of China:  Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098 (Dep't of Commerce May 24, 2019) (*Orders*).

## II.    Scope Proceeding and Covered Merchandise Referral

On February 11, 2021, Commerce received a scope ruling request from Asia Wheel to determine whether certain types of truck wheels that it manufactures in Thailand and exports to the United States fall within the scope of the *Orders*.  P.R. 1; C.R. 1.  The Asia Wheel Request identified truck wheels manufactured using discs from China and rims it produces in Thailand

from steel plates from China or a third country.  *See id.* at Exhibit 4 (PDF at 54); *see also* Final

Scope Ruling at 6.  On February 25, 2021, Accurite Corporation (Accurite) and Maxion Wheel

Akron LLC (Maxion), the petitioners in the underlying investigations, opposed Asia Wheel's

Request.  Preliminary Scope Ruling at 2 (P.R. 59).  Commerce then initiated a formal scope

inquiry on May 12, 2021, under 19 C.F.R. § 351.225(e).[1]

On June 9, 2021, Commerce received a 19 U.S.C § 1517(a)(3) covered merchandise

referral from U.S. Customs and Border Protection (CBP) regarding CBP's Trade Facilitation and

Trade Enforcement Act of 2015 (EAPA) Investigation No. 750.  Preliminary Scope Ruling at 3.

CBP requested that Commerce determine whether the same the product specified in the Asia

Wheel Request was covered merchandise for the purpose of CBP's EAPA proceeding.  *Id*.; *see*

*also* Notice of Covered Merchandise Referral (P.R. 18); *see also* Memorandum:  Placing

Covered Merchandise Referral Documents on the Record (P.R. 19).  Commerce published the

public notice of this referral in the Federal Register.  *Certain Steel Wheels from the People's*

*Republic of China: Notice of Covered Merchandise Referral*, 86 Fed. Reg. 38,270 (Dep't of

Commerce July 20, 2021) (EAPA Initiation Notice).  Commerce explained that, because the

covered merchandise referral requested a determination on merchandise identified in a pending

request for a scope ruling, Commerce would address the covered merchandise referral and Asia

Wheel's request in the ongoing scope proceeding.  *Id.* at 38,271.

On June 10, 2022, Commerce issued a second supplemental questionnaire to Asia Wheel,

accompanied by a request for information to all interested parties concerning substantial

---

[1] Commerce revised its scope regulations with an effective date of November 4, 2021.
*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing
Duty Laws*, 86 Fed. Reg. 52,300 (Dep't of Commerce Sep. 20, 2021).  Because Asia Wheel filed
its request on February 11, 2021, before the effective date of the new regulations, Commerce
issued its determination under the scope regulations in effect before November 4, 2021.

transformation.  C.R. 26.  Asia Wheel, the petitioners, and ZC Rubber America Inc. (ZC

Rubber), an importer of subject merchandise, respectively, responded to that request.  C.R. 32

(Asia Wheel); P.R. 41, C.R. 31 (petitioners); P.R. 52 (ZC Rubber).

On December 13, 2022, Commerce preliminarily found that truck wheels that Asia

Wheel manufactures in Thailand and exports to the United States as detailed in the request are

subject merchandise.  Commerce explained that "a determination of whether a produce is subject

to an order entails an assessment of the product's physical characteristics and an origin

determination."  Preliminary Scope Ruling at 11.  Commerce preliminarily determined that a

plain reading of the scope language reflects that rims, discs, and wheels further processed in a

third country are covered by the scope if the processing would not otherwise exclude these items

from the scope had the processing occurred in China.  *Id.*  Commerce further explained that Asia

Wheel's contention that Commerce had previously determined that wheels made in a third

country from rims or discs from China, but not both, are out of scope is misplaced.  Commerce

also preliminarily determined that, based on the totality of the circumstances, the finished wheels

produced in Thailand by Asia Wheel and exported to the United States were not substantially

transformed by the processing in Thailand and remain Chinese-origin wheels because

> (1) the components are of the same class or kind of merchandise as
> the exported products;
>
> (2) the components maintain their essential characteristics (the
> discs and the steel sheet plates each have a sole purpose/end use as
> exported from China: that is, to be incorporated into a specific
> finished wheel);
>
> (3) the processing steps of finishing the components into a finished
> wheel in Thailand are relatively minor in comparison to the
> production operations in China which produce the components
> themselves;

> (4) Asia Wheel's investment into truck wheel production is not comparable to the investment into production facilities involved in producing the components in China, and the record reflects that the Thai investment is highly dependent on expertise of the Chinese affiliate; and
>
> (5) though the record does not contain all necessary information to calculate the precise amount of value added in Thailand, statements regarding the amount of value added by the input steel and initial production steps suggest that production in China constitutes a significant portion of value added.

Preliminary Scope Ruling at 17-20. With respect to the latter point, Commerce explained that, even presuming that Thai production adds a not insignificant amount of value, this does not outweigh the other four factors under the totality of the circumstances. *Id.*

Upon review of the record and the parties' case and rebuttal briefs, Commerce issued its Final Scope Ruling on June 7, 2023, continuing to find that truck wheels manufactured by Asia Wheel in Thailand using discs from China and rims that Asia Wheel produces in Thailand from steel plates from China or a third country are in-scope merchandise. Final Scope Ruling at 1.

In response to Asia Wheel's assertion that Commerce may not continue the suspension of liquidation with respect to inquiry merchandise, Commerce explained that CBP suspends liquidation based on its own interim measures authority under 19 U.S.C. § 1517(e), not that of Commerce. Final Scope Ruling at 29-30. Commerce thus instructed CBP to continue to suspend liquidation of entries of inquiry merchandise as of the date of the initiation of the scope inquiry (May 12, 2021) consistent with 19 C.F.R. § 351.225(l)(3) (2013) and did not order any retroactive (before initiation of the scope ruling inquiry) suspension of liquidation. *Id.* Commerce also determined that it would continue to apply AD/CVD duties to the entire imported article, *i.e.*, the truck wheels subject to the Asia Wheel Request.

## SUMMARY OF THE ARGUMENT

Commerce lawfully determined that Asia Wheel's imported truck wheels processed by Asia Wheel in Thailand using discs from China and rims that Asia Wheel produces in Thailand from steel plates from China or a third country are in-scope.

First, Commerce reasonably concluded that the orders are ambiguous with respect to whether they cover wheels manufactured using either Chinese rims or discs.

