### UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| ASIA WHEEL CO., LTD., | |
| *Plaintiff*, | |
| and | |
| ZC RUBBER AMERICA INC., | |
| *Plaintiff-Intervenor*, | |
| v. | Consol. Court No. 23-00143 |
| UNITED STATES, | |
| *Defendant*, | |
| and | |
| ACCURIDE CORPORATION, | |
| *Defendant-Intervenor.* | |

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S MOTIONs FOR JUDGMENT ON THE AGENCY RECORD


Roger B. Schagrin
Nicholas J. Birch

**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700


*Accuride Corporation*


Dated May 14, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. i

STATEMENT PURSUANT TO RULE 52.6(c)(1) ......................................................... 2

   I.   Administrative Determination Under Review ..................................................... 2

   II.  Issues Presented for Review and Summary of the Argument ............................ 2

STANDARD OF REVIEW ............................................................................................... 4

ARGUMENT ..................................................................................................................... 5

   I.   Commerce lawfully addressed the scope of the AD/CVD Orders on Certain Steel Wheels from China ............................................................................................ 5

   II.  Commerce's scope ruling and application of its substantial transformation analysis is supported by substantial evidence and in accordance with law ...................... 13

    a. Commerce applied the correct substantial transformation analysis, as has been affirmed by the Federal Circuit ............................................................................ 13

    b.   Commerce's substantial transformation determination is supported by substantial evidence ................................................................................................. 16

   III.  Commerce's application of AD/CVD duties to the entire imported wheel is supported by substantial evidence and in accordance with law .......................... 21

   IV.  Commerce lawfully declined to direct U.S. Customs and Border Protection to lift the suspension of liquidation of imports entered before the date of initiation of the scope inquiry ...................................................................................................... 23

CONCLUSION ................................................................................................................ 28

# TABLE OF AUTHORITIES

## Cases

*Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ............................................................................................................... 8

*Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ........................................................................................................... 14, 16

*Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229 (Ct. Int'l Trade 2019) ..................................................................................................... 11, 17, 18

*Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018) . 13, 14, 15, 16, 19, 20, 21, 22

*Bestfoods v. United States*, 165 F.3d 1371 (Fed. Cir. 1999) .................................... 13

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) .................................................. 4

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) ............................................... 4

*Cormorant Shipholding Corp. v. United States*, 617 F.Supp.2d 1270 (Ct. Int'l Trade 2009) ........................................................................................................ 9

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ................................................................................................... 26, 27

*E.I. Du Pont de Nemours & Co. v. United States,* 22 C.I.T. 370 (1998) .................... 22

*INS v. Elias-Zacarias*, 502 U.S. 478 (1992) ........................................................... 4

*King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) ................... 7

*MacLean Power, L.L.C. v. United States*, 359 F. Supp. 3d 1367 (Ct. Int'l Trade 2019) ........................................................................................................... 18, 19

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ............. 4

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) ............. 22

*Peacock v. Lubbock Compress Co.*, 252 F.2d 892 (5th Cir. 1958) ............................. 9

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) ........................................... 8

*Polites v. United States*, 35 C.I.T. 312 (2011) ........................................................ 7

*Pulsifer v. United States*, 144 S. Ct. 718 (2024) ..................................................... 9

*SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) ...................... 7

*Smith Corona Corp. v. United States*, 811 F. Supp. 692  (Ct. Int'l Trade 1993) ......................... 20

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) ............................ 13

*Sunpreme Inc. v. United States*, 946 F.3d 1300, 1316 (Fed. Cir. 2020). .......................... 25, 26, 27

*Target Corp. v. United States*, 33 C.I.T. 760 (2009), *aff'd*, 609 F.3d 1352 (Fed. Cir. 2010) ..................................................................................................... 25

*Trade Assocs. Grp., Ltd. v. United States*, 961 F. Supp. 2d 1306 (Ct. Int'l Trade 2014) ................................................................................................................... 8

*United States v. Fisk*, 70 U.S. 445 (1865) ................................................................ 9

*United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020) .............. 4, 18

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .............................................. 4

*Vietnam Finewood Co. Ltd. v. United States*, 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ....................................................................................................... 8

*Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350 (Fed. Cir. 2010) ....... 22

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................. 4

19 U.S.C. § 1517(e) ................................................................................................ 26

19 U.S.C. § 1517(e)(1) ........................................................................................... 26

19 U.S.C. § 1671e(a)(2) ......................................................................................... 10

19 U.S.C. § 1673e(a)(2) ......................................................................................... 10

**Regulations**

19 C.F.R. § 351.225 ............................................................................................... 24

19 CFR § 351.225(l) ....................................................................................... 24, 25, 26

19 CFR § 351.225(l)(3) .......................................................................................... 24

**Administrative Determinations**

*Certain Steel Wheels From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098  (May 24, 2019) ........................................ 6

*Certain Steel Wheels From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 83 Fed. Reg. 17,798 (Dep't Commerce April 16, 2018) .................................................................................................................... 5

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| |
|---|
| ASIA WHEEL CO., LTD., |
|                          *Plaintiff*, |
|          and |
| ZC RUBBER AMERICA INC., |
|                          *Plaintiff-Intervenor*, |
|          v. |
| UNITED STATES, |
|                          *Defendant*, |
|          and |
| ACCURIDE CORPORATION, |
|                          *Defendant-Intervenor.* |

Consol. Court No. 23-00143

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S MOTIONS FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of this Court, Defendant-Intervenor Accuride Corporation ("Defendant-Intervenor") hereby submits its response to the motions for judgement on the agency record filed by Plaintiff Asia Wheel Co. ("Plaintiff") and Plaintiff-Intervenor ZC Rubber America Inc. ("Plaintiff-Intervenor"). *Amended Plaintiff's Motion for Judgment on the Agency Record and Accompanying Memorandum of Points and Authorities* (ECF No. 35) ("Pl.'s Br."); *Plaintiff-Intervenor's Rule 56.2 Motion for Judgment upon the Agency Record* (ECF No. 31) ("Pl.-Intervenor's Br."). In this response, Defendant-Intervenor has endeavored to avoid unnecessarily repeating arguments that have been made in Defendant's response brief. *See Defendant's Opposition to Plaintiff's and Plaintiff-Intervenor's Motions for Judgment upon the Administrative Record* (ECF No. 42) ("Def.'s Br."). Defendant-Intervenor supports the arguments made by Defendant and agrees that the arguments made in Plaintiff's and Plaintiff-

Intervenor's briefs are without merit and that this Court should sustain Commerce's reasoned scope determination that is challenged in this case. In addition to the points made by Defendant, this Court should do so for the reasons set out below.

