**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| | |
|---|---|
| ASIA WHEEL CO., LTD., <br><br>                 Plaintiff, <br><br>      and <br><br> ZC RUBBER AMERICA INC., <br><br>                 Plaintiff-Intervenor, <br><br>      v. <br><br> UNITED STATES, <br><br>                 Defendant, <br><br>      and <br><br> ACCURIDE CORPORATION, <br><br>                 Defendant-Intervenor. | Consol. Court No. 23-00143 |

**PLAINTIFF'S REPLY BRIEF**

Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

June 18, 2024

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 1

    A.    The Government and Accuride Fail To Demonstrate that Commerce's Misinterpretation of the Scope Should Be Sustained ................................................2

        1.    The plain language of the scope does not include Chinese-origin discs that are welded in a third country with nonsubject rims to manufacture a finished truck wheel ................................................2

        2.    The record lacks substantial evidence for Commerce's claim that it deferred consideration of the "discs or rims" scope issue in the original AD/CVD investigations...................................................4

    B.    The Government and Accuride Fail To Demonstrate that Commerce's Flawed "Substantial Transformation" Determination Should Be Sustained ..........7

        1.    Commerce itself framed the "new name, character, and use" test as the underpinning for its "substantial transformation" analysis...................7

        2.    Commerce's analysis of the "essential component" factor illustrates its flawed approach and is unsupported by substantial evidence..............10

    C.    The Government and Accuride Fail To Demonstrate that Commerce Lawfully and Reasonably Determined that the Entire Finished Wheel Manufactured in Thailand Is Subject to the Scope of the *AD/CVD Orders* ..........13

    D.    The Government and Accuride Fail To Demonstrate that Commerce Lawfully Directed CBP To Continue To Suspend Liquidation of Imports Entered before Importers Had Adequate Notice of AD/CVD Liability ...............15

        1.    Possible scope coverage is not "adequate notice" ....................................16

        2.    Commerce, not CBP, has the ultimate authority to determine whether and when merchandise is subject to an AD/CVD order .............19

III.    CONCLUSION................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aspects Furniture Int'l Inc. v. United States,*
607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ........................................................20

*Bell Supply Co., LLC v. United States,*
348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ...........................................................8

*Bell Supply Co., LLC v. United States,*
888 F.3d 1222 (Fed. Cir. 2018)...........................................................................8, 9

*Bestfoods v. United States,*
165 F.3d 1371 (Fed. Cir. 1999)...............................................................................8

*Burlington Truck Lines, Inc. v. United States,*
371 U.S. 156 (1962).................................................................................................4

*Canadian Solar, Inc. v. United States,*
918 F.3d 909 (Fed. Cir. 2019)...............................................................................20

*Cormorant Shipbuilding Corp. v. United States,*
617 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ...........................................................4

*Diamond Tools Tech. LLC v. United States,*
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .........................................................21

*E.I. DuPont de Nemours & Co. v. United States,*
8 F. Supp. 2d 854 (Ct. Int'l Trade 1998) .................................................................9

*Eckstrom Indus., Inc. v. United States,*
254 F.3d 1068 (Fed. Cir. 2001).............................................................................13

*Katunich v. Donovan,*
599 F. Supp. 985 (Ct. Int'l Trade 1984) ..................................................................9

*Meridian Prods., LLC v. United States,*
851 F.3d 1375 (Fed. Cir. 2017)...........................................................................2, 7

*Mid Continent Nail Corp. v. United States,*
725 F.3d 1295 (Fed. Cir. 2013).............................................................................15

*NMB Sing. Ltd. v. United States,*
557 F.3d 1316 (Fed. Cir. 2009)...............................................................................9

AMERICAS 127233887

*Peacock v. Lubbock Compress Co.*,
252 F.2d 892 (5th Cir. 1958)........................................................................................4

*Peer Bearing Co.-Changshan v. United States*,
128 F. Supp. 3d 1286 (Ct. Int'l Trade 2015) ......................................................11

*Peer Bearing Co.-Changshan v. United States*,
914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) .................................................12, 14

*Pulsifer v. United States*,
39 F.4[th] 1018 (8th Cir. 2022),
*cert. granted*, 143 S. Ct. 978 (2023) .........................................................................4

*Sunpreme Inc. v. United States*,
946 F.3d 1300 (Fed. Cir. 2020)........................................................19, 21, 22

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
983 F.3d 487 (Fed. Cir. 2020)..................................................16, 17, 21, 22

*Trans Texas Tire, LLC v. United States*,
519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) .................................................16, 17

*Trans Texas Tire, LLC v. United States*,
519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021)………………………………………...16

*United States v. Fisk*,
70 U.S. 445 (1865)............................................................................................4

*Walgreen Co. of Deerfield, IL v. United States*,
620 F.3d 1350 (Fed. Cir. 2010)........................................................................15

## STATUTES AND REGULATIONS

19 U.S.C. § 1517(a)(3)............................................................................20, 21

19 U.S.C. § 1517(b)(4) ...................................................................................20

19 U.S.C. § 1517(b)(4)(A)..........................................................................20, 22

19 U.S.C. § 1517(b)(4)(A)(i) ..........................................................................20

19 U.S.C. § 1517(e) .........................................................................................18

19 C.F.R. § 351.225(k)(l)...................................................................................4

19 C.F.R. § 351.225(l) ...............................................................................21, 22

AMERICAS 127233887

**ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS**

*Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China*,
     84 Fed. Reg. 45952, 45954 (Dep't Commerce Sept. 3, 2019) ("*AD/CVD Orders*")
     ..................................................................................................................3, 13, 14, 19

*Certain Steel Wheels from the People's Republic of China*,
     84 Fed. Reg. 11746 (Dep't Commerce, Mar. 28, 2019) (final AD determ.),
     and accompanying Issues & Decision Memorandum...................................................... passim

