**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| ASIA WHEEL CO., LTD.,<br>*Plaintiff*,<br>and<br>ZC RUBBER AMERICA INC.,<br>*Plaintiff-Intervenor,*<br>v.<br>UNITED STATES,<br>*Defendant*,<br>and<br>ACCURIDE CORPORATION,<br>*Defendant-Intervenor.* | Court No. 23-00143<br><br>Before: The Hon. Timothy C. Stanceu, Judge |

**PLAINTIFF-INTERVENOR'S REPLY BRIEF**

Jing Zhang
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385
*Counsel to ZC Rubber America Inc.*

Dated: July 2, 2024

# TABLE OF CONTENTS

**Page**


ARGUMENT ..... 3

I. The Government and Accuride Fail To Demonstrate that Commerce's Erroneous "Substantial Transformation" Determination Should Be Sustained ..... 3

- A. The Government And Accuride Fail To Demonstrate That Commerce's "Substantial Transformation" Analysis Is Lawful And Supported By Substantial Evidence ..... 3
- B. Contrary To Accuride's Assertion, Commerce's Duty To Consider The Merchandise In The Condition In Which It Is Imported Does Not Mean That Commerce Cannot Examine How The Merchandise Was Transformed. ..... 8
- C. Commerce Failed To Explain Why Design And Engineering Steps Were Relevant To Its Substantial Transformation Analysis. ..... 12

CONCLUSION ..... 14

CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1) ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018)........................................4, 11, 13

*Chr. Bjelland Seafoods A/S v. United States,* 19 C.I.T. 35 (1995).............................................................4

*MacLean Power, L.L.C. v. United States*, 359 F. Supp. 3d 1367 (Ct. Int'l Trade 2019).................9, 10, 11

*Midwest Fastener Corp. v. United States*, 435 F. Supp. 3d 1262 (Ct. Int'l Trade 2020).......................9, 11

*Peer Bearing Co.-Changshan v. United States,* 128 F. Supp. 3d 1286 (Ct. Int'l Trade 2015).........4, 5, 6, 7

*Peer Bearing Co.-Changshan v.* United States, 914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013).......6, 7, 8, 11

*Smith Corona Corp. v. United States*, 811 F. Supp. 692 (Ct. Int'l Trade 1993).......................................13

**Administrative Determinations**

*Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098 (Dep't Commerce May 24, 2019)............................................................1

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

ASIA WHEEL CO., LTD.,

*Plaintiff,*

and

ZC RUBBER AMERICA INC.,

*Plaintiff-Intervenor,*

v.

UNITED STATES,

*Defendant,*

and

ACCURIDE CORPORATION,

*Defendant-Intervenor.*

Court No. 23-00143

Before: The Hon. Timothy C. Stanceu, Judge

**PLAINTIFF-INTERVENOR'S REPLY BRIEF**

Plaintiff-Intervenor ZC Rubber America, Inc., a U.S. importer of the subject merchandise covered by, but not individually examined in, the scope inquiry conducted by the U.S. Department of Commerce in *Certain Steel Wheels 22.5 to 24.5 inches in Diameter from the People's Republic of China*, hereby replies to Defendant's Opposition to Plaintiff's and Plaintiff-Intervenor's Motions for Judgment upon the Administrative Record (ECF No. 42) ("Gov't Resp. Br.") and Defendant-Intervenor's Response to Plaintiff's and Plaintiff-Intervenor's Motions For Judgment On The Agency Record (ECF No. 43) ("Accuride Resp. Br.").

In this reply, ZC Rubber has endeavored to avoid excess arguments and thus supports the arguments made by Plaintiff, Asia Wheel Co., Ltd., in their Reply Brief (ECF No. 46) ("Asia Wheel Reply Br.") and agrees that the arguments made in the Government and Accuride's briefs

merely reiterate flawed conclusions by the U.S. Department of Commerce ("Commerce") that are either impermissible under law and/or unsupported by record evidence; misconstrue case precedent; misstate key facts; and mischaracterize Asia Wheel and ZC Rubber's arguments. Accordingly, for the reasons discussed in Asia Wheel and ZC Rubber's initial briefs, Asia Wheel's reply brief, and further below, ZC Rubber respectfully requests that this Court hold that Commerce's Final Scope Ruling is unsupported by substantial evidence and is otherwise not in accordance with law and enter judgement in favor of Asia Wheel and ZC Rubber.