Second, and contrary to the theme running through Asia Wheel's and ZC Rubber's briefs, Commerce initially made clear that it was withholding decision on whether hypothetical wheels such as those at issue here would be subject to the orders. At the time, Commerce explained that the orders do not foreclose a further analysis of substantial transformation should a product be completed in a third country from a mix of rim and disc parts from China and a third country if an interested party requests a scope review. Accordingly, Commerce recognized that such merchandise, if ever produced, might fall within the penumbra of the *Orders*, which covered rims, discs, and wheels further processed in a third country if such processing would not otherwise exclude these items had the processing occurred in China.

Third, Commerce reasonably applied its Court-approved substantial transformation analysis to determine the country of origin for the subject products. Commerce found that (1) the components are of the same class or kind; (2) the merchandise maintains its essential characteristics; (3) the nature and sophistication of the processing in Thailand is minor; (4) the investment into the production of truck wheels is not comparable to the investment for producing component parts; and (5) the preceding factors weigh in favor of finding no substantial transformation, even assuming that the value added in Thailand is not insignificant. Therefore,

after considering the totality of the record evidence, Commerce reasonably found that the wheels are not substantially transformed by the completion process in Thailand and are thus in scope.

Fourth, Asia Wheel and ZC Rubber fail to provide any support for their contention that duties should be levied on component parts and not on the entirety of the wheel.

Fifth, Commerce provided adequate notice to Asia Wheel and ZC Rubber and did not violate their due process rights when it instructed CBP to continue the suspension of liquidation for products found to be covered by the *Orders*, if already suspended, and if not already suspended, to suspend liquidation as of the date of initiation of the scope ruling inquiry of entries of products found to be in scope.

## ARGUMENT

### I.    Legal Standards

#### A.    Standard For Judicial Review Of Scope Determinations

This Court "must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Sango Int'l L.P. v. United States,* 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

"'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors Alliance v. United States,* 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB,* 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) ("{s}ubstantial evidence is more than a mere scintilla").

"Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001)

(citing *Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996)).  "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*"  *Goldlink Indus. Co. v. United States,* 431 F.Supp.2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

The Court grants "significant deference to Commerce's interpretation of a scope."  *Mid Continent Nail Corp. v. United States,* 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citation omitted). This is because scope rulings involve "highly fact-intensive and case-specific determination{s}," *King Supply Co. LLC v. United States,* 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within {Commerce's} expertise."  *Sandvik Steel Co. v. United States,* 164 F.3d 596, 600 (Fed. Cir. 1998).

### B.  <u>Legal Framework For Scope Rulings</u>

Commerce is often called upon to determine whether a certain product is included within the scope of an antidumping or countervailing duty order because it necessarily writes scope language in general terms.  19 C.F.R. § 351.225(a).  Commerce's determinations concerning a particular product are made in accordance with its regulations.  Under 19 C.F.R. § 351.225(d), Commerce may make scope rulings based on the information in a scope request and the sources set forth in 19 C.F.R. § 351.225(k)(1).  If it cannot reach a decision based on those sources, Commerce initiates a formal scope inquiry.  19 C.F.R. § 351.225(e).  Commerce need not initiate formal scope inquiries if it finds a product to be in scope under the (k)(1) sources.

The first step in considering whether a product is within the scope of an order is to consider the language of the order itself.  *Arcelormittal Stainless Belgium N.V. v. United States,* 694 F.3d 82, 87 (Fed. Cir. 2012).  Commerce may decide that the language of the order

unambiguously applies to the product at issue, *id.*, or it may additionally consider the descriptions of the merchandise contained in the (k)(1) sources. *Tak Fat Trading Co. v. United States,* 396 F.3d 1378, 1382-83 (Fed. Cir. 2005). The (k)(1) sources are the petition, the investigation, and determinations of Commerce (including prior scope determinations) and the International Trade Commission (ITC). 19 C.F.R. § 351.225(k)(1). If Commerce determines that the descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling as to whether the product falls within the scope of the order. 19 C.F.R. § 351.225(d); *see also Tak Fat Trading,* 396 F.3d at 1382.

Only when the (k)(1) sources are not dispositive will Commerce consider the criteria set forth in 19 C.F.R. § 351.225(k)(2). Commerce did not conduct a subsection (k)(2) analysis here because it determined that the Orders were dispositive because Asia Wheel's imported wheels were the same class or kind of merchandise described in the *Orders* and that their country of origin was China pursuant to its substantial transformation analysis. Final Scope Ruling at 25.

## II.    Commerce's Scope Determination Was Lawful

### A.    Commerce Reasonably Found That The Scope Was Ambiguous

Contrary to the Asia Wheel and ZC Rubber's contentions at pages 16-18 and 12-13 respective briefs, Commerce's determination that the plain language of the scope does not exclude Asia Wheel's products is supported by substantial evidence and is otherwise in accordance with law.

Pursuant to the regulatory framework, Commerce's scope inquiry began with an examination of the plain scope language to determine whether it contains an ambiguity and, thus, is open to interpretation. *ArcelorMittal*, 694 F.3d at 88; *see also* Final Scope Ruling at 8-10. Commerce first reviewed the text of the *Orders* to determine whether truck wheels manufactured

using either rims or discs from China (but not both) are in-scope.  The relevant scope language

regarding third country processing reads as follows:

> The scope includes rims and discs that have been further
> processed in a third country, *including, but not limited to,
> the welding and painting of rims and discs from China to
> form a steel wheel*, or any other processing that would not
> otherwise remove the merchandise from the scope of the
> proceeding if performed in China.

*Orders*, 84 Fed. Reg. at 24,100 (emphasis added).

Commerce reasoned that a plain reading of the scope "reflects that rims, discs, and

wheels further processed in a third country are covered by the scope if such processing would not

otherwise exclude these items had the processing occurred in China."  Final Scope Ruling at 10.

In other words, Commerce concluded that the words "including, but not limited to" in the scope

indicate "that the 'painting of wheels from China and the welding and painting of rims and discs

from China to form a steel wheel' are non-exhaustive examples of included processing," but the

"plain language does not address what varieties of processing may otherwise exclude a product

from the scope."  *Id.*  Therefore, Commerce found that the plain language of the scope did not

unambiguously address whether inquiry merchandise was covered by the third country

processing language such that it was necessary to consider other (k)(1) sources.  *Id*.

Asia Wheel and ZC Rubber disagree with Commerce's determination that the scope is

ambiguous, maintaining that the scope unambiguously covers only third country processing of

"rims and discs" and thus excludes truck wheels manufactured in a third country if only one of

two of the components are of Chinese-origin.  Pl. Br. at 16-17; Pl. Intervenor Br. at 12.