## STATEMENT PURSUANT TO RULE 52.6(c)(1)

### I.    Administrative Determination Under Review

The administrative determination challenged by Plaintiff and Plaintiff-Intervenor here is the final scope determination by the Department of Commerce ("Commerce") regarding on Chinese steel wheels 22.5 to 24.5 inches in diameter subject to antidumping ("AD") and countervailing duty ("CVD") orders and assembled in Thailand, published as *Antidumping and Countervailing Duty Orders on Certain Steel Wheels 22.5-24.5 Inches in Diameter from the People's Republic of China: Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand* (Dep't Commerce Jun. 7, 2023) (the "*Final Scope Ruling*").

### II.    Issues Presented for Review and Summary of the Argument

1) **Did Commerce lawfully clarify the scope of the AD/CVD orders on Certain Steel Wheels from China?**

*Defendant-Intervenor's Position:* Yes. Commerce lawfully clarified the scope of the AD/CVD orders to interpret an ambiguity regarding certain third-country processing of subject merchandise. Plaintiff's and Plaintiff-Intervenor's arguments impermissibly ignore the actual scope language Commerce had adopted and interpret Commerce's statements in a manner that is incompatible with the plain and full text of what Commerce had said.

2) **Was Commerce's substantial transformation determination supported by substantial evidence and in accordance with law?**

*Defendant-Intervenor's Position:* Yes. Commerce's determination that steel wheels assembled in Thailand using subject Chinese-origin discs were within the scope of the

2

AD/CVD orders was supported by substantial evidence, and Commerce applied the

correct legal standard in its consideration of the five factors for substantial

transformation. Plaintiff's and Plaintiff-Intervenor's reliance on what this Court has

recognized as mere dicta from the Federal Circuit does not support their claims that

Commerce must apply a different test. Further, Plaintiff and Plaintiff-Intervenor fail to

engage with the majority of the analysis Commerce properly made, so fail to show that

the totality of the circumstances—the proper standard under Commerce's analysis—

supports the outcome they seek.

**3)** **Was Commerce's determination that the entire imported product was subject to AD/CVD liabilities supported by substantial evidence and otherwise in accordance with law?**

*Defendant-Intervenor's Position*: Yes. As directed by court precedent, Commerce

properly determined the origin of the entire product imported through its substantial

transformation analysis.

**4)** **Did Commerce lawfully decline to instruct U.S. Customs and Border Protection to lift suspension of liquidation of imports entered before the date of initiation of the scope inquiry?**

*Defendant-Intervenor's Position*: Yes. U.S. Customs and Border Protection's

("Customs") suspension of liquidation was done under Customs' own authority as

directed by statute. Commerce had no authority to order its sister agency in how to apply

that entirely independent authority. All reasonably informed parties were made aware

from Commerce's explicitly limited prior scope ruling that the merchandise in question

here could be found to be within the scope of the AD/CVD orders.

## STANDARD OF REVIEW

This Court will uphold a determination by Commerce on the scope of AD and CVD orders unless that determination is unsupported by substantial evidence or otherwise is not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). A decision is supported by substantial evidence where there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Applying this substantial evidence standard does not require that the court supersede the decision-making role of the agency, and so the court does not determine what decision it would have made had it been in Commerce's position. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984). Instead, that agency's decisions are due deference and only set aside where "no reasonable fact finder" could have reached the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

Further, "parties challenging Commerce's scope determinations under substantial evidence review confront a high barrier to reversal." *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 798 (Fed. Cir. 2020). That high barrier arises from the fact, as the Federal Circuit has "consistently emphasized{,} that Commerce is entitled to substantial deference when interpreting its own antidumping duty orders because the meaning and scope of such orders is within Commerce's particular expertise and special competence." *Id.*

## ARGUMENT

**I.  Commerce lawfully addressed the scope of the AD/CVD Orders on Certain Steel Wheels from China**

Plaintiff Asia Wheel and Plaintiff-Intervenor ZC Rubber claim that the scope for the AD/CVD orders (the "Orders") on steel wheels from China was not ambiguous and that the plain language of this scope limits these Orders to steel wheels that are produced from both Chinese-origin rims *and* discs. Pl.'s Br. at 16-17; Pl.-Intervenor's Br. at 12-13. Asia Wheel and ZC Rubber attempt to elevate three words that appear in the scope, "and" and "from China," to a status that controls the meaning of the rest of words of the scope. But their arguments ignore the actual context of those three words, and the clear scope language that instead limits their meaning to how they were in fact used: to describe a single, non-exclusive example of a covered product. The claim that the meaning of the scope can be determined by plucking a few words out of context without examining the full language of that scope must be rejected.

From the beginning of Commerce's investigations into certain steel wheels from China, the language of the scope has covered wheel parts, both an outer wheel rim or an inner wheel disc, as well as the assembled wheel. *See Certain Steel Wheels From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 83 Fed. Reg. 17,798, 17,802 (Dep't Commerce April 16, 2018) (Commerce's notice of initiation: "The merchandise subject to the investigation is certain on-the-road steel *wheels, discs, and rims*…" (emphasis added)). If Asia Wheel had exported the wheel parts from China (instead of first shipping them to Thailand in an attempt to escape the Orders) or wheels finished in China directly to the United States, that merchandise unambiguously would have been covered by the scope and subject to the AD/CVD duties.

During those investigations, a question arose concerning the coverage, regarding if

certain types of finishing were done to those in-scope wheel parts in a third country before they were imported into the United States. Commerce addressed this question by issuing what it labeled a "Scope Clarification." *See Issues and Decision Memorandum for the Final Determination of the Less-Than-Fair-Value Investigation of Certain Steel Wheels from the People's Republic of China* (Dep't Commerce March 21, 2019) at 7-13, *included in* P.R. 1[1] (Exhibit 1) ("*Final Inv. Memo.*").[2] In that clarification, Commerce recognized that "the scope of this investigation makes clear that steel wheels, discs, and rims from China are covered by the scope." *Id.* at 12.