AMERICAS 127233887

## I.     INTRODUCTION

On behalf of Plaintiff Asia Wheel Co., Ltd. ("Asia Wheel"), we hereby reply to Defendant United States' Response Brief (ECF No. 42) ("Gov't. Response Br.") and Defendant-Intervenor Accuride Corporation's ("Accuride" or "Petitioner") Response Brief (ECF No. 43) ("Accuride Response Br.").[1]

In attempting to defend the U.S. Department of Commerce's ("Commerce") *Final Scope Ruling*, Defendant (the "Government") and Accuride merely reiterate flawed conclusions by Commerce that are either impermissible under the law or unsupported by the record evidence; misconstrue case precedent; misstate key facts; and mischaracterize or avoid confronting Plaintiff's arguments.  For the reasons discussed in its initial brief and further below, Plaintiff respectfully requests that the Court hold that Commerce's *Final Scope Ruling* is unsupported by substantial evidence and otherwise not in accordance with law and enter judgment in favor of Plaintiff.

## II.     ARGUMENT

As discussed below, the Government and Accuride fail to demonstrate that the following decisions by Commerce in the *Final Scope Ruling* should be sustained as supported by substantial evidence and/or in accordance with law:  (1) Commerce's misinterpretation of the plain language of the scope of the *AD/CVD Orders*, as well as its own scope determination in the original antidumping duty ("AD") and countervailing duty ("CVD") investigations, both of which are unequivocal that wheels manufactured in a third country with only Chinese-origin discs *or* rims (not both) are outside the scope; (2) Commerce's flawed determination that Chinese-origin discs

---

[1] In this Reply Brief, we continue to refer to record documents using the abbreviated names set forth in Plaintiff's Memorandum of Points and Authorities accompanying its Motion for Judgment on the Agency Record (ECF No. 30) ("Pl. Br.").

were not substantially transformed in Thailand after being welded with nonsubject rims (which are essential components of a wheel) and painted to form a truck wheel (*i.e.*, a new product having a new name, character, and use); (3) Commerce's impermissible and illogical determination that the entire truck wheel imported from Thailand is subject to the *AD/CVD Orders*, when only Chinese-origin discs were imported into Thailand for the manufacture of the wheels; and (4) Commerce's unlawful continuation of U.S. Customs and Border Protection's ("CBP") prior suspension of liquidation of imports entered before importers had adequate notice of AD/CVD liability.

### A.   The Government and Accuride Fail To Demonstrate that Commerce's Misinterpretation of the Scope Should Be Sustained

Plaintiff demonstrated that the plain language of the scope of the *AD/CVD Orders* cannot reasonably be interpreted to include steel wheels manufactured in third countries using discs **or** rims from the People's Republic of China ("China").  *See* Pl. Br. at 16-22.  In response, the Government and Accuride, like Commerce below, misconstrue both the plain language of the scope and Commerce's interpretation of the scope in the original AD/CVD investigations, in which Commerce agreed with a Chinese respondent that the scope "should include further clarifying language" to implement Petitioners' request "that ***rims and discs <u>from China</u>*** that have been further processed in a third county into finished steel wheels be included within scope."  *Final AD IDM* at 12 (emphasis added).

### 1.   The plain language of the scope does <u>not</u> include Chinese-origin discs that are welded in a third country with nonsubject rims to manufacture a finished truck wheel

Interpretation of the plain language of the scope of an AD/CVD order is a legal question that the court reviews *de novo*.  *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017).  Here, the plain language of the scope of the *AD/CVD Orders* does not include wheels manufactured in third countries where only one of the two essential wheel components originates

AMERICAS 127233887

from China.  In arguing that the scope is ambiguous, the Government and Accuride misconstrue its terms, offering an interpretation of "and" that Commerce itself rejected in the *Final Scope Ruling*.

> The *AD/CVD Orders* state:
>
> The scope includes **rims and discs** that have been **further processed** in a third country, **_including, but not limited to_**, the welding and painting of **rims _and_ discs from China** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*Certain Steel Wheels from the People's Republic of China*, 84 Fed. Reg. 24098, 24100 (Dep't Commerce May 24, 2019) ("*AD/CVD Orders*") (emphases added).  The Government and Accuride assert that the "including, but not limited to" language indicates that the scope's reference to "rims and discs from China" is not exhaustive, such that Commerce reasonably concluded in the *Final Scope Ruling* that the scope is ambiguous with respect to truck wheels produced in third countries with rims *or* discs from China (but not both).  *See* Gov't. Response Br. at 11; Accuride Response Br. at 6-7.  According to the Government, "plain language does not address what varieties of processing may otherwise exclude a product from the scope."  Gov't. Response Br. at 11.

If, however, a wheel is manufactured in a third country with a Chinese-origin disc or rim (but not both), the Chinese-origin component is not merely "further processed" in a third country. With respect to the truck wheels at issue in this case, Asia Wheel does not merely "further process" Chinese-origin discs in Thailand.  Rather, Asia Wheel manufactures the rims, welds the Thai-origin rims to the Chinese-origin discs, and paints the wheels.  *See Asia Wheel Scope Ruling Request* at Exhibit 4.  While the *AD/CVD Orders* include Chinese-origin discs that are further processed in a third country and then shipped to the United States as further-processed discs, the plain language of the scope does ***not*** include Chinese-origin discs that are welded to nonsubject rims and painted to form a finished truck wheel in a third country.  Rather, the *AD/CVD Orders*

3

include wheels manufactured in third countries only when both the discs and the rims originate from China (*i.e.*, "the welding and painting of rims and discs from China to form a steel wheel"). In concluding otherwise, Commerce impermissibly interpreted the *AD/CVD Orders* contrary to their terms, such that its *Final Scope Ruling* is not in accordance with law.