Respectfully submitted,

/s/ Jing Zhang
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385
*Counsel to ZC Rubber America Inc.*

Dated: July 2, 2024

## ARGUMENT

As noted above, ZC Rubber fully joins the arguments of Asia Wheel. *See* Asia Wheel Reply Br. at 1-22.[1] To avoid repetitive arguments, we focus our discussion below on the fact that Commerce's determination that Chinese-origin wheel discs were not substantially transformed into steel wheels in Thailand is not supported by substantial evidence, nor is it accordance with the law. *See* Commerce Memorandum, regarding *"Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand"* (A-570-082, C-570-083) (June 7, 2023) (PR 79) ("Final Scope Ruling"). Neither the Government nor Accuride have demonstrated otherwise.

### I. THE GOVERNMENT AND ACCURIDE FAIL TO DEMONSTRATE THAT COMMERCE'S ERRONEOUS "SUBSTANTIAL TRANSFORMATION" DETERMINATION SHOULD BE SUSTAINED

#### A. The Government And Accuride Fail To Demonstrate That Commerce's "Substantial Transformation" Analysis Is Lawful And Supported By Substantial Evidence

As Asia Wheel and ZC Rubber have previously argued, Commerce failed to recognize that the Chinese-origin discs had undergone substantial transformation in Thailand. Commerce merely concluded "that the country of origin of {the discs} . . . is China and, thus, they remain subject to the Orders after processing in Thailand." *See* Amended Plaintiff's Motion for Judgment on the Agency Record and Accompanying Memorandum of Points and Authorities at 25 (ECF No. 35) ("Asia Wheel Opening Br."); Plaintiff-Intervenor's Rule 56.2 Motion for Judgment Upon the Agency Record and Memorandum in Support Thereof at 14 (ECF No. 31) ("ZC Rubber Opening Br.") (*citing* Final Scope Ruling at 25 (PR 79)). However, this conclusory statement failed to address whether a Chinese-origin disc became a new product with a new

---

[1] In the interest of brevity, ZC Rubber also fully incorporates all factual statements and discussion in Asia Wheel and ZC Rubber's opening briefs by reference. *See* Asia Wheel Opening Br. at 3-15; ZC Rubber Opening Br. at 5-25.

name, character, and use in Thailand. The appropriate question is not the country of origin of the *discs* but the country of origin of the *imported product* into the United States, *i.e.*, finished truck wheels. *See* Asia Wheel Opening Br. at 25; ZC Rubber Opening Br. at 14-15 (*citing Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) ("{T}he substantial transformation analysis is used to determine country of origin for an *imported article*.") (emphasis added)). And, because Commerce failed to apply the governing legal standard, its country-of-origin determination was not in accordance with law. *See* Asia Wheel Opening Br. at 25; ZC Rubber Opening Br. at 14-15. Furthermore, because Commerce addressed the wrong ultimate origin question, its analysis of the agency's "substantial transformation" factors was also unsupported by substantial evidence (e.g., by ignoring evidence that multiple key physical characteristics of Asia Wheel's steel wheels beyond the Chinese discs were established in Thailand via extensive Thai production processes) and not in accordance with law (e.g., by stating conclusions without adequate reasoning). *See* ZC Rubber Opening Br. at 11 (*citing Chr. Bjelland Seafoods A/S v. United States,* 19 C.I.T. 35, 37 (1995)).

From the onset, the Government misinterprets this argument. The Government insists that Asia Wheel and ZC Rubber "fail to consider the relevance of examining the qualities, function, and origin of component parts as a part of Commerce's substantial transformation analysis." Gov't Resp. Br. at 21-22 (*citing* Asia Wheel Opening Br. at 26; ZC Rubber Opening Br. at 14). The Government relies on a single sentence from *Peer Bearing III* as the sole support for this argument:

> The Court explained that "Commerce was not precluded from taking into consideration the uncontested fact that the {tapered roller bearing} production in Thailand was conducted upon parts, finished and unfinished, that ultimately were destined to become {tapered roller bearings}."