Even accepting this interpretation of the phrase "rims and discs from China" as requiring that *both* the rim and disc originate from China,[2] it does not follow that the scope must *exclude* rims *or* discs from China that are further processed into wheels in a third country.  To the contrary, as Commerce explained, the scope "includes" "rims and discs from China" as one, non-exhaustive example of processing that may be covered by the scope.  Final Scope Ruling at 10.

Therefore, Commerce reasonably found that the scope was ambiguous with respect to whether it covered third country processing of rims *or* discs from China and what types of processing are included, and reasonably turned to the (k)(1) sources to resolve this ambiguity.  In so doing, Commerce did not – as Asia Wheel and ZC Rubber assert – change the scope of the *Orders* or interpret the scope contrary to its terms.

**B.     When It Issued The *Orders,* Commerce Explicitly Explained That It Was Not Deciding Hypothetical Situations Such As Those In This Case**

Asia Wheel and ZC Rubber wrongly contend that Commerce determined during the investigations that wheels completed in a third country from a mix of rims and discs from China

---

[2] Although Commerce did not conclude that the usage of "and" with respect to "rims and discs from China" could be interpreted as "rims *or* discs," Asia Wheel misconstrues the word "and" as always requiring a conjunctive reading.  Asia Wheel Br. at 16-18 (citing *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012); *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742, 746 (9th Cir. 1988)).  Asia Wheel's cases, even if binding, do not advance its cause.  In *Adams*, the court recognized that the statute was unambiguous and congressional intent was clear so there was no need to consider the disjunctive form of "and."  671 F.3d at 1145, (Kozinski, J., dissenting).  And the *MacDonald* majority sustained the disjunctive use of "and" under the arbitrary and capricious standard. 859 F.2d at 744-45.  Rather, binding precedent dispels Asia Wheel's "narrow view, that 'and' is used in a conjunctive sense in every statutory provision and that its existence is conclusive in determining which terms Congress intended to group together." *Cormorant Shipholding Corp. v. United States*, 617 F.Supp.2d 1270, 1279 (Ct. Int'l Trade 2009) (citing *Doughten Seed Co. v. United States*, 24 C.C.P.A. 258, 260 (1936)); *see also Pulsifer v. United States*, 144 S. Ct. 718, 728 (2024) (explaining that "grammar is not the primary determinant of meaning" and adopting disjunctive reading of "and" in criminal statute).

and a third county are out-of-scope and improperly recharacterized its scope analysis from the investigations in the Final Scope Ruling. *See* Pl. Br. at 18-22; Pl. Intervenor Br. at 12-13. Rather, as explained below, Commerce's analysis of the (k)(1) sources is supported by substantial evidence and in accordance with law.

During the investigations, Commerce established that the scope language includes "rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China." Final Scope Ruling at 3. Although Commerce declined to modify the scope to expressly include wheels manufactured in a third country from rims or discs from China, it did not dictate that such wheels must be held to be out-of-scope. To the contrary, Commerce stated that it:

> {w}hile in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case. However, here, we find that we can properly frame the scope of the investigation and properly address issues concerning circumvention by incorporating the petitioners' proposed clarification of the scope, subject to the minor change discussed further below.

*Id*. at 27-28. In other words, Commerce held open the possibility that it might still find – with the benefit of further analysis – a steel wheel imported from a third country and manufactured using Chinese components to originate from China such that the orders would apply.

Asia Wheel and ZC Rubber contend that "the plain language indicates that both the rims and the discs must originate from China for a wheel assembled in a third country to fall within the scope" and that "the plain language of the scope of the AD/CVD Orders neither specifically includes nor may reasonably be interpreted to include steel wheels manufactured in third

countries using rims or discs from China – but not both." Pl. Br. at 16; Pl. Intervenor Br. at 12-

13. According to Asia Wheel and ZC Rubber, Commerce agreed with this understanding of the

third-country processing provision and declined to amend the scope as requested because it

agreed that steel wheels assembled in third countries fall within scope only if both the rims and

discs originate from China. Pl. Br. at 2-22; Pl. Intervenor Br. at 23.

This overstates Commerce's response to the petitioners' requests to modify the scope to

include Chinese "rims or discs" that have been further processed in a third country. Final Scope

Ruling at 9. It is undisputed that Commerce declined to make the modification requested by

petitioners. But Commerce's statements in this regard addressed scope language referring to

"rims and discs from China." Commerce did not prejudge that wheels later determined to

originate from China based on a substantial transformation analysis must be out-of-scope.

Instead, Commerce deferred decision on this issue, explaining that it "{w}hile in some instances

Commerce has relied on a substantial transformation analysis to address country-of-origin issues,

the decision to conduct such an analysis is contingent upon the facts and circumstances of a

particular case." Final Scope Ruling at 27-28.

Asia Wheel and ZC Rubber also maintain that "Commerce did not state – or even suggest

– that it was deferring the question of whether the AD/CVD Orders include steel wheels

manufactured in third countries using rims or discs (but not both) from China. Instead,

Commerce indicated that such wheels are outside the scope." Pl. Br. at 32; Pl. Intervenor Br. at

23-24. The record contradicts this statement, where Commerce explained that "the decision to

conduct {a substantial transformation} analysis is contingent upon the facts and circumstances of

a particular case." Commerce explained that it considered the most appropriate resolution to the

question to be an evaluation of specific examples on a case-by-case basis in the context of future

scope or circumvention inquiries, in consideration of information regarding substantial transformation. Asia Wheel's and ZC Rubber's interpretation of the scope lacks support.

In sum, Commerce reasonably interpreted its statements in the investigations to stand for the proposition that (1) wheels made in a third country from rims or discs from China, but not both, are not addressed by the explicit language of the scope and (2) Commerce intended to further evaluate coverage of such products based on case-specific factors at a later point in time as warranted. Final Scope Ruling at 9. Therefore, based on its analysis of the 19 C.F.R. § 351.225(k)(1) sources, Commerce reasonably decided to apply a substantial transformation analysis to determine country of origin for Asia Wheel's truck wheels manufactured in Thailand using discs from China and rims it produces in Thailand from steel plates from China or a third country. This is supported by substantial evidence as set forth above.

### C. Commerce Reasonably Determined That Asia Wheel's Truck Wheels Were Not Substantially Transformed By Processing In Thailand, And Thus Remained From China And Subject To The Orders

Commerce correctly determined that the truck wheels in question are in scope. Asia Wheel and ZC Rubber contend that the determination is unsupported by substantial evidence and that Commerce did not lawfully apply its substantial transformation criteria. Commerce reasonably applied its substantial transformation analysis to find the truck wheels in scope and its findings are supported by substantial evidence.