Commerce expressly limited the issue it was addressing in making that clarification to the question it understood to be before it at that point: "that rims and discs from China that have been further processed in a third country into finished steel wheels be included within scope." *Id.* Therefore, Commerce clarified the coverage of the scope by adding to the scope the language:

> The scope includes rims and discs that have been further processed in a third country, <u>including, but not limited to</u>, the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*See Certain Steel Wheels From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098, 24,100 (May 24, 2019). This clarifying language was explicit that the scope did cover Chinese rims and discs that had been processed in a third country before importation to the United States. It was also explicit that the coverage was *wider than and not limited to* that stated example of welding and painting of a rim and a disc form China.

As the Federal Circuit has explained, clarification of scope language does "not change the

---

[1] Citations to documents on the public administrative record are denoted as "P.R." in this brief.

[2] As noted in Plaintiff's brief, Commerce issued the same clarification in both the AD and CVD investigations. *See* Pl.'s Br. at 6 n.1.

scope of the order or alter its express terms." *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1351 (Fed. Cir. 2012) (emphasis added). Thus, Commerce's clarification did not change the products covered by the scope, but instead only provided insight into what some of those covered products were. So, as Commerce there stated, the scope of the Order before and after the clarification covered "steel wheels, discs, and rims from China."

By clarifying that the scope of the Orders did in fact cover wheels finished in a third country from "rims and discs from China," Commerce cannot be understood as stating in any way that other types of third-country finishing of Chinese rims and/or discs were not covered. Commerce was explicit on that point, stating that the scope "includ{ed}, but {was} not limited to" merchandise produced through that particular series of manufacturing steps, but included "any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China." "Any other" cannot mean "no other."

Plaintiff and Plaintiff-Intervenor focus singularly on the wording that Commerce used to describe the merchandise that the agency at that point was stating was covered, arguing that Commerce thereby limited the entire scope to only "rims and discs" that were "from China." *See* Pl.'s Br. at 17-19; Pl.-Intervenor's Br. at 12. But they ignore that the terms they spotlight come only *after* the unambiguous statement that the coverage of third-country processing is "including, but not limited to" that merchandise given as an example. Commerce's clear language was that the "rim and disc" "from China" wheel was certainly covered, not that any other product was not covered.

As this Court has repeatedly held, interpretations of the plain language of Commerce's scope must look at *all* the language in the scope, and cannot interpret any terms in the scope to be "meaningless and 'mere surplusage.'" *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d

7

1263, 1275 (Ct. Int'l Trade 2023) (quoting *Polites v. United States*, 35 C.I.T. 312, 317 (2011));
*see also, e.g., Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1190 (Ct. Int'l
Trade 2004) (rejecting an interpretation of a scope that would render some terms as "non-
essential language"); *Trade Assocs. Grp., Ltd. v. United States*, 961 F. Supp. 2d 1306, 1313 (Ct.
Int'l Trade 2014) (rejecting a scope interpretation where one "sentence is rendered meaningless
and superfluous as it would do nothing to define the scope"); *Perfectus Aluminum, Inc. v. United
States*, 391 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir.
2020) (rejecting a reading of scope language that would require "reading out {a} term from the
relevant scope language"); *Vietnam Finewood Co. Ltd. v. United States*, 633 F. Supp. 3d 1243,
1255 (Ct. Int'l Trade 2023) (rejecting an interpretation of scope language that "would render the
phrase 'as described below' in the first sentence {of the scope} superfluous").

    In asserting that the plain language of the scope is unambiguously limited only to wheels
that contain both rims and discs from China, Plaintiff and Plaintiff-Intervenor stridently ignore
that the plain language of the scope *explicitly* states that coverage is *not* limited to the example
provided. The language that the scope "includ{es}, but {is} not limited to" "rims and discs from
China" processed in a certain way in a third country is not only key to understanding the context
of the phrase that Plaintiff and Plaintiff-Intervenor focus on, but is itself the ambiguity that
Commerce sought to clarify in its scope ruling. The scope is explicitly not limited to "the
welding and painting of rims and discs from China to form a steel wheel," but applies broadly to
"any other processing {of rims and discs} that would not otherwise remove the merchandise
from the scope of the investigations if performed in China." That language leaves open the
question that Commerce properly considered when it was eventually placed before the agency:
what other forms of "processing" also meet this requirement?

Moreover, as well as ignoring that the plain language of the scope explicitly is *not* limited to any specific types of third-country processing of "rims and discs from China to form a steel wheel," Plaintiff's and Plaintiff-Intervenor's interpretation of the steel wheels that contain *both* rims and discs from China is overly narrow. Plaintiff argues that "and" can only be read in every instance in the scope language to mean that *both* the rim and the disc must be included together. *See* Pl.'s Br. at 17. But as noted in Defendant's brief, this Court has recognized that "and" is not always used in a conjunctive sense. Def.'s Br. at 12, n. 2; *see, e.g., Cormorant Shipholding Corp. v. United States*, 617 F.Supp.2d 1270, 1279 (Ct. Int'l Trade 2009). More broadly, the U.S. Supreme Court has recognized that "and" can be read disjunctively as far back as 1865 and as recently as 2024. *See United States v. Fisk*, 70 U.S. 445, 447 (1865) (stating that "courts are often compelled to construe '*or*' as meaning '*and*,' and again '*and*' as meaning '*or*'") (emphasis in original); *see also Pulsifer v. United States*, 144 S. Ct. 718, 735 (2024) (recognizing that "and" is "context-dependent" and can be read disjunctively). As other courts have explained, "the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings. Nor has the law looked upon it as such." *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958).

The statement that "rims and discs" are covered is not the same as stating that "*only* rims and discs *together*" are covered. The plain language of the scope includes only the first statement, not the second. Nothing in the plain language of the scope indicates that Commerce intended this "rims and discs" to be read only conjunctively. Here, "and" means that both items are equally covered under the scope, not that one is not covered without the other. Indeed, the claim that "and" was used in only the conjunctive sense in the scope language cannot be correct, as it would lead to clearly ludicrous results. As noted above, the first line of the scope is that

9

"wheels, discs, *and* rims" are covered. If "and" can only be conjunctive, then this statement would mean that the only merchandise that would be covered by the scope would be where there is a wheel *plus* another disc *plus* another rim, a truly curious product. "And" was clearly used in the scope to mean that wheels and rims and disc are all covered individually, not jointly. Thus, there is nothing illogical in Commerce's conclusion that rims and discs were also covered individually by the scope and in the clarification.