Citing various cases, the Government and Accuride also claim that "and" does not necessarily have a conjunctive meaning, as if to suggest that "rims **and** discs from China" could be interpreted to mean "rims **or** discs from China." Gov't. Response Br. at 12 n.2 (citing *Cormorant Shipbuilding Corp. v. United States*, 617 F. Supp. 2d 1270, 1279 (Ct. Int'l Trade 2009); *Pulsifer v. United States*, 144 S. Ct. 718, 728 (2024)); Accuride Response Br. at 9-10 (citing *United States v. Fisk*, 70 U.S. 445, 447 (1865); *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958)). Even if "and" could somehow be interpreted to mean "or," this is irrelevant because Commerce did not take this position. Rather, as discussed further below, in the original AD/CVD investigations, Commerce agreed to modify the scope language to "explicitly require that both the rim **and** disc be produced in China for China to be considered the country of origin{}." *Final AD IDM* at 8 (emphasis added); *see also id.* at 12. The Court may only sustain Commerce's decision "on the same basis articulated . . . by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962).

2. **The record lacks substantial evidence for Commerce's claim that it deferred consideration of the "discs or rims" scope issue in the original AD/CVD investigations**

Commerce's scope determination in the original AD/CVD investigations – a consideration under 19 C.F.R. § 351.225(k)(l) – further demonstrates that both the discs and rims of the wheels must originate from China for steel wheels manufactured in third countries to fall within the scope of the *AD/CVD Orders*. In the *Final Scope Ruling*, however, Commerce unreasonably denied having confirmed in the investigations that wheels manufactured in third countries with only one

AMERICAS 127233887

wheel component from China are outside the scope. Attempting to defend Commerce's groundless reversal of its prior position, the Government and Accuride, like Commerce below, selectively rely on one isolated sentence taken out of context.

The Government wrongly asserts that Plaintiff "overstates Commerce's response to the petitioners' requests to modify the scope to include Chinese 'rims or discs' that have been further processed in a third country." Gov't. Response Br. at 14. In fact, Petitioners did not argue that the scope should include such wheels at all. Rather, Petitioners asked Commerce to "clarify the scope to include steel wheels processed in a third country using ***rims <u>and</u> discs from China***" based on its position that assembling and painting the rims and discs is insufficient to effect a substantial transformation. *See Final AD IDM* at 7-8 (emphasis added). Nowhere did Petitioners argue that the scope should be expanded to include truck wheels manufactured in third countries using rims ***or*** discs from China (not both).

The Government and Accuride also erroneously claim that Commerce "deferred decision" on the issue of "rims or discs" from China in the AD/CVD investigations. Gov't. Response Br. at 14; *see also* Accuride Response Br. at 11-12. To the contrary, Zhejiang Jingu Company Limited ("Zhejiang Jingu"), a Chinese respondent, argued that Petitioners' proposed scope language was "overly broad and vague, potentially expanding the scope to include other merchandise that also originates in third countries (*e.g.*, the language does not explicitly require that ***both the rim <u>and</u> disc be produced in China*** for China to be consider the country of origin)." *Final AD IDM* at 7-8 (emphasis added). In other words, Zhejiang Jingu argued that, absent further modification, the scope could be interpreted to include steel wheels manufactured in third countries with Chinese-origin rims ***or*** discs (not both). In response, Commerce "agree{d} with Zhejiang Jingu that the

proposed scope amendment should include further clarifying language{,}" and added the qualifier "from China" to Petitioners' proposed third-country-processing language, as follows:

> The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims and discs from China*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*Id.* at 9 (emphasis added) & 12. Thus, contrary to the Government's and Accuride's argument, Commerce did not defer the question of "rims ***or*** discs from China." Commerce addressed the question and amended the scope language to clarify that "***rims and discs from China*** that have been further processed in a third country into finished steel wheels {are} included within scope." *Final AD IDM* at 12 (emphasis added).

Ignoring this context, the Government selectively relies on the following isolated line from Commerce's final scope determination in the investigations:

> While in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case.

*Final AD IDM* at 11; *see* Gov't. Response Br. at 14. Read in context, however, this statement cannot reasonably be interpreted to mean that steel wheels manufactured in a third country with discs ***or*** rims (but not both) from China are potentially within scope. Rather, in making this statement, Commerce was explaining its rationale for declining to conduct a substantial transformation analysis to determine the country of origin for steel wheels assembled and painted in third countries using ***Chinese-origin rims and discs***. *See Final AD IDM* at 7-8, 10-11. Furthermore, immediately after the sentence quoted by the Government, Commerce reiterated that "we find that we can properly frame the scope of the investigation and properly address issues concerning circumvention by incorporating the petitioners' proposed clarification of the scope, subject to the minor change" made in response to Zhejiang Jingu's comment. *Final AD IDM* at

AMERICAS 127233887

11.  Commerce did not state – or even suggest – that it was deferring the question of whether the *AD/CVD Orders* include truck wheels manufactured in third countries using rims *or* discs from China (but not both).

In conclusion, Commerce's scope determination in the original investigations confirms that the agency interpreted the plain language of the *AD/CVD Orders* to mean that third-country processing of a steel wheel must be of ***rims <u>and</u> discs produced in China*** for the imported wheel to be within scope.  Commerce's recharacterization of its earlier analysis in the *Final Scope Ruling* is unreasonable and unsupported by substantial evidence.  *See Meridian*, 851 F.3d at 1382 ("Commerce's analysis of {the § 351.225(k)(1)} sources against the product in question produces factual findings reviewed for substantial evidence.").