Gov't Resp. Br. at 21–22 (*citing Peer Bearing Co.-Changshan v. United States,* 128 F. Supp. 3d 1286, 1303 (Ct. Int'l Trade 2015) ("*Peer Bearing III*")). Based on this one sentence, the Government concludes that "Commerce reasonably considered whether the essential characteristics and purpose of the component wheel parts were changed by further processing in Thailand to determine the country of origin of the finished wheel." Gov't Resp. Br. 22. However, this argument misrepresents ZC Rubber's position and fails to recognize the Court's key holding in *Pear Bearing III*.

First, contrary to the Government's argument, ZC Rubber did not argue that the qualities, function, and origin of the Chinese disc are irrelevant to Commerce's substantial transformation analysis. Rather, ZC Rubber's argument on the "essential character" factor of Commerce's substantial transformation test is straightforward. First, Commerce focused ***exclusively*** on the characteristics and purpose of the Chinese disc, to the exclusion of other key characteristics and the purpose of the finished truck wheel (to which the Chinese disc was incorporated as a non-exclusive component). Second, Commerce ignored abundant record evidence showing that the finished truck wheel's essential character (including several key physical characteristics) and end use were established in Thailand, making the finished truck wheel Thai-origin for purposes of the AD/CVD Orders. *See* ZC Rubber Opening Br. at 19.

Notably, in its "essential character" analysis, Commerce assigned *no* weight to several key properties of a finished truck wheel, *i.e.*, rim specifications, offset, and load rating, and the extensive Thai manufacturing and processing that establishes these properties. Commerce dismissed all of those properties simply because "{t}he 'key qualities' of a ***disc*** . . . are not changed or otherwise transformed through processing {in Thailand} . . .." ZC Rubber Opening Br. at 15 (*citing* Preliminary Scope Ruling at 18 (PR 59); Final Scope Ruling at 19 (PR 79)

(emphasis added) (internal citation omitted). In sum, ZC Rubber did not argue that the fact that Chinese discs were imported into Thailand for further manufacturing into finished wheels was irrelevant. Instead, it argued that the finished wheels imported into the United States are much more than and fundamentally different from the Chinese discs, which Commerce cannot legally ignore by focusing exclusively on the Chinese component.

Second, unlike what the Government's argument suggests, just because Commerce may not be precluded from considering certain facts related to the Chinese disc does not mean that it has done so in a reasonable and lawful manner. To the contrary, Commerce's scope determination (and the Government and Accuride's arguments) ran headlong into the Court's rulings in *Peer Bearing Co.-Changshan v.* United States, 914 F. Supp. 2d 1343, 1353 (Ct. Int'l Trade 2013) ("*Peer Bearing II*") and *Peer Bearing III*. In *Peer Bearing II*, the Court determined that Commerce's findings that "the processing conducted in Thailand imparted no changes to the mechanical properties, and no substantial changes to the physical properties, of the merchandise" were "***not supported by substantial record evidence***." *Peer Bearing II,* 914 F. Supp. 2d at 1353 (emphasis added). The Court reasoned that manufacturing operations, assembly, and finishing processes performed in Thailand on cups and cones (two major components of finished tapered roller bearings ("TRBs"), *i.e.*, the imported product) "impart{ed} the strength, initial hardness and the physical shape of the cup and cone" and "change{d} the chemical/mechanical characteristic of the cop and cone to ensure durability, hardness and shock resistance{.}" *Id.* Further, the finished TRBs, were "designed and built to perform load-bearing and friction-reducing functions in the machine to which it is fitted." *Id.* And "because no single part made in China possessed the essential character of a TRB," Commerce's "finding that the essential character of the finished TRBs was imparted in China, as opposed to Thailand, {was} a ***logical***

***impossibility***." *Id*. (emphasis added). In all, Commerce "could not permissibly have found, that any single component produced in China possessed the physical properties, mechanical properties, or essential character of ***the 'merchandise,' which in this case consisted of finished TRBs***, not unfinished TRBs or parts." *Id*. (emphasis added). *Peer Bearing III* reaffirmed this conclusion. *See Peer Bearing III*, 128 F. Supp. 3d at 1293 (noting the Court "rejected as unsupported by substantial record evidence the Department's ultimate findings that the processes performed in Thailand on the cups and cones imparted no substantial changes to the ***physical or mechanical properties or the essential character of the merchandise*** that would constitute a substantial transformation of the merchandise) (emphasis added)). In sum, *Pear Bearing II and III* rejected Commerce's failure to consider the essential character of the imported product as such, as opposed to the Chinese components, and in particular, its failure to acknowledge the importance of the processes performed in Thailand and their effects on the physical characteristics and end use of the *finished product*, not the Chinese components.