### 1. Legal Framework For Substantial Transformation Analyses

The scope of an order is "defined by the type of merchandise and the country of origin" and "therefore the determination of where the merchandise is produced or manufactured is a fundamental step in the administration of the antidumping laws." *Advanced Tech & Materials Co. v. United States*, 35 C.I.T. 1380, 1384 (2011).

In determining country of origin, Commerce conducts a substantial transformation analyses. "{S}ubstantial transformation occurs where, 'as a result of manufacturing or processing steps . . . {,} the {product} loses its identity and is transformed into a new product having a new name, character and use.'" *Bell Supply Co. LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (*citing Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)). The Federal Circuit has sustained Commerce's "substantial transformation" analysis as a means of assessing country of origin. *Bell Supply*, 888 F.3d at 1229 (*citing E.I. DuPont De Nemours & Co. v. United States*, 8 F.Supp.2d 854, 858 (Ct. Int'l Trade 1998)) (noting that "in determining if merchandise exported from an intermediate country is covered by an antidumping order, Commerce identified the country of origin by considering whether the essential component is substantially transformed in the country of exportation").

This Court and the Federal Circuit have explained that "{the} 'substantial transformation' rule provides a yardstick for determining whether the processes performed on merchandise in a country are of such significance as to require that the resulting merchandise be considered the product of the country in which the transformation occurred." *Bell Supply*, 888 F.3d at 1229 (*citing DuPont*, 8 F.Supp.2d at 858).  For subject merchandise that is further processed in a third country before exportation to the United States, to determine the country of origin, Commerce normally considers:  (1) whether, as a result of the manufacturing or processing, the product loses its identity and is transformed into a new product having a new name, character, and use; and (2) whether through that transformation, the new article becomes a product of the country in which it was processed or manufactured. *Bell Supply*, 888 F.3d at 1228.  To determine whether a product is transformed, Commerce looks to factors such as (1) the class or kind of merchandise; (2) the product's properties, essential component, and intended end-use; (3) the nature and

sophistication of processing in the country of exportation; (4) the cost of production/value added; and (5) level of investment.  *Bell Supply*, 888 F.3d 1228-29.

### 2.  Commerce Lawfully Conducted Its Substantial Transformation Analysis

Commerce considered the totality of these above five factors and determined that finished wheels processed in Thailand using discs from China and rims it produces in Thailand from steel plates from China or a third country are not substantially transformed such that the third country processing confers country of origin, and therefore, that the country of origin of Asia Wheel's truck wheels is China.  Final Scope Ruling at 16-25.

Asia Wheel and ZC Rubber do not dispute Commerce's use of the substantial transformation analysis to determine country of origin.  Instead, they contend that Commerce failed to determine "whether a Chinese-origin disc became a new product with a new name, character, and use in Thailand."  Pl. Br. at 23-24 (quoting *Bell Supply*, 888 F.3d at 1228-29; *DuPont*, 8 F.Supp.2d at 857); Pl. Intervenor Br. at 15.  Asia Wheel and ZC Rubber further contend that Commerce did not apply the correct legal standard in its analysis of name, character, and use as well as in its analysis of essential characteristics.

Contrary to these contentions, Commerce's decision is supported by substantial evidence. Final Scope Ruling at 18-21  First, neither Asia Wheel or ZC Rubber contest that the finished truck wheels exported from Thailand remained the same class or kind of product as Chinese-origin rims or discs.  Second, with respect to the nature and sophistication of processing, Commerce found that the scope language indicates that "{t}introduction of certain physical characteristics in Thailand (the rim's diameter), and the assembly and finishing steps performed in Thailand are not sophisticated to the extent that it supports transformation."  *Id*. at 22.  Third, Commerce found that wheels maintain their essential characteristics and end-use – to be

17

incorporated into a specific finished truck wheel.  Preliminary Scope Ruling at 17-18; Final

Scope Ruling at 18-20.  Fourth, Asia Wheel's investment into truck wheel production is not

comparable to the investment into production facilities involved in producing the components in

China.  Final Scope ruling at 24-25.  Further, the record reflects that the investment made in

Thailand is highly dependent on expertise of the Chinese affiliate, which maintained substantial

level of oversight over operations at the plaint in Thailand.  *Id*.  Lastly, though the record does

not contain information to calculate the precise amount of value added in Thailand, statements

on the record indicate that the value added by the input steel and initial production steps in China

establishes that production in China constitutes a significant portion of value added.  *Id.* at 23-24.

Any finding under this last factor does not outweigh the totality of the circumstances finding

under the other substantial transformation factors.  *Id.* at 25.

Thus, Commerce's determination that the totality of the factors weighed against a finding

that Asia Wheel's truck wheels that it produces in Thailand using discs from China and rims it

produces in Thailand from steel plates from China or a third country are substantially

transformed is supported by substantial evidence.  *Id*. at 25.

When determining the scope of an order, "Commerce describes the class or kind of

merchandise within the scope of the order in two parts – first, the type of merchandise, *i.e*., its

technical characteristics, and second, the merchandise's country of origin."  *Canadian Solar, Inc.*

*v. United States*, 918 F.3d 909, 913 (Fed. Cir. 2019).  Here, the type of merchandise is truck

wheels manufactured using discs from China and rims it produces in Thailand from steel plates

from China or a third country.  Final Scope Ruling at 25.

Asia Wheel and ZC Rubber maintain that Commerce failed to apply the "new name,

character, and use" framework to ask whether the essential qualities and function of the Chinese-

origin rim or disc differ from the essential qualities and function of the finished wheel produced

in Thailand.  Pl. Br. at 26-27; Pl. Intervenor Br. at 13-15.  However, Commerce explained that

although it is sometimes relevant, "the new name, character, and use" standard is primarily used

by CBP in its country-of-origin analysis.  Final Scope Ruling at 18; *see also Bell Supply*, 888

F.3d at 1228.  This Court has also noted the differences between Commerce and CBP's country-

of-origin analyses, reasoning that "although the {Federal Circuit} speaks of the name, character

or use test, it does not invoke any of the factors used in {CBP} cases and specifically states the

factors Commerce considers to determine whether there has been a substantial transformation."

*Bell Supply Co., LLC v. United States*, 348 F.Supp.3d 1281, 1287, n.6 (Ct. Int'l Trade 2018).

Commerce also explained that adopting this standard as the "sole basis of analysis would result

in even minor finishing/assembly operations sufficient to determine country of origin and render

the existing substantial transformation factors moot, which is not the intent of the reference to

CBP's 'name, character, and use' analysis in *Bell Supply*.  Final Scope Ruling at 18.  In its Final

Scope Ruling, Commerce explained that, while it may consider whether the third country

processing imparted "a new name, character, and use" in consideration of the totality of

circumstances, such findings may not supplant analysis of the record with respect to the

remaining elements of the test.  *Id.* at 18.  In sum, Commerce correctly analyzed to the "name,

character, and use" standard in its substantial transformation analysis.