Additionally, while both Plaintiff and Plaintiff-Intervenor characterize Commerce's use of "from China" as a "qualifier" to the phrase "rims and discs" as plain language indicating that a finished steel wheel assembled in a third country must include *both* Chinese-origin rims and discs to remain within the scope of the Orders, they still ignore that this example is itself qualified by the preceding phrase "including, but not limited to." Pl.'s Br. at 19-20; Pl.-Intervenor's Br. at 6. The phrase "the welding and painting of rims and discs from China" was provided as an explicitly non-exhaustive example of third-country assembly that remains within the scope of the Orders, but the coverage of the scope was unambiguously *not* limited to wheels with both, and only both, Chinese-origin rims *and* discs. Commerce was clear that there are other products, including other products that went through some type of third-country processing, that are also covered.

Moreover, it is neither telling nor even surprising that Commerce would not attempt to list all types of merchandise that were intended to be covered under the scope of the Orders. To the contrary, it *is* expected that Commerce will need to continue to deal with questions of scope after an order has issued. The statute directs Commerce to provide as the scope of an AD or CVD order, "a description of the subject merchandise, in such detail as the administering authority deems necessary." 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2). Because the scope is set out

only in the detail necessary at the time, it *is* expected that Commerce will return to the language

and provide further interpretation as additional questions of scope coverage arise: "Issues arise

regarding whether a product falls within the scope of an ADD or CVD order, in part because

federal regulations require Commerce to write the descriptions in 'general terms.'" *Bell Supply*

*Co., LLC v. United States*, 393 F. Supp. 3d 1229, 1236–37 (Ct. Int'l Trade 2019) ("*Bell Supply*

*VI*"). That is what Commerce did here: return to a question of scope that had not been resolved

prior to the Orders and, as discussed below, properly apply the analytic framework that has been

approved by the Federal Circuit for Commerce to apply in exactly the type of situation

Commerce faced here.

Plaintiff argues that Commerce "did not state – or even suggest – that it was deferring the

question" it did not address in the scope clarification. Pl.'s Br. at 21-22. But Plaintiff points to no

authority that even suggests that Commerce must list all scope questions it is not answering at

the time it makes an AD/CVD order and state that it is deferring those questions to later. Instead,

as this Court recognized in *Bell Supply VI*, Commerce properly addresses questions of scope as

they arise. Commerce properly did so here.

Plaintiff also attempts to make much with Commerce's "agreement" with Zhejiang Jingu

(Plaintiff's Chinese parent) in the clarification. Plaintiff claims that Commerce "agreed" at that

time that the scope only covered wheels where both the rim and the disc were made in China.

Pl.'s Br. at 20-22; *see also* Pl.-Intervenor's Br. at 23-24. Yet nowhere in Commerce's statements

at that time is found any agreement by the agency that the scope was limited only to wheels

made from both a Chinese rim and a Chinese disc. What the agency *did* say was that it agreed

that the proposed language of the clarification needed to be modified based on what Commerce

understood the question before it at that time to be, and so it added the term "from China" to the

non-exhaustive example provided in the clarification language. *Final Inv. Memo*. (P.R. 1) at 12. Nowhere in that memorandum does Commerce suggest that Commerce's agreement went to anything else, particularly to other questions it was not then addressing regarding "rim or disc" wheels. Commerce agreed with what it stated it agreed with, nothing more.

In sum, the reading of the scope language relied upon by Plaintiff and Plaintiff-Intervenor cannot be accepted without impermissibly reading out of the scope express terms that state plainly that the coverage is not limited as Plaintiff and Plaintiff-Intervenor claim. That language cannot be excused as mere surplusage, and Plaintiff's and Plaintiff-Intervenor's arguments cannot be accepted without converting it into nothing more than meaningless, surplus language. Those arguments must therefore be rejected. Further, the claim that Commerce "agreed" that this language was mere surplusage finds no support in Commerce's actual statements, and the claim that Commerce "agreed" from the time of the Orders that part of the scope was already meaningless surplusage cannot be accepted without changing the plain language of the scope from the expressed "not limited to" to the entirely different "limited only to." As Plaintiff and Plaintiff-Intervenor agree, the plain language used in the scope cannot be changed by later interpretation. *See* Pl.'s Br. at 16, Pl.-Intervenor's Br. at 12, 21. Yet that is exactly what they ask this Court to do by interpreting the scope contrary to its plain terms.

Because the scope language of these Orders was not limited as Plaintiff and Plaintiff-Intervenor claim, Commerce properly addressed this question when it was presented to agency. *See Final Scope Ruling* (P.R. 79) at 8-10. Based on the facts before it, this Court must affirm Commerce's determination that the scope was not settled as to the question of "rim *or* disc" wheels, and so Commerce properly used its authority to address that ambiguity in the scope inquiry being challenged here.

II.     **Commerce's scope ruling and application of its substantial transformation analysis is supported by substantial evidence and in accordance with law**

   a.   **Commerce applied the correct substantial transformation analysis, as has been affirmed by the Federal Circuit**

Turning to Commerce's application of its substantial transformation test, in their opening briefs, Plaintiff and Plaintiff-Intervenor do not address Commerce's findings under the majority of factors of that analysis at all (including the class or kind of merchandise, the cost of production/value added, and the level of investment factors), or to the totality of the weight of all five factors. *See Final Scope Ruling* (P.R. 79) at 16-18, 23-25. By not raising any challenges to those points in their opening briefs, Plaintiff and Plaintiff-Intervenor have thereby waived any challenge to Commerce's determination on these points. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

Instead, the major part of Plaintiff's and Plaintiff-Intervenor's attacks on Commerce's analysis address a matter that is entirely irrelevant. Plaintiff and Plaintiff-Intervenor fixate on a passing statement in a Federal Circuit determination where, quoting from another decision, a substantial transformation analysis is described as determining if the product has acquired a "'new name, character and use.'" *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) ("*Bell Supply IV*") (*quoting Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)). Plaintiff and Plaintiff-Intervenor argue that the "new name, character and use" test is the "proper legal standard" and "fundamental question" for Commerce's substantial transformation analysis. Pl.'s Br. at 23; *see also* Pl.-Intervenor's Br. at 24.