### B. The Government and Accuride Fail To Demonstrate that Commerce's Flawed "Substantial Transformation" Determination Should Be Sustained

Plaintiff demonstrated that, in analyzing "substantial transformation," Commerce disregarded the fundamental question of whether Asia Wheel's manufacturing operations in Thailand resulted in a product with a new name, character, and use, and nonsensically reasoned that a disc alone already exhibits the essential characteristics of a finished truck wheel.  *See* Pl. Br. at 23-27.  In response, the Government and Accuride dismiss the relevance of the "new name, character, and use test," overlooking that Commerce itself cited this test as the legal framework for its "substantial transformation" analysis.  The Government and Accuride also fail to defend Commerce's flawed logic that a disc is equivalent to a wheel.

### 1. Commerce itself framed the "new name, character, and use" test as the underpinning for its "substantial transformation" analysis

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has held that "{a} substantial transformation occurs where, 'as a result of manufacturing or processing steps . . . [,] the [product] loses its identity and is transformed into a new product having a new name, character

AMERICAS 127233887

and use." *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (quoting *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)).  Here, in finding the absence of a substantial transformation, Commerce ignored the fundamental question of whether the Chinese-origin disc became a "new product having a new name, character and use" after being transformed into a steel wheel in Thailand.  Consequently, Commerce's substantial transformation determination is not in accordance with law.

Attempting to defend Commerce's approach, the Government and Accuride assert that "'the new name, character, and use' standard is primarily used by CBP in its country-of-origin analysis" – not Commerce.  Gov't. Response Br. at 19 (citing *Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1287-88 n.6 (Ct. Int'l Trade 2018)); Accuride Response Br. at 13-15 (same).  The Government overlooks, however, that Commerce itself identified the "new name, character, and use" test as the underpinning for its "substantial transformation" analysis.  In the "Legal Framework" section of its final and preliminary scope rulings, Commerce stated:

> ***Commerce's*** substantial transformation analysis asks:
>
> (1) whether, as a result of the manufacturing or processing, the product loses its identity and is transformed into a new product having a new name, character, and use; and
>
> (2) whether through that transformation, the new article becomes a product of the country in which it was processed or manufactured.

*Final Scope Ruling* at 5 (emphasis added).  Commerce elaborated that it "***may*** examine a number of factors in conducting its substantial transformation analysis," listing the following five factors: (1) class or kind of merchandise; (2) essential component and end-use; (3) nature/sophistication of processing; (4) cost of production/value added; and (5) level of investment.  *Id.* (emphasis added).

Thus, as recognized by the Federal Circuit in *Bell Supply*, the fundamental question under Commerce's "substantial transformation" analysis is whether the manufacturing or processing

AMERICAS 127233887

results in a new product having a "new name, character, and use."  The purpose of the five factors is to inform Commerce's analysis of this question.  Contrary to the Government's contention, *see* Gov't. Response Br. at 19, the five factors do not "supplant" Commerce's obligation to address the fundamental question of new name, character, and use.  *See Bell Supply*, 888 F.3d at 1228 & 1230; *see also E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854, 859 (Ct. Int'l Trade 1998) ("Substantial transformation generally refers to a degree of processing resulting in a new and different article.").

   "Once Commerce establishes a course of action, . . . Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary . . . ." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009); *see also Katunich v. Donovan*, 599 F. Supp. 985, 986 (Ct. Int'l Trade 1984) ("It is a sound principle of administrative law than an administrative agency must either follow or adhere to existing policies and precedents or explain its noncompliance or deviation.").  Here, despite framing the central question as whether the third-country operations resulted in a new product with a "new name, character, and use," Commerce arbitrarily ignored that question in addressing whether a substantial transformation occurred.  Despite its detailed analysis of the five factors, Commerce failed to address whether the Chinese-origin disc became a new product in Thailand, having a new name, character, and use. Only by ducking the fundamental question was Commerce able to conclude that the Chinese-origin disc was not substantially transformed in Thailand into a finished truck wheel.[2]

---

[2] For its part, Accuride asserts that Commerce "only mentioned" the "name, character, and use" test – without citing it as "the applicable test."  Accuride Response Br. at 15.  That position, however, is impossible to reconcile with Commerce's explicit reference to the "name, character, and use" test as the legal framework for its substantial transformation analysis.  *See Final Scope Ruling* at 4-5.

AMERICAS 127233887

The Government and Accuride also mischaracterize Plaintiff's argument. The Government asserts that adopting the "new name, character, and use" test "as the 'sole basis of analysis would result in even minor finishing/assembly operations sufficient to determine country of origin and render the existing substantial transformation factors moot . . . .'" Gov't. Response Br. at 19 (quoting *Final Scope Ruling* at 18). This is not Plaintiff's argument. Rather, Plaintiff submits that, consistent with Commerce's own articulation of the "Legal Framework" for a "substantial transformation" analysis, the "new name, character, and use" test is the central question for Commerce to address, informed by its consideration of the five factors.

2.     **Commerce's analysis of the "essential component" factor illustrates its flawed approach and is unsupported by substantial evidence**

Plaintiff further demonstrated that Commerce's analysis of the "essential component" factor illustrates its failure to apply the correct legal standard for substantial transformation, and also is unsupported by substantial evidence. *See* Pl. Br. at 26-27. In response, the Government misconstrues precedent and misstates the facts, while both the Government and Accuride fail to address Plaintiff's principal argument concerning the lack of substantial evidence supporting Commerce's "essential component" analysis.