Commerce's decision here suffered from the same flaws. The imported product (finished truck wheels), not the Chinese component (discs) are produced by Asia Wheel in Rayong, Thailand. In order to produce truck wheels, Asia Wheel imported rectangular steel plates from China and a third country, and performed multiple processing steps (including coiling, butt-welding, planing, edge expansion, rolling, and hole punching) to convert the rectangular steel plates into rims. Asia Wheel then assembled and welded the Thai-origin rims with discs imported from China to form the final product, finished truck wheels. *See* Asia Wheel Opening Br. at 8 (*citing* Asia Wheel Scope Ruling Request at Exhibit 4 (PR 1)). As in *Peer Bearing II*, the Chinese component (discs) are not the finished imported product (truck wheels). They cannot perform the designed function of a truck wheel because the rim – the other significant

component that also defines the function of a finished wheel – and key physical properties established via the Thai assembly and painting processes (*e.g.*, offset and load rating), are missing.

Furthermore, contrary to Accuride's argument that "{Asia Wheel and ZC Rubber} fail to address the majority of Commerce's analysis under {its} properly applied substantial transformation test {,}" the totality of the circumstances standard cannot save Commerce's flawed analysis. Accuride Resp. Br. at 16. As Asia Wheel correctly points out, Commerce's analysis of the "essential character" factor *illustrates* its failure to apply the correct legal standard for substantial transformation, which is fatal in and of itself. *See* Asia Wheel Reply Br. at 10-13 Also, as demonstrated in *Peer Bearing II*, the Court will reject and remand Commerce's findings on any specific "substantial transformation" factor if such findings are not supported by substantial record evidence. *Peer Bearing II*, 914 F. Supp. 2d at 1353.

In sum, as Asia Wheel explains, "Commerce disregarded the fundamental question of whether Asia Wheel's manufacturing operations in Thailand resulted in a product with a new name, character, and use, and nonsensically reasoned that a disc alone already exhibits the essential characteristics of a finished truck wheel." Asia Wheel Reply Br. at 7 (*citing* Asia Wheel Opening Br. at 23-27).

**B. Contrary To Accuride's Assertion, Commerce's Duty To Consider The Merchandise In The Condition In Which It Is Imported Does Not Mean That Commerce Cannot Examine How The Merchandise Was Transformed.**

As ZC Rubber has explained, Commerce's analysis of the "essential character" factor under the "substantial transformation" test was unlawful, in part because it failed to comply with the agency's duty to consider the merchandise in the condition in which it is imported. The gist of Commerce's finding was that "{t}he 'key qualities' of a disc . . . are not changed or otherwise

transformed through processing {in Thailand} . . . ." ZC Rubber Opening Br. at 15 (*citing* Preliminary Scope Ruling at 18 (PR 59); Final Scope Ruling at 19 (PR 79) ("the assembly of the rim and disc into a wheel enables the two elements to perform their functions, but ***they remain the same both before and after assembly***.") (emphasis in original)). However, this finding is not in accordance with law as Commerce failed to comply with "{its} duty to consider the merchandise in the condition in which it is imported," which is finished steel wheels and not wheel components. ZC Rubber Opening Br. at 15 (*citing MacLean Power, L.L.C. v. United States*, 359 F. Supp. 3d 1367, 1371 (Ct. Int'l Trade 2019) ("*MacLean Power*") (internal citations omitted). Similarly, in *Midwest Fastener*, the court found that Commerce's focus on "the physical characteristics of *part* of the {imported} product," instead of "the physical characteristics of the {imported} product," was inconsistent with its own scope ruling regulation (relating to an issue separate from "substantial transformation"). *Midwest Fastener Corp. v. United States*, 435 F. Supp. 3d 1262, 1271 (Ct. Int'l Trade 2020) (emphasis added).