　　　　Asia Wheel and ZC Rubber further challenge Commerce's finding with respect to the

"essential component" factor, claiming that it is unsupported by substantial evidence because a

finished wheel requires both a rim and a disc to exhibit its essential characteristics and achieve

its function.  Pl. Br. at 24-26; Pl. Intervenor Br. at 13-15.  Asia Wheel and ZC Rubber contend

that, because the disc alone cannot function as a wheel, there must be substantial transformation

of a Chinese-origin disc when the rim is affixed to it in Thailand.  They further contend that it was unreasonable to determine that a Chinese- origin discs exhibit the essential characteristics of finished wheels.  Pl. Br. at 23; Pl. Intervenor Br. at 17.

Asia Wheel and ZC Rubber's argument is similar to that made in *WorldPac*, where WorldPac filed a scope ruling request asking that Commerce determine whether a single tapered roller bearing set, incorporated into a completed wheel hub assembly manufactured in Germany from other non-Chinese parts, fell outside of the scope of the antidumping duty order on tapered roller bearings (TRB) from China.  Final Scope Ruling on WorldPac Inc.'s Wheel Hub Assemblies, September 11, 2019 (*WorldPac*), available at P.R. 43; *see also* Preliminary Scope Ruling at 17; Final Scope Ruling at 18-19.

In *WorldPac*, Commerce found that the essential component of the merchandise is substantially transformed in the country of exportation because the Chinese-TRB is incorporated into a substantially different product such that the Chinese-TRB set no longer functions as a single-acting TRB set, but rather, must function in unison with the Polish-TRB set and other parts as part of the wheel hub assembly.  *WorldPac* at 5.  However, in that case, Commerce considered a mix of subject and non-subject materials and cited the processing of "significant, additional, non-subject materials" as contributing to its decision.  *Id*.  The assembly in this proceeding is much simpler, utilizing only two major components, both otherwise subject to the orders as components.  Final Scope Ruling at 18-19.  Additionally, a disc or rim continues to function as the only such component after incorporation into a finished wheel.  *Id*.  Unlike the TRBs in *WorldPac*, a finished wheel does not make use of multiples of the same component, sourced from different countries."  Final Scope Ruling at 19.

The "key qualities" of a disc as identified in Asia Wheel's own case briefs are not changed or otherwise transformed through processing: (1) the number, placement, and type of bolt holes; (2) the mounting arrangement; and (3) the materials used to produce the disc. *Id.* at 20.  For this factor, Commerce determined that the rims and discs each maintain their essential characteristics and sole purpose of being incorporated into a finished wheel throughout processing in Thailand. *Id.* at 19, 25.

Therefore, the essential characteristics of Asia Wheel's truck wheels remain unchanged throughout further processing in Thailand and thus, do not support a finding of substantial transformation.  Further, Asia Wheel and ZC Rubber do not argue that any given component could be used to produce wheels that would not be covered by the scope.

Asia Wheel further contends that "{t}he question is not, however, the country of origin of the Chinese-origin wheel components.  Rather, the question is the country of origin of the finished truck wheels imported into the United States." Pl. Br. at 25; *see also* Pl. Intervenor Br. at 15.  Asia Wheel and ZC Rubber further contend that "the fundamental question is not whether the Chinese-origin disc continues to have the qualities and function as such after processing in Thailand, but whether the essential qualities and function of the Chinese-origin disc differ from the essential qualities and function of the finished truck wheel manufactured in Thailand and imported into the United States."  Pl. Br. at 26; *see also* Pl. Intervenor Br. at 14.

Both arguments fail to consider the relevance of examining the qualities, function, and origin of component parts as a part of Commerce's substantial transformation analysis.  This Court rejected a similar argument in *Peer Bearing*, where it considered whether unfinished and finished parts from China were substantially transformed into finished TRBs in Thailand.  *Peer Bearing Co.-Changshan v. United States*, 128 F.Supp.3d 1286 (Ct. Int'l Trade 2015).  The Court

explained that "Commerce was not precluded from taking into consideration the uncontested fact that the TRB production in Thailand was conducted upon parts, finished and unfinished, that ultimately were destined to become TRBs." *Id*. at 1303. Accordingly, Commerce reasonably considered whether the essential characteristics and purpose of the component wheel parts were changed by further processing in Thailand to determine the country of origin of the finished wheel. Final Scope Ruling at 18-19. This governing standard establishes that Asia Wheel's truck wheels were not substantially transformed by processing in Thailand.

### D. Commerce's Application OF Antidumping And Countervailing Duty Liability To The Entire Imported Wheel Is Supported By Substantial Evidence And In Accordance With Law

Commerce lawfully imposed antidumping and countervailing liability to the entire finished wheel – because finished wheels are subject merchandise. Asia Wheel and ZC Rubber ask this Court to instead compel Commerce to instruct CPB to collect duties only on the components of the truck wheels that they argue are subject to the order. Pl. Br. at 28-29; Pl. Intervenor Br. at 21-22. Contrary to the Federal Circuit's teaching in *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1356-57 (Fed. Cir. 2010) and other cases, Asia Wheel and ZC Rubber ask the Court to begin its inquiry at the wrong point in the analysis. Instead of first determining whether a product includes subject and non-subject parts and then applying its mixed media analysis to determine "how much" of the product should be dutiable, Asia Wheel and ZC Rubber are beginning at the end, asking the Court to determine that some part of the entered product is not dutiable, when it has already been determined that the entire entered product is subject merchandise. Asia Wheel's truck wheels are not a collection of subject and non-subject parts. The finished wheels imported from Thailand are the exact type of merchandise contemplated by the scope. *Orders*, 84 Fed. Reg. at 24,100 ("The scope includes certain on-the-

road steel wheels with either a 'hub-piloted' or 'stud-piloted' mounting configuration, and includes rims and discs for such wheels, whether imported as an assembly or separately"). Because the imported wheels are solitary articles, not a mix of subject and non-subject merchandise, there is no question as to whether any part of the entered product should not be dutiable. *Id.*