Plaintiff and Plaintiff-Intervenor misread *Bell Supply IV*, and on this point again they improperly seek to inflate a statement they entirely divorce from its context into somehow controlling the entire question. The Federal Circuit did not hold that Commerce's substantial

transformation analysis had to be focused on the "new name, character and use" as the

fundamental question or legal standard, or indeed at all. As pointed out by Defendant (*see* Def.'s

Br. at 19), following the Federal Circuit's decision, this Court addressed this issue specifically

and explained that the mention of a "new name, character and use" in *Bell Supply IV* was only

dicta from the appeals court and was in no way the standard that the Federal Circuit, this Court,

or Commerce applies in looking at substantial transformation:

> Although the Court of Appeals quotes *Bestfoods* to invoke the
> name, character or use test, *Bestfoods* involved a North American
> Free Trade Agreement country of origin determination applying
> statutory tariff-shift rules as opposed to Gibson-Thomsen's "name,
> character and use" test, which evolved in Customs law.
>
>             ….
>
> In *Bell Supply IV*, <u>although the Court of Appeals speaks of the
> name, character or use test, it does not invoke any of the factors
> used in Customs cases and specifically states the factors
> Commerce considers to determine whether there has been a
> substantial transformation</u>. *See Bell Supply IV*, 888 F.3d at 1228–
> 29. Specifically, these factors are "(1) the class or kind of
> merchandise; (2) the nature and sophistication of processing in the
> country of exportation; (3) the product properties, essential
> component of the merchandise, and intended end-use; (4) the cost
> of production/value added; and (5) level of investment." Id.

*Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1288 n.6 (Ct. Int'l Trade 2018)

(emphasis added) ("*Bell Supply V*").

Plaintiff's and Plaintiff-Intervenor's attempt to raise the Federal Circuit's passing dicta to

the "central question" for Commerce's analysis is entirely inconsistent the Federal Circuit's

actual decision in *Bell Supply*, which (as this Court then explained) did not look at all to whether

Commerce must address the "name, character and use" but instead unambiguously recognized

that

> {t}o determine whether there has been a substantial
> transformation, <u>Commerce</u> looks to factors such as (1) the class or

14

> kind of merchandise; (2) the nature and sophistication of
> processing in the country of exportation; (3) the product properties,
> essential component of the merchandise, and intended end-use; (4)
> the cost of production/value added; and (5) level of investment.

*Bell Supply IV* at 1228-29 (emphasis added). In other words, even *Bell Supply IV*—the case that

Plaintiff and Plaintiff-Intervenor rely on— expressly recognized that the core of Commerce's

substantial transformation analysis is its consideration of the five enumerated factors, not "name,

character and use."

Thus, Plaintiff and Plaintiff-Intervenor erroneously conflate the "name, character, and

use" test that the U.S. Customs and Border Protection ("Customs") agency applies for Customs'

own, separate substantial transformation analysis for import classifications with the test that

Commerce uses to determine whether a product has been substantially transformed so that it is

within or outside of the scope of AD/CVD orders. Only that latter test as applied by Commerce

is at issue here. The "name, character and use" test is not the test that Commerce applies and is

not the analysis the Federal Circuit nor this Court has ever directed Commerce to apply.

Commerce therefore acted in accordance with the standard recognized by both this Court and the

Federal Circuit by considering these five factors. *See Final Scope Ruling* (P.R. 79) at 5.

Plaintiff and Plaintiff-Intervenor also claim that Commerce itself stated that the "name,

character and use" was the applicable test in its scope determination here, and argue that this

Court must hold Commerce to that choice. *See* Pl.'s Br. at 24-25; Pl.-Intervenor's Br. at 14. The

problem with that claim is exactly the same as with Plaintiff's and Plaintiff-Intervenor's attempts

to overinflate the dicta in *Bell Supply IV*: the phrase was only mentioned by Commerce, not held

to be the applicable test. Commerce did reference "a new name, character, and use" to describe

the question its substantial transformation analysis sought to answer. But Commerce was *specific*

that its substantial transformation analysis was based on the *five* factor analysis, the analysis that

15

was recognized by the Federal Circuit in *Bell Supply IV* and this Court in *Bell Supply V*. *See Final Scope Ruling* (P.R. 79) at 5. Indeed, Plaintiff quotes in its brief where Commerce directly stated that its substantial transformation analysis did not apply a "name, characters and use" test, contradicting its own claims that Commerce stated the "name, character and use" test applied. Plaintiff simply argues that Commerce could not decline to apply that test, based on Plaintiff's reading of *Bell Supply IV*. *See* Pl.'s Br. at 24 (quoting from *Final Scope Ruling* (P.R. 79) at 18). As Plaintiff's reading of *Bell Supply IV* fails, Plaintiff's claim that Commerce must apply that reading must also fail.

Nowhere did the Federal Circuit nor Commerce state that Commerce must look at the "name, character and use" as the test it applies. Instead, Commerce did exactly what the Federal Circuit and this Court have said Commerce should do: to look at the five factors of *Commerce's* substantial transformation analysis to determine if the requisite level of transformation did or did not occur. Plaintiff's and Plaintiff-Intervenor's claims Commerce was required to apply some other test are entirely without merit.

### b. Commerce's substantial transformation determination is supported by substantial evidence

As noted above, Plaintiff and Plaintiff-Intervenor fail to address the majority of Commerce's analysis under that properly applied substantial transformation test. Indeed, Plaintiff only attacks Commerce's analysis on one point under one of Commerce's five factors, regarding essential characteristics under the "the product properties, essential component of the merchandise, and intended end-use" factor. *See* Pl.'s Br. at 26-27. Plaintiff-Intervenor attacks only points under Commerce's analysis of essential characteristics and the sophistication of the processing. *See* Pl.-Intervenor's Br. at 15-22.

Absent from Plaintiff's and Plaintiff-Intervenor's claims is any recognition that the

16

outcome of Commerce's substantial transformation analysis is not reliant on any single point, but on the overall weight of all the factors. As this Court explained when it addressed Commerce's five-factor substantial transformation test, "Commerce considers the totality of the circumstances, weighing five factors in particular." *Bell Supply VI*, 393 F. Supp. 3d at 1237.