Applying the "new name, character, and use" framework, the fundamental question in this case is whether the essential qualities and function of the Chinese-origin disc differ from the essential qualities and function of the finished truck wheel manufactured in Thailand and imported into the United States. Contrary to this standard, Commerce found a lack of substantial transformation because the Chinese-origin discs continued to function as such after incorporation into the finished truck wheel, all but ignoring the product imported into the United States. *See Final Scope Ruling* at 20, 22 and 25. In response, the Government claims that this "Court rejected a similar argument in *Peer Bearing*, where it considered whether unfinished and finished parts

10

from China were substantially transformed into finished {tapered roller bearings} in Thailand." Gov't. Response Br. at 21 (citing *Peer Bearing Co.-Changshan v. United States*, 128 F. Supp. 3d 1286, 1303 (Ct. Int'l Trade 2015)).   *Peer Bearing*, however, **supports** Plaintiff's substantial transformation argument in this case.

*Peer Bearing* involved the AD order on tapered roller bearings ("TRB") from China.  *Peer Bearing*, 128 F. Supp. 3d at 1288.  In that case, all four parts of the TRB (*i.e.*, the cups, cones, rollers, and cages) were produced in China, but an affiliate in Thailand performed the finishing operations on the cups and cones, and "then assembled the finished cups and cones, together with finished rollers and cages that . . . had {been} manufactured in China and exported to Thailand, to produce the completed TRBs that were exported to the United States."  *Id.* at 1290.  The court rejected Commerce's determination that the processing performed in Thailand fell short of effecting a substantial transformation, reasoning, in part, that no "single part exported from China to Thailand possessed the physical properties, mechanical properties, or essential character of a complete TRB{,}" the article imported into the United States.  *Id.* at 1293.  Similarly here, the disc sourced from China does not possess the essential character of the finished truck wheel imported into the United States.  Rather, the imported wheel exhibits its essential character only after Asia Wheel manufactures the rim, welds the rim to the disc, and paints the wheel.

The Government, like Commerce below, also confuses the facts.  The Government argues that "the rims and discs each maintain their essential characteristics and sole purpose of being incorporated into a finished steel wheel throughout processing in Thailand."  Gov't. Response Br. at 21.  Similarly, the Government asserts that "{t}he assembly in this proceeding is much simpler" than that addressed in *WorldPac*, "utilizing only two major components, both otherwise subject to the orders as components.  Gov't. Response Br. at 20 (citing *Tapered Roller Bearings and Parts*

*Thereof, Finished and Unfinished, from the People's Republic of China: Final Scope Ruling on WorldPac Inc.'s Wheel Hub Assemblies* (Sept. 11, 2019)).  In both instances, the Government overlooks that, for the truck wheels at issue in this case, only the discs originate from China.  The "substantial transformation" issue does not involve mere assembly in Thailand.  Rather, Asia Wheel manufactures the rims in Thailand, welds the Thai-origin rims to Chinese-origin discs, and paints the truck wheels.

Furthermore, neither the Government nor Accuride confronts the logic of Plaintiff's principal "substantial evidence" argument.  In its *Final Scope Ruling*, Commerce recognized that "{t}he properties of rim and disc define the properties of the wheel and its end-use."  *Final Scope Ruling* at 19 (quoting *Asia Wheel Substantial Transformation Submission* at Exhibit RFI-ALL-5 (Letter from Dexstar, re: *Petitioner's Request for Clarification of Country of Origin Criteria* (A-570-090, C-570-091) (Mar. 1, 2019) at 8-9)) (CR 33, PR 43).  Yet, despite recognizing that a finished wheel requires both a disc and a rim to exhibit its essential characteristics and achieve its function, Commerce "nonsensically reasoned that a Chinese-origin disc fails to become a new product – a complete and functional wheel – when it is welded to a Thai-origin rim and painted in Thailand."  Pl. Br. at 27; *see also Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343, 1352-53 (Ct. Int'l Trade 2013) ("{B}ecause no single part made in China possessed the essential character of a TRB, the Department's finding that the essential character of the finished TRBs was imparted in China, as opposed to Thailand, is a logical impossibility.").  Consequently, Plaintiff argued, Commerce failed to draw a "rational connection between the facts found" (*i.e.*, discs and rims are both essential components of a wheel) and "the choice made" (*i.e.*, the transformation of Chinese-origin discs into truck wheels is not substantial).  The Government's and Accuride's silence on this point speaks volumes.

AMERICAS 127233887

In summary, as highlighted by Commerce's analysis of the "essential component" factor, Commerce's determination that Chinese-origin discs are not substantially transformed in Thailand is not in accordance with law and unsupported by substantial evidence.

C.    **The Government and Accuride Fail To Demonstrate that Commerce Lawfully and Reasonably Determined that the Entire Finished Wheel Manufactured in Thailand Is Subject to the Scope of the *AD/CVD Orders***

Plaintiff demonstrated that, in determining that the entire wheel imported from Thailand is subject to the *AD/CVD Orders*, Commerce impermissibly expanded the scope contrary to its terms and contradicted its own substantial transformation analysis. *See* Pl. Br. at 28-29. In response, the Government and Accuride wrongly claim that Plaintiff failed to cite authority supporting its position; avoid confronting the logic of Plaintiff's argument; and confuse the issue with a mixed media analysis.

The scope of the *AD/CVD Orders* "includes **rims and discs** that have been further processed in a third country . . . ." *AD/CVD Orders*, 84 Fed. Reg. at 24100 (emphasis added). As argued by Plaintiff, with respect to the truck wheels at issue in this case, only Chinese-origin **discs** are further processed in Thailand. *See* Pl. Br. at 28. Consequently, in accordance with the plain language of the *AD/CVD Orders*, only the discs are included in the scope. *See id.* In response, the Government claims, "Asia Wheel and ZC Rubber have not cited authority that supports their position that Commerce should impose duty liability on only a portion of the imported article that is subject to the scope, despite express scope language covering third country processing." Gov't. Response Br. at 28. The Government is mistaken. "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce reinterpret an order in a manner contrary to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). The legal authority upon which Plaintiff relies is the scope of the *AD/CVD Orders* itself.