In arguing otherwise, Accuride misunderstands ZC Rubber's argument. Accuride urges that ZC Rubber's reliance on the *MacLean Power* line of cases means that ZC Rubber argued that "Commerce cannot examine what was transformed or how, but must only look at the finished product post-transformation" and this would preclude Commerce from conducting a substantial transformation analysis. Accuride Resp. Br. at 19-20. Not so. What ZC Rubber actually argued is that Commerce should have found that the Chinese disc (the "what") was "substantially transformed" into finished truck wheels of Thailand origin through the complex and extensive production processes performed in Thailand, which included rim manufacturing, assembly by welding, and painting (the "how"). As even the Government acknowledges, Asia Wheel and ZC Rubber contended that:

> the fundamental question is not whether the Chinese-origin disc continues to have the qualities and function as such after processing in Thailand, but whether the essential qualities and function of the Chinese-origin disc *differ* from the essential qualities and function of the finished truck wheel manufactured in Thailand and imported into the United States.

Gov't Resp. Br. at 21 (*citing* Asia Wheel Opening Br. at 26; ZC Rubber Opening Br. at 14) (emphasis added). Thus, contrary to Accuride's erroneous assertion, ZC Rubber did not argue that Commerce is limited to examining the imported article as such in a vacuum in its country-of-origin analysis. Instead, it argued that Commerce cannot ignore the fundamental fact that the finished wheel in the condition in which it is imported is significantly different from the Chinese disc in critical aspects, which is a result of complex and extensive Thai production processes.

The problem here is that Accuride assigns an incorrect and illogical meaning to Commerce's legal "duty to consider the merchandise in the condition in which it is imported" as addressed in the *MacLean Power* line of cases. *See* ZC Rubber Opening Br. at 15. As ZC Rubber has explained, when understood correctly, this obligation means that Commerce cannot lawfully focus on only one component of the imported article, while ignoring key properties and production processes of the other components (*e.g.*, the rim in this case) and the imported article as a whole (*e.g.*, the wheel load rating and offset in this case). Thus, ZC Rubber's argument, when understood correctly, is fully consistent with Commerce's authority to employ the "substantial transformation" test to determine the origin of the imported article.

Accuride also argues that "{ZC Rubber's} reliance on cases {such as *MacLean Power*} not looking at a determination of the origin of the product or the substantial transformation test at all entirely misses the mark." Accuride Response Br. at 19 (emphasis in original). Accuride immediately contradicts itself and outlines the relevancy of these cases, stating "{c}ases such as *MacLean Power* did not consider Commerce's application of its substantial transformation test in any way. Instead, they examined Commerce's application of the scope language to an *entered*

product." *Id.* (emphasis added). As explained in ZC Rubber's initial brief, here, Commerce committed the same error the courts found unlawful in *MacLean Power* and *Midwest Fastener*, *i.e.*, a failure to analyze the "entered" (or, "imported") product as such by unduly focusing on a component that has been incorporated into such product prior to importation. *See* ZC Rubber Opening Br. at 16 (*citing Midwest Fastener,* 435 F. Supp. 3d at 1271). Neither the Government nor Accuride challenges this point, because they cannot.

ZC Rubber also cited substantial transformation cases in support of its position, which Accuride simply ignores. As previously highlighted by ZC Rubber, the Court has also affirmed Commerce's duty to analyze the entered/imported product as such in the "substantial transformation" context. Specifically, as discussed in ZC Rubber's opening brief, the court found in *Peer Bearing II*:

> Commerce did not find, and on this record could not permissibly have found, that any single component produced in China possessed the physical properties, mechanical properties, or essential character of *the "merchandise," which in this case consisted of finished TRBs, {i.e., the imported article}, not unfinished TRBs or parts*.

ZC Rubber Opening Br. at 16 (*citing Peer Bearing II*, 914 F. Supp. 2d at 1352) (emphasis added). ZC Rubber also cited to *Bell Supply* to establish that "{t}he purpose of Commerce's 'substantial transformation' analysis is to 'determine country of origin for an *imported article*,'" not one of its components. ZC Rubber Opening Br. at 15 (*citing Bell Supply Co.*, 888 F.3d at 1228 (emphasis added)). Here, the 'imported article' whose origin is at issue was a finished truck wheel, not the Chinese-origin disc used in its production. In its purported rebuttal to ZC Rubber's argument, Accuride did not address these "substantial transformation" authorities focusing on the imported articles as such at all.