Nothing in the record supports Asia Wheel and ZC Rubber's contention that Commerce impermissibly expanded the scope of the *Orders* and that there was no rational connection between the facts of this case and Commerce's Final Scope Ruling. Pl. Br. at 28-29; Pl. Intervenor Br. at 21-22. During the underlying scope inquiry, Commerce examined Asia Wheel's truck wheels manufactured in Thailand using discs from China and rims it produces in Thailand from steel plates from China or a third country. During the inquiry, as discussed above, Commerce explained that a determination whether a product is subject to an order entails both an assessment of the product's physical characteristics and a country-of-origin determination. Preliminary Scope Ruling at 11; Final Scope Ruling at 4-6. Commerce determined that a plain reading of the scope language reflects that rims, discs, and wheels further processed in a third country are in-scope if that processing would not otherwise exclude these items from the scope had the processing occurred in China. Final Scope Ruling at 10. Commerce elaborated that the plain language of the scope does not address what varieties of processing may otherwise exclude a product from the scope. *Id.*

Because of this ambiguity, Commerce conducted a substantial transformation analysis to determine whether the processing performed in Thailand substantially transformed Asia Wheel's truck wheels to the point where it would be appropriate to designate the finished wheel as originating from Thailand, rather than as a wheel originating from China. As discussed above,

Commerce found that Asia Wheel's finished truck wheels processed in Thailand using discs

from China and rims it produces in Thailand from steel plates from China or a third country did

not substantially transform such that the third-country processing confers a new country of

origin. Final Scope Ruling at 16-25. Because Commerce determined that Asia Wheels' truck

wheels were not substantially transformed in Thailand, Commerce concluded that the scope

language was dispositive and that the finished wheels were in-scope.

      With this analytical framework in mind, Asia Wheel and ZC Rubber's contentions with

respect to what portion of the finished wheels should be subject to duties are unpersuasive and

lack substance because they fail to cite any binding or even persuasive authority suggesting that

their approach is correct. To start, Commerce has not interpreted the *Orders* contrary to their

terms. Pl. Br. 28 (citing *Eckstrom Indus., Inc. v. United States.*, 254 F.3d 1068, 1072 (Fed. Cir.

2001). In *Eckstrom*, the Court of Appeals for the Federal Circuit held that Commerce had

impermissibly expanded the scope. 254 F.3d at 1072. The order at issue in *Eckstrom* contained

the following relevant scope language:

> The products subject to this investigation are certain stainless
> steel butt-*weld* pipe fittings, whether finished or unfinished,
> under 14 inches inside diameter.
>
> Certain *welded* stainless steel butt-*weld* pipe fittings (pipe fittings)
> are used to connect pipe sections in piping systems where
> conditions require *welded* connections.

*Id.* at 1070 (citation omitted) (emphases added). The Court explained that Commerce's

"interpretation of the order as covering *any* stainless steel butt-welded pipe fittings" ignored the

language of the scope that indicated it applied only to "*welded*" pipe. *Id*.

Here, unlike *Eckstrom*, Commerce did not contradict express scope language, nor did it expand the scope to encompass goods that were never contemplated by the scope.  In relevant part, the scope provides:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*Orders*, 84 Fed. Reg. at 24,100.

Despite Asia Wheel and ZC Rubber's contentions that Commerce impermissibly expanded the scope, the agency relied on express third country processing language in the scope, coupled with its substantial transformation analysis, to find that the wheel components processed in Thailand were not "further processed in a third country" to the point to being rendered out-of-scope.  Final Scope Ruling at 25.  None of the other cases that Asia Wheel or ZC Rubber cite have any bearing on whether Commerce should impose liability on the entire imported article, nor do they demonstrate that Commerce's analysis in this case was incorrect.  *See* Pl. Br. at 28-29 (citing *Allegheny Bradford Corp. v. United States*, 342 F.Supp.2d 1172, 1183 (Ct. Int'l Trade 2004); *Mitsubishi Elec. Corp. v. United States*, 802 F.Supp. 455, 460 (Ct. Int'l Trade 1992); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. et al., v. State Farm Mut. Auto. Inst Co.*, 463 U.S. 29, 43 (1983); *Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995); *USX Corp. v. United States*, 655 F.Supp. 487, 492 (Ct. Int'l Trade 1987)); Pl. Intervenor Br. at 21-22.

None of these cases support Asia Wheel and ZC Rubber's liability argument.  Instead, they are examples of legal principles relating to scope determinations or cases in which the Court held that Commerce had misinterpreted the scope of an order.

In *Allegheny*, Commerce had found that plaintiff Top Line's non-beveled pipe fittings were in-scope.  However, the scope in *Allegheny* contained the following scope language:  "The edges of finished pipe fittings are beveled."  *Amended Final Determination and Antidumping Duty Order: Certain Welded Stainless Steel Butt-Weld Pipe Fittings from Taiwan*, 58 Fed. Reg. 33,250 (Dep't of Commerce June 16, 1993).  The Court held that, because the scope included "finished" or "unfinished" pipe, and there was no evidence that Top Line's non-beveled pipe fittings were unfinished, covering them under the scope of the order contradicted the express language of the scope that "finished pipe fittings are beveled."  *Allegheny*, 342 F.Supp. at 1190. In contrast, Commerce followed the express language of the scope here.

Similarly, in *Mitsubishi*, the Court held that Commerce had impermissibly expanded the scope of the order when it found certain radio frequency power semiconductors to be subassemblies of cellular mobile telephones within the scope of the order on cellular mobile telephones and subassemblies.  *Mitsubishi*, 802 F.Supp. at 461.  The Court reasoned that Commerce had ignored a mandatory scope criterion that subassemblies must be "dedicated *exclusively* for use in CMT transceivers or control units" where Mitsubishi's subassemblies were, in fact, capable of functioning in other devices that were not CMT transceivers. *Mitsubishi*, 802 F.Supp. at 458.  The Court further explained that, requiring Mitsubishi to proffer information to establish actual use of its subassemblies in the production of non-CMT devices in the United States, impermissibly added a requirement absent from the scope.  *Id.* at 461-62.

The remaining cited cases do not reflect the facts of this case.  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 34, discussed the arbitrary and capricious standard contained at 5 U.S.C. § 706. Asia Wheel and ZC Rubber do attempt to compare *Motor Vehicle Mfrs. Ass'n* with the agency action here.  Likewise, neither *Bjelland* nor *USX Corporation* discuss issues regarding the scope

of an order, let alone whether only portions of the imported article should be subject to duty liability.  Pl. Br. at 29 (quoting *USX Corp.*, 655 F.Supp. at 492).  In sum, Asia Wheel and ZC Rubber fail to cite any relevant authority.

Commerce did, however, discuss controlling precedent on its authority to determine whether it should impose duty liability only on a portion of the imported article.  Final Scope Ruling at 4, 32 (citing *Bell Supply*, 888 F.3d at1230; *Walgreen*, 620 F.3d at 1356-57; *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023)).