Commerce's analysis does not require that each individual factor be met, or not met, to any particular degree, but looks at the weight of the five factors to determine if the overall weight of all five directs a finding of substantial transformation or not. Indeed, even if one or more of those factors individually weigh against finding substantial transformation has occurred, Commerce may properly find that the greater weight from other factors still directs an affirmative decision overall, or vice versa. For example, in *Bell Supply*, even though Commerce had recognized that certain of the five factors could weigh towards a finding of substantial transformation, this Court affirmed Commerce's ultimate determination that substantial transformation had not occurred: "when examined in light of Commerce's findings with respect to the other factors, Commerce's totality-of-the-circumstances determination is supported by substantial evidence." *Id.*, 393 F. Supp. 3d*. at 1244. Thus, the proper question was if "on balance Commerce's totality-of-the-circumstances determination" on the overall weight of all five factors was correct, not just if any one of the factors weighed against that outcome. *Id.*

Thus, even if Plaintiff and Plaintiff-Intervenor raised legitimate arguments against Commerce's determination on some points under certain factors (which they do not), they entirely fail to claim (and so have waived any claim) that Commerce's determination that the totality of the factors directed a determination that substantial transformation of the Chinese goods did not occur was in any way improper or unsupported by substantial evidence. *See Final Scope Ruling* (P.R. 79) at 25. Plaintiff and Plaintiff-Intervenor cannot defeat Commerce's overall

determination by pecking at a few subordinate points that are not determinative of the final outcome. The proper question, as recognized by this Court in *Bell Supply*, is whether "on balance Commerce's totality-of-the-circumstances determination" is supported by substantial evidence, not only if one or two sub-elements of that totality can be questioned. *Bell Supply VI*, 393 F. Supp. 3d at 1244.

Moreover, Plaintiff's and Plaintiff-Intervenor's claims regarding the points they do attack fail to show that Commerce's holdings on those points was not supported by substantial evidence, as set out in Defendant's brief. *See* Def.'s Br. at 19-21. As the Federal Circuit has held, "…parties challenging Commerce's scope determinations under substantial evidence review confront a high barrier to reversal." *United Steel & Fasteners*, 947 F.3d at 798. Plaintiff's and Plaintiff-Intervenor's arguments fail to meet that bar, but instead amount to nothing more than disagreement with how Commerce weighted the evidence before it. Commerce explained why it found that the evidence regarding the essential characteristics and the nature of the processing weighed against a finding that the Chinese inputs had been substantially transformed. *See Final Scope Ruling* (P.R. 79) at 19-23. Plaintiff now argues that Commerce should be forced to change how it weighed that evidence based on Plaintiff's claims that Commerce did not apply the proper "name, character and use" test. *See* Pl.'s Br. at 26. But as Customs' test has never been held to be controlling of Commerce's analysis, Plaintiff's attempts to force Commerce to apply that other test directly or in how it weighed the evidence remain meritless.

Plaintiff-Intervenor also argues that cases such as *MacLean Power, L.L.C. v. United States*, 359 F. Supp. 3d 1367, 1371 (Ct. Int'l Trade 2019), require that Commerce look only at "the merchandise in the condition in which it is imported." Pl.-Intervenor's Br. at 15-16. Plaintiff-Intervenor argues that Commerce therefore could here look only at the characteristics of

the finished wheel, not the wheel components. *Id.* at 17. Plaintiff-Intervenor's argument lacks any logic or merit.

Cases such as *MacLean Power* did not consider Commerce's application of its substantial transformation test in any way. Instead, they examined Commerce's application of the scope language to an entered product. For example, the decision in *MacLean Power* examined Commerce's determination that the scope of an antidumping duty order on certain washers applied to an imported "pole line hardware" product which contained such washers as one part incorporated into the imported product. *MacLean Power*, 359 F. Supp. 3d at 1371-72. The Court noted that the scope of that order "makes no mention of the importation of {the washers} as assembled as a component of a larger product" and that Commerce had failed to analyze whether the washers had become an inseparable part of that larger product. *Id.* Nowhere in that case was the issue of the origin of the product analyzed by the Court nor by Commerce.

And as the Federal Circuit has held:

> Commerce is entitled to use the substantial transformation analysis to determine whether an imported article is covered by AD or CVD orders in the first instance. If the article originates from a country identified in the order, then Commerce need not go any further.

*Bell Supply IV*, 888 F.3d at 1230. Plaintiff-Intervenor does not seem to be challenging that the wheel as entered into the United States would be subject to the Orders if the country of origin of that wheel is China, they only disagree with Commerce's determination of that origin. So there is no question of the type addressed in *MacLean Power*. As directly stated by the Federal Circuit, Commerce is entitled to make that origin determination in the first place using its substantial transformation analysis.

In order to determine if a transformation has been substantial, Commerce must be able to address the transformation. To argue that Commerce cannot examine what was transformed or

how, but must only look at the finished product post-transformation, is farcical. If Commerce is entitled to use its substantial transformation analysis to answer questions of origin, as the Federal Circuit has indeed held, then Commerce is entitled to examine that transformation, not only the post-transformation product. Plaintiff-Intervenor's reliance on cases not looking at a determination of the origin of the product or the substantial transformation test at all entirely misses the mark.

Plaintiff-Intervenor also claims that Commerce "failed to explain" why design and engineering steps were relevant to Commerce's analysis given that what Plaintiff-Intervenor argues is the rule dictates that the focus of the substantial transformation test is "the 'manufacturing or processing steps.'" Pl.-Intervenor's Br. at 20 (*quoting Bell Supply IV*, 888 F.3d at 1228).

Not only is Plaintiff-Intervenor's argument that Commerce should look at the processing steps entirely inconsistent with Plaintiff-Intervenor's prior argument that Commerce can only examine the finished product, Plaintiff-Intervenor's claims that Commerce failed to address this point is simply not true. Commerce did so, expressly responding in its decision memorandum to ZC Rubber's argument that engineering steps were irrelevant to the transformation analysis. There, Commerce noted that the CIT had held that engineering is "'a first step in production,'" and so was relevant to examining what production steps took place in which country and the relative sophistication of those steps. *Final Scope Ruling* (P.R. 79) at 21 (quoting *Smith Corona Corp. v. United States*, 811 F. Supp. 692, 695-696 (Ct. Int'l Trade 1993)). Because the engineering is the first step in production, and the step on which all subsequent production steps are dependent, Commerce properly included that step among the production steps it examined in its analysis and explained why.