AMERICAS 127233887

Moreover, the scope of the *AD/CVD Orders* recognizes "that Commerce should impose duty liability on only a portion of the imported article that is subject to the scope" (quoting Gov't. Response Br. at 28). For example, the scope states that, "if the certain on-the-road steel wheel is imported as an assembly with a tire mounted on the wheel and/or with a valve stem attached, the certain on-the-road steel wheel is covered by the scope, but the tire and/or valve stem is not covered by the scope." *AD/CVD Orders*, 84 Fed. Reg. at 24100. The Government and Accuride both avoided addressing this provision of the scope.

The Government highlights that Commerce also relied on "its substantial transformation analysis, to find that the ***wheel components*** processed in Thailand were not 'further processed in a third country' to the point of being rendered out-of-scope." Gov't. Response Br. at 25 (emphasis added).[3] Rather than supporting its argument, however, the Government's observation actually demonstrates the contradiction in Commerce's "substantial transformation" analysis. Because Commerce determined that the Chinese-origin discs of the truck wheels at issue were not substantially transformed in Thailand, it necessarily found that the discs maintain their identities as such – even after being converted into a finished wheel. Likewise, in the absence of substantial transformation, the Thai-origin rims (manufactured in Thailand from steel plates) also must retain

---

[3] Confusingly, the Government also asserts that "Commerce conducted a substantial transformation analysis to determine whether the processing performed in Thailand substantially transformed Asia Wheel's ***truck wheels*** to the point where it would be appropriate to designate the finished wheel as originating from Thailand, rather than as a wheel originating from China." Gov't. Response Br. at 23 (emphasis added). Commerce also incorrectly referred to the "finished wheels" as not being substantially transformed in Thailand and, hence, remaining Chinese-origin wheels. *Final Scope Ruling* at 16. This logic is nonsensical – and, thus, unsupported by substantial evidence – because the "substantial transformation" analysis necessarily begins with the upstream product (here, the Chinese-origin disc) as opposed to the downstream product (the finished truck wheel imported into the United States). *See Peer Bearing*, 914 F. Supp. 2d at 1352 (finding that Commerce misstated the issue by asking whether the merchandise imported into the United States was substantially transformed in Thailand, as opposed to whether the Chinese-origin finished and unfinished parts imported into Thailand were substantially transformed).

14

their identities as such.  It follows that, consistent with the plain language of the scope, only the Chinese-origin discs could be covered by the *AD/CVD Orders* and subject to AD/CVD.  In concluding otherwise, Commerce failed to draw a rational connection between the facts found (*i.e.*, the Chinese-origin discs are not substantially transformed) and the choice made (*i.e.*, AD/CVD liability extends to the nonsubject rims of the imported wheels that also were not substantially transformed).  Notably, neither the Government nor Accuride attempted to defend Commerce's faulty logic, which Plaintiff identified in its initial brief.  *See* Pl. Br. at 29.

Lastly, the Government and Accuride confuse the issue by observing that "Asia Wheel and ZC Rubber do not contest Commerce's determination that a mixed media analysis is unwarranted (and thus have waived any criticism)."  Gov't. Response Br. at 28 (citing *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1356-57 (Fed. Cir. 2010); *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1301-02 (Fed. Cir. 2013)); Accuride Response Br. at 22-23 (same).  Plaintiff, however, agrees this is not a "mixed media" case, and has not contended otherwise.  Rather, as demonstrated above, Commerce's determination that the entire wheel imported from Thailand is covered by the scope of the *AD/CVD Orders* is impermissible under the plain language of the scope and inconsistent with its own "substantial transformation" analysis.  Consequently, Commerce's decision is both not in accordance with law and unsupported by substantial evidence.

### D.    The Government and Accuride Fail To Demonstrate that Commerce Lawfully Directed CBP To Continue To Suspend Liquidation of Imports Entered before Importers Had Adequate Notice of AD/CVD Liability

Plaintiff demonstrated that Commerce impermissibly directed CBP to continue to suspend liquidation of imports entered before importers had adequate notice that truck wheels manufactured in Thailand with discs *or* rims (but not both) from China were covered by the *AD/CVD Orders*.  *See* Pl. Br. at 30-39.  In response, the Government and Accuride misinterpret

15

binding case law – which holds that notice of ***possible*** scope coverage in the future is not adequate notice – and wrongly contend that Commerce's scope authority is subservient to that of CBP in an Enforce and Protect Act ("EAPA") context.

### 1.     Possible scope coverage is not "adequate notice"

An "assessment of retroactive duties . . . is . . . unlawful" without "adequate notice" of AD/CVD applicability. *See Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021) ("*Trans Texas I*"); *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304-05 (Ct. Int'l Trade 2021) ("*Trans Texas II*").   Here, the Government argues importers had adequate notice because "Commerce held open ***the possibility*** that it might still find – with the benefit of further analysis – a steel wheel imported from a third country and manufactured using Chinese components to originate from China such that the orders would apply to that wheel."  Gov't Response Br. at 13 (emphasis added); *see also* Accuride Response Br. at 23. Under binding case law, however, Commerce's intention to address a scope question in the future does ***not*** constitute adequate notice of AD/CVD liability to importers.

In *Tai-Ao II*, the Federal Circuit reaffirmed Commerce's legal mandate to provide "fair warning" or "adequate notice" to importers before subjecting imported merchandise to AD/CVD liability.  *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II*").   The Federal Circuit further held that a stated intention to consider whether merchandise is subject to an AD/CVD order in the future fails to provide adequate notice.  *See id.* ("A statement of intention to 'consider whether the inquiry should apply to all imports' is not the same as a notice that such imports are within the scope of the inquiry.").   "The notice requirement reflects 'the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'"   *Id.* (citations omitted).