In sum, Commerce has a legal obligation to analyze the merchandise actually imported into the United States, not just one of its components, in its "substantial transformation" analysis.

This does not preclude Commerce from considering the fact that the imported steel wheels contained Chinese-origin discs or examining how the Chinese discs were "transformed" into finished wheels in Thailand. Rather, as explained above, it is Commerce's undue focus on the Chinese-origin disc alone in its substantial transformation analysis and its disregard of abundant record evidence showing the fundamental differences between a disc and a finished truck wheel that render the Final Scope Ruling both unlawful and unsupported by substantial evidence. *See* ZC Rubber Opening Br. 13-21. Notably, neither the Government nor Accuride deny that a rim is also a key component of the imported truck wheels, which is a component manufactured by Asia Wheel in Thailand and of Thai-origin. The Government and Accuride further do not deny that the assembly and painting process in Thailand also establishes key properties of the truck wheels critical to its end use.

### C. Commerce Failed To Explain Why Design And Engineering Steps Were Relevant To Its Substantial Transformation Analysis.

Commerce, in conducting its "substantial transformation" analysis, found, with respect to the "nature and sophistication of processing in the country of exportation" fact, that:

> (1) wheels produced from Chinese-origin discs and rims manufactured in Thailand from steel sheet plates from China or a third country were designed (involving complex engineering) in China; (2) production for these wheels began in China; and (3) the coiling, welding, planning, rolling, punching, assembling, and coating steps completed in Thailand ***do not meet the level of sophistication of the design and processing steps involved in producing both finished discs and steel sheet plates in China, but merely finish the process that began in China***.

ZC Rubber Opening Br. at 20 (*citing* Preliminary Scope Ruling at 19 (PR 59); Final Scope Ruling at 22 (PR 79)) (emphasis added). As ZC Rubber has explained, even if Thai "processing" could be compared to certain Chinese "processing," Commerce failed to explain why the "design and engineering steps" are relevant to its "substantial transformation" analysis. This is especially so given that courts, including the Federal Circuit, have made clear that the proper subject of the

"substantial transformation" analysis is the "manufacturing or processing steps." ZC Rubber Opening Br. at 20 (citing *Bell Supply Co.*, 888 F.3d at 1228 (internal citations omitted)).

Accuride counters that, supposedly, "Commerce noted that the CIT had held that engineering is 'a first step in production,' and so was relevant to examining what production steps took place in which country and the relative sophistication of those steps." Accuride Response Br. at 20 (citing Final Scope Ruling at 21 (PR 79) (*quoting Smith Corona Corp. v. United States*, 811 F. Supp. 692, 695-696 (Ct. Int'l Trade 1993)). This misses the mark.

Whether engineering is "a first step in production" is not the question here: whether it may be properly viewed as within the meaning of "manufacturing or processing" is. Also, noticeably missing from the portion of the Final Scope Ruling cited by Accuride is any record evidence on the purportedly Chinese "design and engineering steps" gathered by Commerce during the course of the scope investigation. *See* Final Scope Ruling (PR 79) at 19-23. We respectfully submit that such evidence does not exist. In contrast, Asia Wheel provided detailed descriptions and illustrations of its production operations in photos and videos to demonstrate the level of sophistication of each processing step performed in Thailand." ZC Rubber Opening Br. at 20-21 (*citing* Asia Wheel Case Brief at 16-17(CR 60, PR 66)). This directly undercuts any purported explanation for the relevancy of the so-called "design and engineering steps" and demonstrates that Commerce's finding on this factor is unsupported by substantial evidence and is not in accordance with law.

**CONCLUSION**

For the reasons discussed above, ZC Rubber respectfully requests that the Court enter judgment in Asia Wheel and ZC Rubber's favor.

Respectfully submitted,

/s/Jing Zhang________
Jing Zhang
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
+1 202 263 3385
*Counsel to ZC Rubber America Inc.*

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)**

The undersigned hereby certifies that this brief contains 4,202 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 14,000-word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

/s/ Jing Zhang_______
Mayer Brown LLP
*Counsel to ZC Rubber America Inc.*