The Federal Circuit has addressed Commerce's scope determinations with respect to imported articles that contain both subject and non-subject merchandise, explaining that Commerce correctly found based on the facts of that case "that the components of the gift bag sets did not interact in any way or otherwise represent a unique product.  Having so concluded, it then properly determined, based on the (k)(1) criteria and the language of the Final Order, that the tissue paper contained in the gift bag sets fell within the scope of the antidumping order." *Walgreen*, 620 F.3d at 1356-57.  In contrast to the gift bags in *Walgreen*, the finished truck wheels coming from Thailand do not represent a unique product that is outside the scope of the *Orders*.  To be sure, as discussed above, Commerce's scope determination relied upon express third country processing language, coupled with its substantial transformation analysis, when it determined that the "steel wheels exported from Thailand {} are solitary articles plainly covered by the scope of the *Orders*."  Final Scope Ruling at 33.  There is no express scope language carving out from the scope any specific parts of a wheel that have been determined to be subject to the scope.  *Orders*, 84 Fed. Reg. at 24,100 ("The scope includes certain on-the-road steel wheels with either a "hub-piloted" or "stud- piloted" mounting configuration, and includes rims

27

and discs for such wheels, whether imported as an assembly or separately").  Asia Wheel and ZC Rubber have not cited authority that supports their position that Commerce should impose duty liability on only a portion of the imported article that is subject to the scope, despite express scope language covering third country processing.

Moreover, Asia Wheel and ZC Rubber do not contest Commerce's determination that a mixed media analysis is unwarranted (and thus have waived any criticism).  Final Scope Ruling at 32-33.  Commerce's practice is to conduct mixed media analyses for merchandise that includes both subject and non-subject merchandise to determine whether to apply the duty to the entire product or only a portion.  *Id.*  In *Mid Continent*, the Federal Circuit set forth Commerce's authority to conduct this analysis, even when scope language does not expressly mention mixed-media items:

> The interpretive process for a scope determination relating to mixed media items necessarily involves two steps. **{1}** First, Commerce must determine whether the potentially subject merchandise included within the mixed media item is within the literal terms of the antidumping order. **{2}** If it is, then Commerce must determine whether the inclusion of that merchandise within a mixed media item should nonetheless result in its exclusion from the scope of the order.

*Mid Continent Nail Corp. v. United States.*, 725 F.3d 1295, 1302 (Fed. Cir. 2013) (*Mid Continent*); Final Scope Ruling at 33 (citing *Mid Continent*, 725 F.3d at 1298).  Accordingly, the whole wheel is subject merchandise and duties should be assessed on the entered value of that subject merchandise.

### E.    Commerce Provided Notice That Wheels Produced In Third Countries From Chinese Origin Components Could Be Subject Merchandise

Asia Wheel and ZC Rubber contend that suspension of liquidation is impermissible before the date of initiation because they did not receive adequate notice before that date – May

12, 2021 - that their merchandise could be subject merchandise.  Pl. Br. at 30-35; Pl. Intervenor Br. at 22-24.  Contrary to these claims, Commerce gave adequate notice when it instructed CBP to continue the suspension of liquidation for products found to be covered by the orders if already suspended, and if not already suspended, to suspend liquidation of entries of products found to be covered effective to the date of initiation.  Final Scope Ruling at 30.

    As an initial matter, Commerce provided adequate notice and warning in the underlying investigation:

> While in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, *the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case*.  However, here, we find that we can properly frame the scope of the investigation and properly address issues concerning circumvention by incorporating the petitioners' proposed clarification of the scope, subject to the minor change discussed further below."

Final Scope Ruling at 27-28 (citing Final AD Determination Issues and Decisions Memorandum at 11).  Commerce's express statements in the *Orders* that future merchandise would need to be evaluated on a case-by-case basis conveyed sufficient notice to any reasonably informed importer.  Final Scope Ruling at 28-29 (citing *Tai-Ao Aluminum (Thaishan) Co., Ltd. v. United States*, 983 F.3d 487 (Fed. Cir. 2020)); *see also Orders*, 84 Fed. Reg. at 24,100.  As discussed above, Asia Wheel's merchandise is precisely the type contemplated by the scope language "rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China."  *Orders*, 84 Fed. Reg. at 24,100.  Relying on this express language from the investigation, Commerce acted in accordance with law when it ordered CBP to suspend liquidation as of the date of initiation.  Final Scope Ruling at 30.

29

Despite this adequate notice of potential duty liability, Asia Wheel and ZC Rubber misapprehend several cases that they claim demonstrate that Commerce did not provide adequate notice.  Pl. Br. at 30-35 (citing *Trans Tex. Tire, LLC v. United States*, 519 F.Supp.3d 1289, 1304-05 (Ct. Int'l Trade 2021); *Tai-Ao*, 983 F.3d at 495).

In *Trans Texas Tire*, the plaintiffs raised two primary arguments:  (1) that Commerce's determination that certain chrome wheels were covered by the scope of the order was unlawful and (2) that Commerce improperly assessed antidumping duties retroactively to the preliminary determination date without adequate notice.  519 F.Supp.3d at 1299.  The underlying scope question was whether the wheels were covered under an exclusion in the order's scope that "{e}xcluded from this scope are . . . certain on the road steel wheels that are coated entirely with chrome."  *Id.* at 1297.  After several parties requested that Commerce clarify whether this exclusion included plaintiff's chrome wheels, Commerce published a preliminary scope ruling on April 15, 2019, and published its final scope ruling on July 1, 2019.  Commerce did not clarify whether plaintiff's chrome wheels were covered under the scope of the order until its final scope ruling, 11 months after it initiated the investigation.  *Id.*  The Court in *Trans Texas Tire* sustained Commerce's authority to "alter the scope of the investigation until the final order," however, it disagreed with Commerce's decision to suspend entries going back to the date of Commerce's preliminary scope ruling.  *Id.* at 1301 (citations omitted).  The Court explained that, although Commerce's scope determination in the proceeding was correct, Commerce failed to provide adequate notice that plaintiff's chrome wheels would not fall within the chrome coated exclusion until it published its final scope ruling.  *Id.* at 1303.

Unlike in *Trans Texas Tire*, Commerce provided adequate notice in the original investigation that merchandise "rims and discs that have been further processed in a third

country, including, but not limited to, the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China" may be subject merchandise, and there is no dispute that the finished wheels imported from Thailand are precisely the type of merchandise, given Commerce's substantial transformation analysis, contemplated by the *Orders'* scope.  Final Scope Ruling at 9; *Orders*, 84 Fed. Reg. at 24,100.