In sum, Plaintiff's and Plaintiff-Intervenor's attacks on the evidence supporting Commerce's determination are based mainly on their attempts to apply irrelevant standards to Commerce's analysis. Their reliance on passing statements by the courts or the agency fail to engage with the context of those statements or the fact that in each case the five-factor analysis that Commerce applied here was stated to be the proper analysis to apply. Commerce properly supported its determination here by looking at the totality of the circumstances under the five factors relevant to its analysis. Plaintiff and Plaintiff-Intervenor fail to support their arguments with any such overall consideration.

## III.    Commerce's application of AD/CVD duties to the entire imported wheel is supported by substantial evidence and in accordance with law

Plaintiff and Plaintiff-Intervenor also argue that, by finding a steel wheel assembled in Thailand using a Chinese-origin part to be within the scope of the Orders, "Commerce impermissibly expanded the scope contrary to its terms." Pl.'s Br. at 28; *see also* Pl.-Intervenor's Br. at 21. To the contrary, the wheels assembled in Thailand using discs from China are, as Defendant states, "the exact type of merchandise contemplated by the scope." Def. Br. at 22.

As explained in Defendant's brief, none of the cases to which Plaintiff and Plaintiff-Intervenor cite support their contention that Commerce has exceeded its scope or that AD/CVD duties should not apply to the entire wheel. *See* Def.'s Br. at 23-28. To the contrary, precedent confirms that Commerce's determination is to the origin of the imported article as a whole, not separately to each of what were only previously separate components. As the Federal Circuit has explained, "{b}ecause a single article can be assembled from various components and undergo multiple finishing steps, Commerce must have some way to determine the country of origin {of that article} during scope inquiries." *Bell Supply IV*, 888 F.3d at 1229 (emphasis added). Thus, Commerce applies its substantial transformation test as "a yardstick for determining whether the

processes performed on merchandise in a country are of such significance as to require that the resulting merchandise be considered the product of the country in which the transformation occurred." *Id.* (quoting *E.I. Du Pont de Nemours & Co. v. United States,* 22 C.I.T. 370, 374 (1998) (emphasis added)). Thus, the Federal Circuit held, a product that is finished in Indonesia may still be "considered 'from China.'" *Id.* Missing from the Federal Circuit's instruction is any suggestion that Commerce is limited to only considering the inputs from China as originating there and must treat the other "various components" entering the assembly process as originating in Indonesia. Instead, as the court pointed out, the determination of what country is to be considered the origin applied to "the resulting merchandise," as "a single article." *Id.*

Therefore, as the Federal Circuit has held, "Commerce is entitled to use the substantial transformation analysis to determine whether an imported article is covered by AD or CVD orders." *Bell Supply IV*, 888 F.3d at 1230 (emphasis added). The determination of origin made through Commerce's substantial transformation analysis does not apply to only certain portions of the finished product, but to the article *as a whole*. Here, the article imported was a finished wheel, and so Commerce properly applied its analysis, and the resulting scope determination, to that complete article. *See Final Scope Ruling* (P.R. 79) at 32-33.

As Defendant correctly points out in its brief, Commerce's substantial transformation analysis can informatively be contrasted to Commerce's mixed media practice. *See* Def.'s Br. at 28. Commerce may apply AD/CVD orders to only the in-scope portion of a "mixed media" product, but such "mixed media" are only "packaged and imported together" in a "mere aggregation of separate items." *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1298 (Fed. Cir. 2013). The products packaged together do "not interact in any way or otherwise represent a unique product." *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350,

1356-57 (Fed. Cir. 2010). The component parts of a wheel, in complete contrast, are not a "mere aggregation" of parts that do not "interact in any way": they are welded together to form a single end product that is then further finished. Commerce therefore correctly considered the full, unitary product as imported into the United States as having a country of origin of China through its substantial transformation analysis, exactly as the Federal Circuit has instructed. This Court should sustain Commerce's determination on this point as well.

IV.    **Commerce lawfully declined to direct U.S. Customs and Border Protection to lift the suspension of liquidation of imports entered before the date of initiation of the scope inquiry**

Finally, Plaintiff and Plaintiff-Intervenor claim that they were not provided "fair warning" that subject steel wheels assembled in Thailand from Chinese-origin discs could be subject to AD/CVD liability until the initiation of the scope inquiry. Pl.'s Br. at 30; Pl.-Intervenor's Br. at 22. This argument ignores the fact that, in the underlying investigation, Commerce clearly stated that "the decision to conduct {substantial transformation} analysis is contingent upon the facts and circumstances of a particular case." *Final Scope Ruling* (P.R. 79) at 27-28. As Defendant points out in its brief, this statement warned "any reasonably informed importer" that Commerce would consider questions of whether specific products fell within the scope of subject merchandise on a case-by-case basis. Def.'s Br. at 29. As Defendant also details, Plaintiff and Plaintiff-Intervenor rely on various court decisions that are not applicable to the situation here and so do not direct that Commerce's actions here were in any way "unfair." *See id.* at 30-34.

Plaintiff's and Plaintiff-Intervenor's claims that parties were denied fair warning are derivative from their claims that Commerce said the opposite of what Commerce in fact said during the original investigations regarding whether the scope covered more than just the stated

example. As discussed above, those claims cannot be harmonized with the actual language of the scope nor what Commerce said in that decision. Commerce specifically limited that clarification to one type of merchandise and did not address further questions it did not believe were before it at that point. The scope specifically included "wheels, discs, and rims" at all times. So any reasonable importer would have been warned that Chinese discs or Chinese rims that had not been specifically addressed by Commerce could be covered by a scope that explicitly stated that it covered third-country finishing of in-scope merchandise "including, but not limited to" given examples—including those further finished in a third-country in other ways. As also discussed above, the claims that Commerce "agreed" with an exporter on other points than what Commerce stated it agreed with likewise find no support on the record and must likewise be rejected.

Having properly applied its five-factor substantial transformation analysis and finding that the totality of those factors directed a determination that the in-scope Chinese components had not been substantially transformed, Commerce then properly applied its regulations in 19 CFR § 351.225(l) that govern the liquidation of entries following a scope determination. Final Scope Results at 27. As there explained by Commerce, section 225(l) sets out that Commerce will "continue suspension of liquidation if a final ruling finds the relevant products included within the scope." *Id.*; *see also* 19 CFR § 351.225(l)(3) (prior version[3]). This is what Commerce properly did here, ordering Customs to continue the suspension of liquidations that Customs,

---

[3] The prior version of 19 C.F.R. § 351.225 (which was revised in September 2021) applied to Commerce's determination here. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,300 (Dep't Commerce Sept. 20, 2021) (2021 amendments to section 225 applied to scope proceedings filed or initiated after November 4. 2021). Commerce received Asia Wheel's request for the instant scope ruling February 11, 2021. *See Request for Scope Ruling for Asia Wheel's Steel Truck Wheels* (Feb. 11, 2021) (P.R. 1) at 1.

under its own, independent authority, had already legally suspended. *See* Final Scope Results at 31.