Citing the following sentence from the *Final AD IDM*, the Government argues that "Commerce's express statements in the *Orders* that future merchandise would need to be evaluated on a case-by-case basis conveyed sufficient notice to any reasonably informed importer":

> While in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case. However, here, we find that we can properly frame the scope of the investigation and properly address issues concerning circumvention by incorporating the petitioners' proposed clarification of the scope, subject to the minor change discussed further below.

Gov't. Response Br. at 29 (citing *Final AD IDM* at 11); *see also* Accuride Response Br. at 23.  In accordance with the Federal Circuit's decision in *Tai-Ao II*, however, a stated intention to consider a scope question in the future fails to provide adequate notice.  *See Tai-Ao II*, 983 F.3d at 495.  Nor do the Government's attempts to distinguish *Tai-Ao II* (which involved a circumvention inquiry) override "the broader due-process principle" that Commerce must provide importers with adequate notice of AD/CVD applicability – ***not*** notice of ***possible*** AD/CVD applicability in the future.  *See id.*; *see also Trans Texas I*, 519 F. Supp. 3d at 1287-1288 ("*Tai-Ao I* and *Tai-Ao II* clearly show that adequate notice is essential where Commerce attempts to apply retroactive duties.").

Moreover, Commerce's statement relied upon by the Government and Accuride – "{w}hile in some instances Commerce has relied on a substantial transformation analysis to address country-of-origin issues, the decision to conduct such an analysis is contingent upon the facts and circumstances of a particular case{,}" Gov't. Response Br. at 29 (citing *Final AD IDM* at 11), Accuride Response Br. at 23 (same) – failed to notify importers of even the ***possibility*** that steel wheels manufactured in third countries with discs ***or*** rims from China could be within the scope of the *AD/CVD Orders*.  As demonstrated above in **Section II.A.2**, read in context, this statement from the *Final AD IDM* cannot reasonably be interpreted to mean that Commerce deferred the scope question with respect to such wheels during the original AD/CVD investigations.  Rather,

AMERICAS 127233887

in making this statement, Commerce was explaining its rationale for declining to conduct a substantial transformation analysis to determine the country of origin for steel wheels assembled and painted in third countries using ***Chinese-origin rims <u>and</u> discs***. *See Final AD IDM* at 7-8, 10-11. Then, in response to Zhejiang Jingu's concern that the third-country-processing scope proposed by Petitioners could be interpreted to include wheels manufactured in third countries with Chinese-origin rims ***or*** discs, Commerce modified the scope language to clarify that steel wheels manufactured in third countries are within scope when both the rims "***and***" discs are "***from China***." *See Final AD IDM* at 8, 12 (emphases added). Commerce also confirmed that it had "properly frame{d} the scope of the investigation and properly address{ed} issues concerning circumvention . . . ." *Final AD IDM* at 11. In no way did Commerce provide notice to importers that steel wheels manufactured in third countries with rims ***or*** discs from China could potentially be within scope.

Lastly, Commerce itself acknowledged in the contested scope proceeding that importers lacked adequate notice that the truck wheels at issue could be subject to the *AD/CVD Orders* until May 12, 2021, the date Commerce initiated the scope inquiry requested by Asia Wheel. *See Final Scope Ruling* at 28 ("{A}ny ambiguity that the *specific* steel wheels assembled in Thailand from Chinese-origin discs and Thai-origin rims manufactured from rectangular steel plates sourced from China or a third country may be subject to liabilities was established by the May 12, 2021, Asia Wheel scope inquiry initiation memorandum, and the explicit mention of the merchandise in question therein constituted fair warning to any reasonably informed importer.").

Despite the lack of adequate notice until May 12, 2021, Commerce directed CBP to continue the prior suspension of liquidation imposed in the parallel EAPA Investigation, Case No. 7509. *See Final Scope Ruling* at 30-31. CBP's suspension of liquidation applies to the targeted

AMERICAS 127233887

importer's entries of truck wheels from Thailand back to August 18, 2020 – nearly one year before the importer received adequate notice of the *AD/CVD Orders'* coverage from Commerce. *See CBP Initiation* at 8. By declining to instruct CBP to terminate its prior suspension of liquidation, Commerce unlawfully subjected the importer's entries to retroactive AD/CVD assessment without fair warning – at a combined AD/CVD rate exceeding 600%. *See AD/CVD Orders*, 84 Fed. Reg. at 24098-24099.

2. **Commerce, not CBP, has the ultimate authority to determine whether and when merchandise is subject to an AD/CVD order**

Like Commerce below, the Government and Accuride wrongly maintain that Commerce lacked the authority to instruct CBP to terminate its prior suspension of liquidation, because CBP suspended liquidation pursuant to its independent authority under the EAPA, 19 U.S.C. § 1517(e). *See* Gov't. Response Br. at 32-34; Accuride Response Br. at 26-27. While CBP may have had initial authority to suspend liquidation under the EAPA, Commerce has the ultimate authority to determine whether imported merchandise is subject to an AD/CVD order, as recognized by the EAPA itself. Here, in accordance with that authority, Commerce was bound by due-process principles to instruct CBP to terminate its prior suspension of liquidation.

Commerce has the ultimate authority to determine whether ***and when*** a product is within the scope of an order, subject to the due-process requirement of providing fair warning. *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1321 (Fed. Cir. 2020) (recognizing that CBP cannot "'modify Commerce's {scope} determinations' or otherwise impinge on Commerce's authority to issue and set the scope of duty orders"); *see also Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) ("Commerce has the authority to . . . define the scope of an order consistent with the countervailing duty and antidumping duty laws.") (citation omitted).