Asia Wheel and ZC Rubber's reliance on *Tai-Ao* is also misplaced.  Pl. Br. at 30-39; Pl. Intervenor Br. at 22-24.  In *Tai-Ao*, Commerce initiated an anti-circumvention inquiry into aluminum extrusions.  983 F.3d at 490-91 (citing *Aluminum Extrusions from the People's Republic of China:  Initiation of Anti-Circumvention Inquiry*, 81 Fed. Reg. 15,039, 15,042 (Dep't of Commerce Mar. 21, 2016)).  The anti-circumvention initiation notice in *Tai-Ao* set forth its own limited coverage that *expressly* did not include plaintiff's imports:

> This anti-circumvention inquiry covers extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy, which are heat-treated, and *exported by Zhongwang.*
>
> *The Department intends to consider whether the inquiry should apply to all imports* of extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy and are heat-treated, regardless of producer, exporter, or importer, from the PRC.

81 Fed. Reg. at 15,402 (emphases added).  Commerce initiated the anti-circumvention inquiry for only one company, Zhongwang.  *Id*.  At initiation, while Commerce did say that it intended to consider whether its inquiry might apply to all imports of extruded aluminum, no other company was subject to the inquiry.  *Id*.  However, following its preliminary anti-circumvention determination, Commerce released the following language via a notice in the Federal Register:

> The products covered by this inquiry are heat-treated extruded
> aluminum products that meet the chemical specifications for 5050-
> grade aluminum alloy (inquiry merchandise), *regardless of*
> *producer, exporter, or importer, from the PRC.*

*Tai-Ao*, 983 F.3d at 492 (citing *Aluminum Extrusions from the People's Republic of China:*

*Affirmative Preliminary Determination of Circumvention*, 81 Fed. Reg. 79,444, 79,445 (Dep't of

Commerce Nov. 14, 2016)) (emphasis added).  The Court held that, because Commerce's

initiation was not country-wide, the first notice that came to all other producers, exporters, or

importers, besides Zhongwang, that their merchandise may be subject to Commerce's anti-

circumvention inquiry, came on the date of Commerce's preliminary anti-circumvention

determination.  *Tai-Ao*, 983 F.3d at 495-96.  The court explained that "the regulations require

that Commerce's Initiation Notice include '{a}n explanation of the reasons for {Commerce's}

decision to initiate a scope inquiry.'" *Id.* at 496 (quoting 19 C.F.R. § 351.225(f)(1)(ii)).  The

Court noted that Commerce had only issued a questionnaire to Zhongwang, which further did not

put any other company on notice that it might be subject to the anti-circumvention inquiry until

after the issuance of the preliminary determination.  *Id.*

    In contrast to *Tai-Ao*, here Commerce provided notice to all parties that their merchandise

may be covered pursuant to the original investigation.  Final Scope Ruling at 27-28 (citing Final

AD Determination).  And Asia Wheel and its products were plainly identified at all points in this

inquiry, from Commerce's initial investigation, CBP's EAPA proceeding begun in 2021, CBP's

referral of 2021, and the 2021 initiation notice.  And the merchandise subject to this scope

inquiry was of the exact type of merchandise identified in the orders.

    Finally, Asia Wheel and ZC Rubber contend that Commerce's instructions to CBP to

continue its prior suspension of liquidation under EAPA was unlawful because importers lacked

fair warning until May 12, 2021, that wheels manufactured in a third country with rims *or* discs

32

from China were potentially within the scope.  Pl. Br. at 36-39; Pl. Intervenor Br. at 22-24.

Apart from the actual notice Asia Wheel and ZC Rubber received, which readily disposes of this

issue, CBP suspends liquidation under 19 U.S.C. § 1517(e) interim measures based on its own

authority, not that of Commerce.  Commerce has no authority to direct CBP decisions entrusted

to that agency by Congress in EAPA.  Asia Wheel and ZC Rubber cites no authority permitting

such an intrusion into CBP's domain.  Final Scope Ruling at 30.  While Commerce did direct

CBP to continue suspension of liquidation, Commerce lacks authority to override CBP's separate

EAPA authority.  *Id.*

   *Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020), does not advance Asia

Wheel's arguments.  Asia Wheel latches onto a sentence that it contends stands for the

proposition that CBP may only suspend liquidation when it has concluded that a product falls

within unambiguous scope language and, because CBP had referred the matter to Commerce,

CBP has not made the requisite finding determination.  Pl. Br. at 37 (citing *Sunpreme*, 946 F.3d

at 1321).  But unlike in *Sunpreme*, where CBP exercised its inherent authority to collect duties,

946 F.3d at 1320-21, CBP suspended liquidation in this matter during its own EAPA proceeding,

because it had found a "reasonable suspicion" of evasion.  19 U.S.C. § 1517(e).  Accordingly,

contrary to Asia Wheel's contentions, in an EAPA proceeding, CBP need not affirmatively find

that a product is within the scope of an order.  All it need do is have a "reasonable suspicion" of

evasion, 19 U.S.C. § 1517(e), before it shall "suspend the liquidation of each unliquidated entry

of such covered merchandise that entered on or after the date of the initiation of the {EAPA}

investigation."  19 U.S.C. § 1517(e)(1).

   Indeed, in *Diamond Tools*, a case involving a similar CBP referral to Commerce to assess

the scope of a subject product, the Court made clear that CBP's authority moves on an entirely

different track than Commerce's.  The Court explained that Commerce's actions under its own statutes do not "diminish Customs' authority under the EAPA to apply Commerce's affirmative covered merchandise determination to all entries covered by the EAPA investigation."  *Diamond Tools Tech. LLC v. United States*, 545 F.Supp.3d 1324, 1351 (Ct. Int'l Trade 2021).  And as a result, it sustained the earlier suspension date imposed under EAPA interim measures as opposed to the later date under Commerce's parallel proceeding.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain the challenged scope ruling.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/  L. MISHA PREHEIM
Assistant Director

/s/  STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-5196
Fax: (202) 305-2062
Email: stephen.tosini@usdoj.gov
Attorneys for Defendant

OF COUNSEL:

IAN A. McINERNEY
Senior Attorney
Office of the Chief Counsel for Trade
Enforcement and Compliance
United States Department of Commerce

April 30, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to paragraph 2(B)(2) of the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in paragraph 2(B)(1)(b) of the Chambers Procedures for a filing under Rule 56.2(h). Specifically, excluding those exempted portions of the brief as set forth in paragraph 2(B)(1) of the Chambers Procedures, I hereby certify that this brief contains 10,424 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Stephen C. Tosini