As this Court has noted, "19 C.F.R. § 351.225(l) was promulgated and published in the Federal Register in 1997, and {parties} are charged with knowledge of the regulation as of that date." *Target Corp. v. United States*, 33 C.I.T. 760, 779-80 (2009), *aff'd*, 609 F.3d 1352 (Fed. Cir. 2010). In *Target*, this Court rejected the argument that importers would not have been fairly informed that certain products could be found by Commerce to be in-scope for the relevant orders (in that case, through a circumvention inquiry, which the prior version of section 225(l) also applied to), because importers were "nevertheless always aware of the legal consequences of an affirmative circumvention determination (and the operation of 19 C.F.R. § 351.225(l))." *Id.* at 779. Because "Commerce simply applied the regulation to the entries that were the subject of the proceeding, consistent with the regulation's requirements{, t}here is, therefore, no impermissible retroactive application of the law operating in this case." *Id.* at 780. Likewise, the Federal Circuit has stated that the terms of § 351.225(l) are "clear and unambiguous;" and has rejected "{a}ny other result {that} would also be inconsistent with 19 C.F.R. § 351.225(l)." *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1316, 1318 (Fed. Cir. 2020).

Here as well, Commerce properly applied section 225(l) and so, as in prior cases, other results—as are argued for by Plaintiff and Plaintiff-Intervenor—should be rejected as incompatible with the clear and unambiguous terms of section 225(l).

Plaintiff argues that the Federal Circuit's decision in *Sunpreme* does not support Commerce's application of section 225(l) except where, Plaintiff claims, Customs has made a "determination" that the merchandise was in-scope. *See* Pl.'s Br. at 28. Again, Plaintiff illegitimately attempts to raise a passing comment by the court to binding precedent. While the

Federal Circuit did note in *Sunpreme* that Customs in that case had made its own ministerial determination that the goods in question were in-scope, entirely absent from the Federal Circuit's decision is any reliance on that fact as essential to the outcome. *See Sunpreme*, 946 F.3d at 1317-18, 1321. Instead, the court straightforwardly explained that the proper question was whether Customs had properly suspended liquidation of entries, and, if so, then "subsection {225}(l)(3) instead *dictates* that the existing suspension 'will continue.'" *Id.* at 1319 (emphasis added).

Here, as Customs correctly explained in its determination memo, Customs had already suspended liquidation of Asia Wheel's shipments under Customs' own wholly independent authority to investigate evasion of AD/CVD orders under the Enforce and Protect Act ("EAPA") (19 U.S.C. § 1517(e)). *Final Scope Ruling* (P.R. 79) at 30. 19 U.S.C. § 1517(e)(1) *requires* that Customs suspend liquidation where it makes an affirmative interim EAPA determination, which is what Customs had done here. The standard for Customs to suspend liquidation under its EAPA authority is not a matter of it making a scope determination, but an entirely separate standard of Customs finding a reasonable suspicion of evasion. *See* 19 U.S.C. § 1517(e). And so, as set out by the Federal Circuit in *Sunpreme*, once Customs had suspended liquidation for the merchandise under its independent authority under the "reasonable suspicion" standard of 19 U.S.C. § 1517, section 225(l) gave Commerce no leeway to act in any way other than as Commerce did once it made an affirmative scope determination and so directed Customs to continue that suspension.

Plaintiff argues against Commerce's citation to this Court's direction in *Diamond Tools Tech.*, which held that Customs' authority to suspend liquidations is not bound by Commerce's separate authority to take the same action in different circumstances. *See* Pl.'s Br. at 38-39; *see also Final Scope Ruling* (P.R. 79) at 30 (citing to *Diamond Tools Tech. LLC v. United States*,

545 F. Supp. 3d 1324, 1344 (Ct. Int'l Trade 2021)). Asia Wheel argues that *Diamond Tools Tech.* is wholly inapplicable here as it "involved a challenge to CBP's EAPA authority directly," while Asia Wheel challenges Commerce's authority. Pl.'s Br. at 39. That argument entirely misses the point.

This Court explained in *Diamond Tools Tech.* that Commerce's determinations do not "diminish Customs' authority under the EAPA to apply Commerce's affirmative covered merchandise determination…." *Diamond Tools Tech.*, 545 F. Supp. 3d at 1351. The Court continued that allowing Commerce to dictate how Customs applies its statutory authority to conduct EAPA investigations would "contravene Congress' expressed intent for the statute…. Such an outcome would be contrary to the congressional intent underlying the EAPA statute and Customs' ability to exercise its statutory authority." *Id.*

Thus, the holding of *Diamond Tools Tech.* (whatever authority was challenged) is that Customs' independent EAPA authority allows Customs to determine when to start suspension of liquidation in an EAPA action. Commerce *cannot* order Customs on how to exercise that independent authority, which is what Asia Wheel and ZC Rubber seek to have Commerce directed to do here. *See* Pl.'s Br. at 39; Pl.-Intervenor's Br. at 24. Instead, where Customs has exercised its independent authority to suspend liquidation and then Commerce makes an affirmative scope determination, *Sunpreme* and 19 C.F.R. §351.225(l) direct that Commerce must continue that suspension. Commerce correctly did here and that action should be affirmed by this Court.

*     *     *     *

## CONCLUSION

For the reasons discussed above, and for the additional reasons set out in Defendant's brief, Defendant-Intervenor respectfully requests that this Court reject the arguments and claims made by Plaintiff and Plaintiff-Intervenor and sustain Commerce's scope determination on all points.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch

**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Accuride Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing response brief the word count limitations set forth in Paragraph 2(B)(1) of the Court's Standard Chambers Procedures. This response brief contains 8,396 words (including text, quotations, footnotes, headings, and attachments) according to the word count function of the word processing software used to prepare the brief

Respectfully submitted,
/s/ Nicholas J. Birch___
Nicholas J. Birch, Esq.
SCHAGRIN ASSOCIATES

Dated: May 14, 2024