19

The EAPA itself recognizes that Commerce has the ultimate authority to determine whether the merchandise at issue is covered merchandise.  "Covered merchandise" means "merchandise that is subject to" an AD/CVD order.  19 U.S.C. § 1517(a)(3).  In EAPA cases where CBP "is unable to determine whether the merchandise at issue is covered merchandise," CBP is required to refer the scope question to Commerce and to abide by Commerce's scope determination in response to the "covered merchandise referral."  19 U.S.C. § 1517(b)(4); *Aspects Furniture Int'l Inc. v. United States*, 607 F. Supp. 3d 1246, 1268 (Ct. Int'l Trade 2022) ("The Court notes that the EAPA statute states clearly that Commerce, not Customs, is the appropriate administering authority to issue a referral determination of whether merchandise is covered or not.") (citing 19 U.S.C. § 1517(b)(4)(A)(i), (B)).  Inherently, a determination of whether imported merchandise is "subject to" an order may also entail ***when*** the merchandise ***became*** subject to the order.

Here, CBP issued a covered merchandise referral to Commerce pursuant to 19 U.S.C. § 1517(b)(4)(A) because it was "unable to determine whether the merchandise at issue is covered merchandise . . . ."  *Referral Notice*, 86 Fed. Reg. 38270.  Because the targeted importer lacked adequate notice that truck wheels from Thailand could be subject to the *AD/CVD Orders* until May 12, 2021, Commerce was bound by due-process principles and the Federal Circuit's decision in *Tai-Ao II* to instruct CBP that imports of such wheels entered before that date are not subject to the *AD/CVD Orders* and to terminate CBP's suspension of liquidation with respect to such imports.  Commerce's failure to do so was unlawful.  In arguing that Commerce lacks authority to direct a

AMERICAS 127233887

suspension of liquidation imposed by CBP under the EAPA, the Government and Accuride ignore

that Commerce – not CBP – has the ultimate authority to determine an AD/CVD order's scope.[4]

Accuride argues that, in declining to instruct CBP to terminate its prior suspension of

liquidation, "Commerce then properly applied its regulations in 19 CFR § 351.225(l) that govern

the liquidation of entries following a scope determination."  Accuride Response Br. at 24.

Commerce's regulation, however, cannot override "the broader due-process principle" that

adequate notice must be afforded before imports are subject to AD/CVD liability.  *Tai-Ao II*, 983

F.3d at 495.  Citing *Sunpreme*, Accuride also contends that, "once Customs had suspended

liquidation for the merchandise under its independent authority under the 'reasonable suspicion'

standard of 19 U.S.C. § 1517, section {351.}225(l) gave Commerce no leeway to act in any way

other than as Commerce did once it made an affirmative scope determination and directed Customs

to continue that suspension."  Accuride Response Br. at 26 (citing *Sunpreme*, 946 F.3d at 1319).

In *Sunpreme*, however, the Federal Circuit held that Commerce was required under 19 C.F.R. §

351.225(l) to continue CBP's prior suspension of liquidation, where CBP properly had determined

---

[4] The Government cites *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1351 (Ct. Int'l Trade 2021) for the proposition that "Commerce's actions under its own statutes do not 'diminish Customs' authority under the EAPA to apply Commerce's affirmative covered merchandise determination to all entries covered by the EAPA investigation.'"  Gov't. Response Br. at 34; *see also* Accuride Response Br. at 27.  In *Diamond Tools*, however, the court upheld **CBP's decision** to continue a prior suspension of liquidation imposed under the EAPA, where Commerce had not imposed any temporal limitation on CBP's authority to suspend liquidation in its response to a covered merchandise referral.  *See* 545 F. Supp. 3d at 1348.  Here, in contrast, Plaintiff contests **Commerce's** unlawful decision to continue a prior (and retroactive) suspension of liquidation in violation of the "broader due-process principle" that importers must have fair warning before their imported merchandise is subject to AD/CVD liability.  *See Tai-Ao II*, 983 F.3d at 495.  Nor did the court in *Diamond Tools* address that Commerce's ultimate authority to determine the scope in response to an EAPA covered merchandise referral inherently includes the authority to determine **when** imports of the merchandise at issue first became "subject to" an AD/CVD order.  CBP does not have authority under the EAPA to determine when merchandise became covered merchandise ("subject to" an AD/CVD order, 19 U.S.C. § 1517(a)(3)); that authority is reserved for Commerce.

AMERICAS 127233887

that the merchandise at issue was within scope. *See Sunpreme*, 946 F.3d at 1317-18. Here, in contrast, CBP was unable to determine whether the truck wheels at issue are within scope and referred that question to Commerce pursuant to 19 U.S.C. § 1517(b)(4)(A). Furthermore, unlike here, where continuing CBP's prior suspension of liquidation would subject entries to retroactive AD/CVD liability without fair warning, "retroactivity concerns" were not raised in *Sunpreme*. *See id.* at 1319.

In summary, by not directing CBP to terminate its prior suspension of liquidation under the EAPA, Commerce impermissibly relied on 19 C.F.R. § 351.225(l) in contravention of its broader due-process obligation to provide adequate notice to importers of the *AD/CVD Orders'* scope. The Government and Accuride fail to defend Commerce's decision to continue CBP's suspension of liquidation because they ignore that Commerce has the ultimate authority to determine whether imported merchandise is subject to the *AD/CVD Orders*, which necessarily includes a determination as to **when** the merchandise first became subject to the orders.

## III.    CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court enter judgment in its favor.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
jcampbell@whitecase.com
*Counsel to Plaintiff Asia Wheel Co., Ltd.*

Date:  June 18, 2024

AMERICAS 127233887

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for the Reply Brief filed by Asia Wheel Co., Ltd., as computed by White & Case LLP's word processing system (Microsoft Word 2016) is 6,630 words.

/s/ Jay C. Campbell
Jay C. Campbell

Date:  June 18, 2024